**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------------- X

REBECCA MONTESA, individually and as a parent and natural guardian of C.W., E.W. and N.W., infants; ADELE AND CAROLD FORTUNE, individually, collectively and as parents and natural guardians of T.F., infant; ADOLFINA MARTINEZ, individually and as a parent and natural guardian of C.M. and E.M., infants; ADOLPHE LUBIN, individually and as a graduate of the East Ramapo Central School District; AGLA AND GESNER PIERRE, individually, collectively and as parents and natural guardians of G.P., infant; ALEXANDRA JOACHIM, individually and as a parent and natural guardian of S.J., infant; ALEXANDRA VOLCY, individually and as a parent and natural guardian of S.P., infant; ALFRED COLE, individually and as a taxpayer residing within the East Ramapo Central School District; ALINE AND FLAMBERT TELUSCA, individually, collectively and as parents and natural guardians of F.T. and S.T., infants; ALLISSIA BASQUIAT, individually and as a graduate of the East Ramapo Central School District; AMANDA BLAND, individually and as a parent and natural guardian of A.R. 1 and A.R. 2, infants; AMIONNE CHARLES, individually and as a taxpayer residing within the East Ramapo Central School District; ANDREA NIEDELMAN, individually and as a parent and natural guardian of A.N. and T.N., infants; ANGELA JORDAN, individually and as a parent and natural guardian of R.P., infant; ANISE MACK, individually and as current student age 18 or older of the East Ramapo Central School District; ANISHA CARRASQUILLO, individually and as a parent and natural guardian of A.M., infant; ANITA CUNNINGHAM, individually and as a taxpayer residing within the East Ramapo Central School District; ANNAJEAN FRANCOIS, individually and as a taxpayer residing within the East Ramapo Central School District; ANNE CARMAND-LUNDI, individually and as a parent and natural guardian of A.S. and PL., infants; ANNE DIEUJUSTE, individually and as a taxpayer residing within the East Ramapo Central School District; ANNEBETHE GUILLAME-FISH, individually and as a parent and natural guardian of H.G., infant; ANNIE CRUDOP, individually and as a taxpayer residing within the East Ramapo Central School District; ANNIE F. WILSON, individually and as a parent and natural guardian of S.W., infant; ANNIE THOMPSON, individually and as a taxpayer residing within the East Ramapo Central School District; ANSELME HUGUETTE, individually and as a parent and natural guardian of A.B. and E.B., infants; ANTHONY GOULD, individually and as a taxpayer residing within the East Ramapo Central School District; ANTONIO ETIENNE, individually and as a parent and natural

**12 CV 6057 (CS)**

**AMENDED
VERIFIED
CLASS ACTION
COMPLAINT**

**JURY TRIAL
DEMANDED**

guardian of B.E. and C.E., infants; ANTONIO MIGUEL, individually and as a parent and natural guardian of A.M., infant; ARKITE FELIX, individually and as a taxpayer residing within the East Ramapo Central School District; ARTHUR MONDESTIN, individually and as a taxpayer residing within the East Ramapo Central School District; ASSETNE BERNARD, individually and as a taxpayer residing within the East Ramapo Central School District; BARBARA TURNER, individually and as a parent and natural guardian of L.E., infant; BENITA GILES, individually and as a parent and natural guardian of B.G., infant; BERTHANE ANTOINE, individually and as a taxpayer residing within the East Ramapo Central School District; BETHANI JONES, individually and as a parent and natural guardian of J.J.1, J.J.2 and J.L., infants; BETTY CARMAND, individually and as a parent and natural guardian of D.E., J.E. and S.E. infants; BEVERLY JONES, individually and as a parent and natural guardian of T.S., infant; BEVERLY PAIGE, individually and as a parent and natural guardian of D.C., infant; BEVERLY PATTERSON WATSON, individually and as a parent and natural guardian of J.W., infant; BILL MACK, individually and as a parent and natural guardian of A.M. and J.M., infants; BLANDINE LAROQUE, individually and as a parent and natural guardian of S.M., infant; BONNY YOLENE, individually and as a parent and natural guardian of A.J. and P.J., infants; BRENNAH HARRISON, individually and as a parent and natural guardian of N.S., infant; CADET SAUVAL, individually and as a parent and natural guardian of A.S., infant; CARIDA PETIT-NAN, individually and as a parent and natural guardian of J.P. and S.P., infants; CARL JENKINS, individually and as a parent and natural guardian of T.J., infant; CARLA JOHNSON, individually and as a parent and natural guardian of L.R., infant; CARLO JOSEPH, individually and as a parent and natural guardian of C.J., J.J. and R.J., infants; CARME MEHU, individually and as a graduate of the East Ramapo Central School District; CARMEL FEDE, individually and as a taxpayer residing within the East Ramapo Central School District; CARMELLE AND BOILEAU MEHU, individually, collectively and as parents and natural guardians of C.M., F.M. and K.M., infants; CARMELLE JUSTINE-MOREAU, individually and as a taxpayer residing within the East Ramapo Central School District; CAROL SEC, individually and as a taxpayer residing within the East Ramapo Central School District; CASEY CICERON, individually and as a taxpayer residing within the East Ramapo Central School District; CATHERINE TELLEZ, individually and as a parent and natural guardian of J.L., infant; CERIL CAYO, individually and as a parent and natural guardian of B.C., D.C. and R.C., infants; CHANTAL JEAN, individually and as a parent and natural guardian of S.B.,

infant; CHARLES LOUVIERE, individually and as a parent and natural guardian of J.L., infant; CHERI PARIS-HUDSON AND JOHN HUDSON, individually, collectively and as parents and natural guardians of C.H., infant; CHRIS BIBBINS, individually and as a taxpayer residing within the East Ramapo Central School District; CHRISTINA AND RYAN DUNCAN, individually, collectively and as parents and natural guardians of C.D. and S.D., infant; CHRISTINA LOSIER, individually and as a graduate of the East Ramapo Central School District; CHRISTINIA PATTERSON, individually and as a parent and natural guardian of D.B. and M.B., infants; CHRISTOPHER AND DONNA MESIBOV, individually, collectively and as parents and natural guardians of J.M. 1 and J.M. 2, infants; CICERON LAGUERRE, individually and as a taxpayer residing within the East Ramapo Central School District; CINDY SEVIER, individually and as a parent and natural guardian of J.S. 1 and J.S. 2, infants; CLAUDE DORCELLY, individually and as a taxpayer residing within the East Ramapo Central School District; COLIN GRANT, individually and as a taxpayer residing within the East Ramapo Central School District; CONSTANT FRIEND, individually and as a parent and natural guardian of N.F., infant; COURTNEY J. JASMIN, individually and as a graduate of the East Ramapo Central School District; CRAIG BEITAL, individually and as a parent and natural guardian of D.B., infant; DANIEL PIERRE MAURICE, individually and as a parent and natural guardian of D.M. and J.M., infants; DAPHKAR FLEURIUS, individually and as a taxpayer residing within the East Ramapo Central School District; DAVID MCCRAY, individually and as a taxpayer residing within the East Ramapo Central School District; DAWN AND EROLL HOLNESS, individually, collectively and as parents and natural guardians of D.H., infant; DEBRAH BROWN, individually and as a parent and natural guardian of D.B., infant; DEMENTRIUS HOLMES, individually and as a taxpayer residing within the East Ramapo Central School District; DEMEURANT C. LOUISTHELMY, individually and as a parent and natural guardian of D.L., M.L. and R.L., infants; DENISE BALTHAZAR, individually and as a parent and natural guardian of D.B., infant; DENISE DEL VALLE, individually and as a parent and natural guardian of L.J. and P.J., infants; DESHAWN PARKER, individually and as a taxpayer residing within the East Ramapo Central School District; DIEUDONNE FERDILUS, individually and as a parent and natural guardian of A.F., C.F., J.F., K.F. and S.F., infants; DIEVLINE ST. GERMAIN, individually and as a taxpayer residing within the East Ramapo Central School District; DOMINIQUE REMY, individually and as a graduate of the East Ramapo Central School District; DONIQUE JOHNSON, individually and as a parent and natural guardian of D.J., infant;

DONNA GARCES, individually and as a parent and natural
guardian of S.G., infant; DONOVAN DUNKLEY, individually and
as a graduate of the East Ramapo Central School District; DORIAN
BUTCHER, individually and as a parent and natural guardian of
S.B., infant; DOROTHY ROONEY, individually and as a taxpayer
residing within the East Ramapo Central School District;
DOSSELAINE BADIO, individually and as a taxpayer residing
within the East Ramapo Central School District; DOUGLAS
CANTOR, individually and as a parent and natural guardian of
Z.C., infant; DYNAA LAUTURE, individually and as a parent and
natural guardian of D.D., infant; EDENS ZULME, individually and
as a taxpayer residing within the East Ramapo Central School
District; EDWARD MEDINA, JR., individually and as a parent and
natural guardian of J.M., infant; ELDA GOUBOTH, individually
and as a taxpayer residing within the East Ramapo Central School
District; ELDINE CICERON, individually and as a taxpayer
residing within the East Ramapo Central School District; EMMA
SUBIAO-DIZON, individually and as a parent and natural guardian
of M.D., infant; EMMANUEL ALEXIS, individually and as a
taxpayer residing within the East Ramapo Central School District;
EMMANUEL AUGUSTIN, individually and as a parent and natural
guardian of E.A., K.A., M.A., and S.A., infants; ENELLE PIERRE,
individually and as a parent and natural guardian of C.P., J.P. and
K.P., infants; ENID LAMBERT, individually and as a parent and
natural guardian of A.M., infant; ENLUS VIERGELINE,
individually and as a parent and natural guardian of G.J. and M.J.,
infants; ENNEDY BASQUIAT, individually and as a taxpayer
residing within the East Ramapo Central School District; ESPERA
EMMANUEL, individually and as a taxpayer residing within the
East Ramapo Central School District; ESTEL CADET, individually
and as a parent and natural guardian of A.C., infant; ESTHER
DURANDICE, individually and as a taxpayer residing within the
East Ramapo Central School District; ETHENE LARAME,
individually and as a parent and natural guardian of I.L., J.L. and
R.L.,infants; ETONNANTE JOSEPH, individually and as a parent
and natural guardian of R.J., infant; EUGENIE EUGENE,
individually and as a parent and natural guardian of A.R. 1 and A.R.
2, infants; FAMILLA EPPS, individually and as a parent and
natural guardian of J.E., infant; FANNIE ONABANJO Q,
individually and as a parent and natural guardian of D.B., infant;
FARA ST. FLEUR, individually and as a taxpayer residing within
the East Ramapo Central School District; FATIMA DARLENE
CANCIO, individually and as a graduate of the East Ramapo
Central School District; FELICIA EVANS, individually and as a
parent and natural guardian of C.E. and M.E., infants; FLORE ST.
LOUIS, individually and as a parent and natural guardian of V.S.,

infant; FRANCENA HEYWARD, individually and as a parent and natural guardian of M.C. and M.S., infants; FRANCIS JAMAR GREEN, individually and as a parent and natural guardian of H.G., I.G. and N.G., infants; FRANCKEL M. JOSEPH, individually and as a taxpayer residing within the East Ramapo Central School District; FRANCOIS BEVOLUS, individually and as a taxpayer residing within the East Ramapo Central School District; FRANDY GEORGES, individually and as a taxpayer residing within the East Ramapo Central School District; FRANKY SAINVIL, individually and as a taxpayer residing within the East Ramapo Central School District; FRED MICHEL, individually and as a taxpayer residing within the East Ramapo Central School District; GARFIELD WALKER, individually and as a parent and natural guardian of A.W. and J.W., infants; GENIESE AND BAUDLAFRE THEAGENE, individually, collectively and as parents and natural guardians of S.F., infant; GEORGES DELALEU, individually and as a parent and natural guardian of D.C., infant; GERALD CHEREMEANT, individually and as a taxpayer residing within the East Ramapo Central School District; GERRY DEDIVITIS, individually and as a parent and natural guardian of N.D., infant; GINA M. DUNCAN, individually and as a graduate of the East Ramapo Central School District; GLADYS CAYO, individually and as a parent and natural guardian of M.P. and S.J., infants; GLORIA KEY, individually and as a parent and natural guardian of A.K., S.K. and T.K., infants; GUY CHARLES, individually and as a parent and natural guardian of A.C., M.C. and T.C. infants; HARRIETT CHAMBERS, individually and as a parent and natural guardian of A.J., J.C. and R.C., infants; HARVEY WILLIAMS, individually and as a parent and natural guardian of M.A. and M.J., infants; HIRAM RIVERA, individually and as a parent and natural guardian of A.R. and T.R., infants; ILLYANA DEJEAN, individually and as a parent and natural guardian of M.F., infant; INGRID BOUCICANT, individually and as a taxpayer residing within the East Ramapo Central School District; INGRID PENA, individually and as a parent and natural guardian of A.E., B.E. and C.E. infants; IREUS REGINAL, individually and as a taxpayer residing within the East Ramapo Central School District; ISENIELA JEAN CHARLES, individually and as a taxpayer residing within the East Ramapo Central School District; ISRAEL MEDINA, individually and as a parent and natural guardian of H.M., infant; JACQUELINE GRANNUM, individually and as a parent and natural guardian of N.G. 1, N.G. 2 and N.G. 3, infants; JAMES GULIFIELD, individually and as a parent and natural guardian of J.G., Q.G. 1 and Q.G. 2, infants; JANAY JORDAN, individually and as a parent and natural guardian of J.F., infant; JEAN BELLANTOU, individually and as a taxpayer residing

within the East Ramapo Central School District; JEAN
BOUCICANT, individually and as a taxpayer residing within the
East Ramapo Central School District; JEAN CLAUDE AND
LANA AUGUSTE, individually, collectively and as parents and
natural guardians of S.A., infant; JEAN DENIS, individually and as
a parent and natural guardian of W.D., A.D. and S.D., infants;
JEAN JEAN CHARLES, individually and as a parent and natural
guardian of D.J., infant; JEAN JOSEPH, individually and as a
parent and natural guardian of J.J. and K.J., infants; JEAN MARIO
AND MARIMENE VIL, individually, collectively and as parents
and natural guardians of R.V., infant; JEAN WILSON JOCELIN,
individually and as a parent and natural guardian of S.J., infant;
JEAN-RENE VICSAMA, individually and as a parent and natural
guardian of F.V. and R.V., infants; JEFHTEY CAJUSTE,
individually and as a parent and natural guardian of K.R., infant;
JERISON LORA, individually and as a taxpayer residing within the
East Ramapo Central School District; JERMAINE WALKER,
individually and as a parent and natural guardian of I.W., N.W. and
T.W., infants; JESITA CICERON, individually and as a taxpayer
residing within the East Ramapo Central School District; JESULA
AUGUSTE, individually and as a taxpayer residing within the East
Ramapo Central School District; JOANNE CHERIMOND,
individually and as a taxpayer residing within the East Ramapo
Central School District; JOCELIN NOEL, individually and as a
parent and natural guardian of E.N. and J.N., infants; JOCELINE
SHANGASE, individually and as a parent and natural guardian of
D.S., infant; JOEL GUE, individually and as a graduate of the East
Ramapo Central School District; JOHN BOYKIN, individually and
as a taxpayer residing within the East Ramapo Central School
District; JOHN MILES, individually and as a parent and natural
guardian of X.M., infant; JOHNBERRY BADIO, individually and
as a taxpayer residing within the East Ramapo Central School
District; JORGE MONTANO, individually and as a parent and
natural guardian of G.M., infant; JOSEPH CHARLES
CLERVEAUX, individually and as a parent and natural guardian of
C.C., infant; JOSEPH CHARLES, individually and as a taxpayer
residing within the East Ramapo Central School District; JOSEPH
FLEURANT, individually and as a taxpayer residing within the
East Ramapo Central School District; JOSETTE FRANCOIS,
individually and as a taxpayer residing within the East Ramapo
Central School District; JUANA SANTIAGO, individually and as a
parent and natural guardian of C.G., infant; JUCANGE GASPORD,
individually and as a taxpayer residing within the East Ramapo
Central School District; JUDITH DESIR, individually and as a
parent and natural guardian of J.S., infant; JUDITH ISRAEL,
individually and as a taxpayer residing within the East Ramapo

Central School District; JUDITH JOHN-ROBINSON, individually and as a parent and natural guardian of L.R. and P.R., infants; JUDY AND MATT KARIUS, individually, collectively and as parents and natural guardians of F.K., infant; JULIA DERIVAL, individually and as a parent and natural guardian of S.D., infant; JULIA THOMPSON, individually and as a taxpayer residing within the East Ramapo Central School District; JULYSSE ALEXANDRE, individually and as a taxpayer residing within the East Ramapo Central School District; JUNIE CLAUTAIRE, individually and as a parent and natural guardian of C.C., J.J. and T.C. infants; JUSTIN BUDDE, individually and as a graduate of the East Ramapo Central School District; KALICHA CAMERON, individually and as a parent and natural guardian of K.C. and O.C., infants; KATHLEEN CANCIO, individually and as a graduate of the East Ramapo Central School District; KATHLEEN D. CASTOR, individually and as a taxpayer residing within the East Ramapo Central School District; KATHRIN BALL, individually and as a parent and natural guardian of K.J. and L.J., infants; KATHRYN KARIUS, individually and as a graduate of the East Ramapo Central School District; KATIANA SAME, individually and as a graduate of the East Ramapo Central School District; KATRINA GRIGSBY, individually and as a parent and natural guardian of K.G., infant; KELLY SCOTT, individually and as a taxpayer residing within the East Ramapo Central School District; KENICE HIBBERT, individually and as a parent and natural guardian of E.P., infant; KENNETH BOLT, individually and as a taxpayer residing within the East Ramapo Central School District; KENNETH ISSACS, individually and as a taxpayer residing within the East Ramapo Central School District; KERNEY AND SANDRA OBY , individually, collectively and as Grandparents and natural guardians of D.O., infant; KETNA FRENEL FORESTAL, individually and as a parent and natural guardian of D.F. 1 and D.F. 2 and K.F., infants; KIMBERLEY TREVISAN, individually and as a parent and natural guardian of K.T., S.T., V.T. 1 and V.T. 2 infants; KIMBERLY COLLICA-COX, individually and as a parent and natural guardian of A.C. and R.C., infants; KRISTEN RABELER, individually and as a parent and natural guardian of S.O., infant; KRYSTAL WILSON, individually and as a parent and natural guardian of E.W. and M.E., infants; LACHANDA JOHNSON, individually and as a parent and natural guardian of R.J., infant; LAGUERRE BERNADIN, individually and as a parent and natural guardian of B.L. and W.L., infants; LAMARRE BEAUVAIS, individually and as a taxpayer residing within the East Ramapo Central School District; LAMARTINE LARAME, individually and as a parent and natural guardian of L.L. 1 and L.L. 2, infants; LANA RHEUBOTTOM, individually and as a parent

and natural guardian of J.R., infant; LATASHA D. EVANS, individually and as a parent and natural guardian of O.J. and R.F., infants; LATICIA THEZAN, individually and as a parent and natural guardian of C.T. and J.T., infants; LATTICHA ACKERMAN, individually and as a parent and natural guardian of D.A. and J.J., infants; LENARD SAINVIL, individually and as a parent and natural guardian of C.B. and W.B., infants; LENTZ EUGENE, individually and as a taxpayer residing within the East Ramapo Central School District; LEON AND MONA CAYO, individually, collectively and as parents and natural guardians of I.C., infant; LEVY CAZEAU, individually and as a parent and natural guardian of T.C., infant; LINDA HARVEY, individually and as a parent and natural guardian of B.H. and T.H., infants; LISA GOLDBERG, individually and as a parent and natural guardian of B.M., G.G., M.G. and S.M., infants; LISA MEYERS, individually and as a parent and natural guardian of S.M., infant; LISA PHILLIPS, individually and as a parent and natural guardian of O.P., infant; LITIA HAGANS, individually and as a parent and natural guardian of D.C. and D.S., infants; LIZANNE BRUNA, individually and as a parent and natural guardian of E.B., L.B. and F.B., infants; LOCITA PIERRE, individually and as a parent and natural guardian of C.E., infant; LORA FULLARD, individually and as a taxpayer residing within the East Ramapo Central School District; LORRAINE ALCIMAS, individually and as a taxpayer residing within the East Ramapo Central School District; LOUIS JEAN JACQUES, individually and as a parent and natural guardian of J.J., infant; LOUIS WHARTON, individually and as a graduate of the East Ramapo Central School District; LUCIENNE SAINT FORT, individually and as a parent and natural guardian of D.P., H.R. and M.P., infants; LUCY BROCKS, individually and as a taxpayer residing within the East Ramapo Central School District; MACK ROBERTS, individually and as a parent and natural guardian of S.L. and T.B., infants; MAE OLA MCGILL, individually and as a parent and natural guardian of T.L., infant; MAGDA DESDUNES, individually and as a parent and natural guardian of O.D., infant; MAGDA PIERRE-LOUIS, individually and as a taxpayer residing within the East Ramapo Central School District; MALLORY JOHNSON, individually and as a parent and natural guardian of A.L., infant; MANUEL AND MAYRA PALMA, individually, collectively and as parents and natural guardians of C.P., J.P. and M.P. infants; MARC  E. DORSANVIL, individually and as a parent and natural guardian of M.D. and N.D., infants; MARC-AUGUSTE DESERT, individually and as a taxpayer residing within the East Ramapo Central School District; MARCUS EXANTUS, individually and as a taxpayer residing within the East Ramapo Central School District; MARGARET

TUCK, individually and as a parent and natural guardian of J.A., infant; MARGUEDALA AND JEAN EMMANUEL LAHENS, individually, collectively and as parents and natural guardians of I.L. and M.L., infants; MARIA FLORES-MARTINEZ, individually and as a parent and natural guardian of A.M., infant; MARIA SINGH, individually and as a parent and natural guardian of E.S., infant; MARIE  MATHELUS, individually and as a parent and natural guardian of A.M., infant; MARIE AND JUDSON LOUIS, individually, collectively and as parents and natural guardians of S.L., infant; MARIE AND PATRICK JEAN BAPTISTE, individually, collectively and as parents and natural guardians of D.J. 1 and D.J. 2 and P.J., infants; MARIE AURELUS, individually and as a parent and natural guardian of C.A. and J.A., infants; MARIE CADICHON, individually and as a taxpayer residing within the East Ramapo Central School District; MARIE CAIZON, individually and as a taxpayer residing within the East Ramapo Central School District; MARIE CHARLES, individually and as a taxpayer residing within the East Ramapo Central School District; MARIE CLERVEAUX, individually and as a taxpayer residing within the East Ramapo Central School District; MARIE JOSEPH, individually and as a taxpayer residing within the East Ramapo Central School District; MARIE KATTY DORLEUS, individually and as a taxpayer residing within the East Ramapo Central School District; MARIE LAFONTANT, individually and as a parent and natural guardian of S.D., infant; MARIE LEONARD, individually and as a parent and natural guardian of A.L., infant; MARIE NICOLE AND SAMESON DESCAS, individually, collectively and as parents and natural guardians of N.D. and S.D., infants; MARIE ROSE EXAUTES, individually and as a taxpayer residing within the East Ramapo Central School District; MARIE ROSE MICHEL, individually and as a parent and natural guardian of Y.M., infant; MARIE SOMISE LOUIS, individually and as a parent and natural guardian of S.L., infant; MARIE THERES LUBIN, individually and as a parent and natural guardian of A.L. 1, A.L. 2, B.L. and S.L. infants; MARIE Y. DELPE MANBRUN, individually and as a taxpayer residing within the East Ramapo Central School District; MARIEE COMEAU, individually and as a taxpayer residing within the East Ramapo Central School District; MARILIA MONTILUS , individually and as a parent and natural guardian of S.M., infant; MARION GRANT, individually and as a taxpayer residing within the East Ramapo Central School District; MARJORIE METELLUS, individually and as a parent and natural guardian of I.C., infant; MARLENE ISRAEL, individually and as a parent and natural guardian of B.I. 1 and B.I. 2, infants; MARLENE SANCHEZ, individually and as a parent and natural guardian of R.F., infant; MARTHA SAINT FORT, individually and as a

taxpayer residing within the East Ramapo Central School District;
MARTINE NARCISSE, individually and as a parent and
natural guardian of D.N. and M.N., infants; MARY HAYES, individually
and as a parent and natural guardian of Z.H., infant; MARY JAMES
GIBSON, individually and as a parent and natural guardian of K.C.,
infant; MARYANN WILLIAMS, individually and as a parent and
natural guardian of C.W., K.W., O.W. and T.W., infants;
MATHIEU DIEUJUSTE, individually and as a taxpayer residing
within the East Ramapo Central School District; MEGHAN C.
FITZGERALD, individually and as a parent and natural guardian of
S.C., infant; MELVERLEEN BULLOCK, individually and as a
parent and natural guardian of C.B., infant; MICHAEL LAKES,
individually and as a parent and natural guardian of A.L., infant;
MICHELE LOVELL, individually and as a parent and natural
guardian of I.L., infant; MICHELLE LARAME, individually and as
a taxpayer residing within the East Ramapo Central School District;
MINI JACOB, individually and as a parent and natural guardian of
J.J. 1 and J.J. 2, infants; MINNIE WILSON, individually and as a
parent and natural guardian of I.W., infant; MONA LEGER,
individually and as a parent and natural guardian of M.L. and S.L.,
infants; MONESE THEODORE, individually and as a parent and
natural guardian of R.T., infant; MURIELLE GUERIN, individually
and as a parent and natural guardian of M.G., infant; MYRTHO
FERDINAND, individually and as a parent and natural guardian of
B.L. and W.L., infants; NADEGE DORCELLY, individually and as
a taxpayer residing within the East Ramapo Central School District;
NADIA DORCELLY, individually and as a taxpayer residing
within the East Ramapo Central School District; NAMOI JOSEPH,
individually and as a parent and natural guardian of M.R., infant;
NANA TWUM, individually and as a taxpayer residing within the
East Ramapo Central School District; NANCY AND RAPHAEL
TOUSSAINT, individually, collectively and as parents and natural
guardians of H.T., infant; NAOMI BAHLE, individually and as a
taxpayer residing within the East Ramapo Central School District;
NAOMI LEGERME, individually and as a graduate of the East
Ramapo Central School District; NAOMY LAGUERRE,
individually and as a parent and natural guardian of D.B. and J.A.,
infants; NASIK ELAHI, individually and as a parent and natural
guardian of K.E. and S.E., infants; NATALIE SANCHEZ,
individually and as a parent and natural guardian of A.S., C.S. and
M.S. infants; NESLIE CADET ALTUME, individually and as a
taxpayer residing within the East Ramapo Central School District;
NICOLAS MONTANO, individually and as a graduate of the East
Ramapo Central School District; NICOLE RAPHINO, individually
and as a parent and natural guardian of A.M., A.P. and M.M.,
infants; ODNY  EUGENE, individually and as a parent and natural

guardian of J.E., infant; ONIKKA WHITEHEAD, individually and as a parent and natural guardian of E.W. and I.W., infant; ORICHA HERNANDEZ, individually and as a graduate of the East Ramapo Central School District; ORLANDO LORVEUS, individually and as a parent and natural guardian of A.L., D.L. and J.L., infants; OSNY EXANTUS, individually and as a taxpayer residing within the East Ramapo Central School District; OVID COLAS, individually and as a taxpayer residing within the East Ramapo Central School District; PAMELA HILL, individually and as a parent and natural guardian of K.W. 1 and K.W. 2, infants; PAMELA SIMPSON, individually and as a parent and natural guardian of Q.W., infant; PATRICIA BYNUM, individually and as a taxpayer residing within the East Ramapo Central School District; PATRICIA COLLINS, individually and as a parent and natural guardian of J.C. and J.M., infants; PATRICIA DESROCHES, individually and as a graduate of the East Ramapo Central School District; PATRICIA JOURDAIN, individually and as a taxpayer residing within the East Ramapo Central School District; PAUL LARAME, individually and as a parent and natural guardian of V.L., infant; PEARLINE WRAY, individually and as a parent and natural guardian of R.M., infant; PEGGY FLOYD, individually and as a parent and natural guardian of S.F., infant; PETER SHARPE, individually and as a taxpayer residing within the East Ramapo Central School District; PHYNESCHEA SHAARIEFEREL, individually and as a parent and natural guardian of J.J. and T.J., infants; PIERRE DESROSIERS, individually and as a parent and natural guardian of C.D., infant; PIERRE LOUIS CYNILLE, individually and as a taxpayer residing within the East Ramapo Central School District; PRISCILLA BROWN, individually and as a parent and natural guardian of A.A., infant; PRUCILE VALEUS, individually, collectively and as parents and natural guardians of E.V., N.V. and R.V., infants; RAMONA JONES, individually and as a parent and natural guardian of E.J., G.J., T.J. and Y.J., infants; RAQUEL NEWELL, individually and as a parent and natural guardian of H.N., infant; RAQUEL PAUL, individually and as a graduate of the East Ramapo Central School District; RASHEED JERIMIE, individually and as a taxpayer residing within the East Ramapo Central School District; RAYMONDE BEAUVAIS, individually and as a taxpayer residing within the East Ramapo Central School District; RAYSHON PETTWAY, individually and as a taxpayer residing within the East Ramapo Central School District; REBEA GRARDA, individually and as a taxpayer residing within the East Ramapo Central School District; REBECCA ADJETEY, individually and as a taxpayer residing within the East Ramapo Central School District; REGINALDA BRUNO, individually and as a parent and natural guardian of S.A., infant;

REGINE TAYETTE, individually and as a parent and natural
guardian of M.M., infant; RETTVIE JOURDAIN, individually and
as a parent and natural guardian of P.D., infant; RICKEY MCGILL,
individually and as a parent and natural guardian of R.M. and S.M.,
infants; ROBERT BADIO, individually and as a taxpayer residing
within the East Ramapo Central School District; ROBERT JAMES,
individually and as a taxpayer residing within the East Ramapo
Central School District; ROBERT MALEBRANCHE, individually
and as a taxpayer residing within the East Ramapo Central School
District; ROBERT MCGEE, individually and as a parent and
natural guardian of R.M., infant; ROBERT YOUNG, individually
and as a parent and natural guardian of R.Y., infant; ROLAND
AND MARIE JOSIE ALEXANDRE, individually, collectively and
as parents and natural guardians of D.A., E.A. and Z.A., infants;
RONALD ROSEMOND, individually and as a parent and natural
guardian of A.L., infant; RONY JACQUES, individually and as a
parent and natural guardian of M.J., T.J. and T.R.J., infants; ROSE
FRASER, individually and as a taxpayer residing within the East
Ramapo Central School District; ROSELAURE FLEURANTIN,
individually and as a parent and natural guardian of R.F. and S.F.,
infants; ROSENAY AND ELZA JACQUES, individually,
collectively and as parents and natural guardians of A.L., C.J. and
J.J., infants; ROWSON BOIROND, individually and as a graduate
of the East Ramapo Central School District; RUBIN JOANUS,
individually and as a parent and natural guardian of B.J., G.J. and
P.J.  infants; RUSSELL BISHOP, individually and as a taxpayer
residing within the East Ramapo Central School District; RUTH
ARCHANGE, individually and as a parent and natural guardian of
J.L. and R.L. 1 and R.L. 2,  infants; RUTH LAUTURE-WALKER,
individually and as a parent and natural guardian of J.L., M.L. and
O.L., infants; SAHARA EVANS, individually and as a taxpayer
residing within the East Ramapo Central School District;
SANTANA ALLARD, individually and as a parent and natural
guardian of J.S. and S.A., infants; SERETTE LAURENT,
individually and as a parent and natural guardian of A.C., infant;
SERGO BEAUBOEUF, individually and as a parent and natural
guardian of M.M., infant; SERGO PIERRE, individually and as a
parent and natural guardian of A.P., infant; SHANTEL JACKSON,
individually and as a parent and natural guardian of J.B., infant;
SHARON BRYANT, individually and as a taxpayer residing within
the East Ramapo Central School District; SHARON PARKER,
individually and as a parent and natural guardian of A.P., infant;
SHEILA JACKSON, individually and as a parent and natural
guardian of S.J., infant; SHEILA JEFFRIES, individually and as a
parent and natural guardian of A.J. and J.J., infants; SHELOMITHE
JEAN, individually and as current student age 18 or older of the

East Ramapo Central School District; SHERINE GORDON, individually and as a parent and natural guardian of B.L.1 and B.L.2, infants; SHIRLEY JACKSON, individually and as a parent and natural guardian of T.W., infant; SIABHAIN SNEAD, individually and as a parent and natural guardian of C.B. and T.B., infants; SONIA B. WATKINS, individually and as a parent and natural guardian of G.W., infant; STEPFON MCCRAY, individually and as a graduate of the East Ramapo Central School District; STEPHANIE KARIUS, individually and as a graduate of the East Ramapo Central School District; STEPHANIE LAURENT, individually and as a parent and natural guardian of G.M. 1 and G.M. 2, infants; STERLING AND LORRAINE INZAR, individually, collectively and as parents and natural guardians of D.I. and T.I., infants; STEVEN AND EMILIA WHITE, individually, collectively and as parents and natural guardians of A.W., infant; SYBIL BEACH-EDWARDS, individually and as a parent and natural guardian of A.E., infant; SYLVIE PIERRE, individually and as a parent and natural guardian of E.P., infant; TAISHA PAQUIOT, individually and as a parent and natural guardian of P.D., infant; TAMME WHITAKER, individually and as a parent and natural guardian of R.W., infant; TATIANA PIERRE-LOUIS, individually and as a taxpayer residing within the East Ramapo Central School District; TERRELL ACKERMAN, individually and as a graduate of the East Ramapo Central School District; TERRY BYNUM, individually and as a parent and natural guardian of A.B. and D.B., infants; TJOKDALEM ARSA ARTHA, individually and as a taxpayer residing within the East Ramapo Central School District; TONY MARSEILLE, individually and as a parent and natural guardian of E.M., infant; TRACY HARRIS, individually and as a parent and natural guardian of C.H., E.H. and N.H., infants; ULANA AND ANTHONY WILSON-ORTA, individually, collectively and as parents and natural guardians of A.O. and S.W., infants; VALQUISE LOUIS-JACQUES, individually and as a parent and natural guardian of A.L., infant; VELLA MARDY-ARRE, individually and as a parent and natural guardian of R.M., infant; VERONA GREY, individually and as a taxpayer residing within the East Ramapo Central School District; VERONICA LEVEILLE, individually and as a parent and natural guardian of C.L., L.L., R.K. and S.L., infants; VICTORIA COPELAND, individually and as a parent and natural guardian of D.C., infant; VICTORIA JEAN CHARLES, individually and as a taxpayer residing within the East Ramapo Central School District; VIRGINIA HARRIS, individually and as a parent and natural guardian of T.H., infant; VITAL AND TANYA JOSEPH, individually, collectively and as parents and natural guardians of S.J., infant; WELMIR FRANCOIS, individually and as a graduate

of the East Ramapo Central School District; WILBUR STUART, individually and as a taxpayer residing within the East Ramapo Central School District; WILLARD BODIE, individually and as a parent and natural guardian of D.W., infant; WILLIAM AND TEAL YVETTE TYNES, individually, collectively and as parents and natural guardians of D.S. and D.T., infants; WILLIAM FLOYD, individually and as a parent and natural guardian of J.F., infant; WILMA GLOVER-KOOMSON, individually and as a parent and natural guardian of F.K., infant; YANIK CHARLES-PIERRE, individually and as a taxpayer residing within the East Ramapo Central School District; YOLANDA BARHAM, individually and as a parent and natural guardian of D.O., infant; YOLANDA NAVARRO, individually and as a parent and natural guardian of R.P., infant; YOLANDA WHITE, individually and as a taxpayer residing within the East Ramapo Central School District; YOLANDE PANIAGUE, individually and as a parent and natural guardian of L.H. and O.H., infants; YOLENE ALTIDOR, individually and as a taxpayer residing within the East Ramapo Central School District; YOLENE HIPPOLYTE, individually and as a parent and natural guardian of I.H. 1, I.H. 2 and R.H., infants; YONEL CADICHON, individually and as a taxpayer residing within the East Ramapo Central School District; YVELOURD TREVIL, individually and as a parent and natural guardian of Y.T., infant; YVETA AND HARRY BELANGE, individually, collectively and as parents and natural guardians of E.B. and Y.B., infants; and YVONNE LORINCE, individually and as a parent and natural guardian of S.L., infant; on behalf of a class of similarly situated persons, on behalf of themselves and on behalf of the EAST RAMAPO CENTRAL SCHOOL DISTRICT,

Plaintiffs,

and the EAST RAMAPO CENTRAL SCHOOL DISTRICT,

as a Necessary Party,

-against-

DANIEL SCHWARTZ, YEHUDA WEISSMANDL, MOSES FRIEDMAN, MOSHE HOPSTEIN, ELIYAHU SOLOMON, NATHAN ROTHSCHILD, ARON WIEDER, MORRIS KOHN, RICHARD STONE, ALBERT D'AGOSTINO, Esq., JOEL KLEIN, and ELIEZER WIZMAN,

Defendants.

-------------------------------------------------------------------------------X

14

Plaintiffs, by their undersigned counsel, as and for their Verified Amended Complaint allege as follows:

### PRELIMINARY STATEMENT

1.     This is a civil rights class action in which Plaintiffs seek relief for Defendants' violations of their rights secured by the Constitution and laws of the United States, the Constitution and laws of the State of New York, and the common law, as further provided within the causes of action as articulated and as can be implied herein. Plaintiffs seek compensatory and punitive damages, prohibitory, and affirmative injunctive relief, an award of costs and attorneys fees, and such other and further relief that the Court deems equitable and just.

2.     In this suit, Plaintiffs allege that Defendants, while serving as members of the Board of Education[1] of the East Ramapo Central School District,[2] engaged in numerous improper schemes and conspiracies, with the intent if not the objective of *inter alia* (a) diverting federal, State, and local District education funds to promote religion and private religious schools and institutions; (b) discriminating against and segregating the District's students on the basis of race, color, national origin, ethnicity, and religion, such that, Hasidic, white children are sent to or placed in private religious schools, leaving poor, predominantly, non-white, non-Hasidic, black, Hispanics, and Haitian children in the public schools; and (c) gutting the District's funding of the public schools thereby depriving its students of equal educational opportunities and their right to a sound basic education.

3.     Defendants' deprivation of the rights of the Plaintiff class have occurred without due process of law and in violation of the above-cited laws. Plaintiffs bring this action to seek

---

[1]    Hereafter referred to as "the Board."

[2]    Hereafter referred to as "the District" or "ERCSD."

immediate redress for Defendants' unlawful and irreparable harm their actions are inflicting on the District and its students, which Plaintiffs represent.

4.     Plaintiffs have no adequate remedy at law. Unless Defendants and their agents, and employees are preliminarily and permanently restrained, Plaintiffs will continue to suffer immediate and irreparable harm from the conduct of Defendants about which they complain herein.

5.     Plaintiffs are not required to exhaust administrative remedies because (1) Plaintiffs are threatened with irreparable harm; (2) Plaintiffs are challenging policies and practices that are contrary to numerous federal and state laws; (3) exhaustion of such remedies is futile as demonstrated herein and will not provide adequate relief; and (4) no adequate administrative procedure exists.

6.     As further set forth herein, Plaintiffs have been subjected to their ongoing harm on multiple occasions, which gives rise to a reasonable expectation of continuing to suffer the same illegalities during the school year and/or during their school career unless and until this Court acts and provides the requested relief.

## JURISDICTION AND VENUE

7.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that claims are asserted under the laws of the United States; under 28 U.S.C. § 1343(a), in that claims are asserted under laws providing for the protection of civil rights; under 42 U.S.C. §§ 1983; 1985; 1986; under 20 U.S.C. § 1703; and under other statutes and laws as may be fairly alleged or implied.

8.     Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all State law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this Court as they form part of the same case and controversy.

9.      Plaintiffs also seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

10.     Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(a).

## PARTIES

11.     The following are representative of a class of Plaintiffs who sue on behalf of themselves and others as further described herein:

11.1    REBECCA MONTESA, on behalf of and as a parent and/or guardian of C.W., who attends Chestnut Ridge Middle School, and E.W., who attends Spring Valley High School, and N.W., who attends Elmwood Elementary School.

11.2    ADELE AND CAROLD FORTUNE, on behalf of and as parents and/or guardians of T.F., who attends Eldorado Elementary School.

11.3    ADOLFINA MARTINEZ, on behalf of and as a parent and/or guardian of C.M., who attends Summit Park Elementary School, and E.M., who attends Pomona Middle School.

11.4    ADOLPHE LUBIN, who is a 2011 graduate of the Ramapo High School.

11.5    AGLA AND GESNER PIERRE, on behalf of and as parents and/or guardians of G.P., who attends Spring Valley High School.

11.6    ALEXANDRA JOACHIM, on behalf of and as a parent and/or guardian of S.J., who attends Cornerstone, a private school.

11.7    ALEXANDRA VOLCY, on behalf of and as a parent and/or guardian of S.P., who attends Kakiat Elementary School.

17

11.8    ALFRED COLE, who is a taxpayer and resident of Rockland County.

11.9    ALINE AND FLAMBERT TELUSCA, on behalf of and as parents and/or guardians of F.T., who attends the Jesse Kaplan School, a B.O.C.E.S.-based program serving children with special needs, and S.T., who attends Kakiat Elementary School.

11.10   ALLISSIA BASQUIAT, who currently attends Barry University.

11.11   AMANDA BLAND, on behalf of and as a parent and/or guardian of A.R.1 and A.R.2, who both attend Fleetwood Elementary School.

11.12   AMIONNE CHARLES, who is a taxpayer and resident of Rockland County.

11.13   ANDREA NIEDELMAN, on behalf of and as a parent and/or guardian of A.N., who graduated from Spring Valley High School in 2010, and T.N., formerly enrolled in Summit Park Elementary School receiving special education services but now enrolled in the Jesse Kaplan School, a B.O.C.E.S.-based public school focused on students.

11.14   ANGELA JORDAN, on behalf of and as a parent and/or guardian of R.P., who graduated from Spring Valley High School in 2011.

11.15   ANISE MACK, who is an ERCSD student age 18 or older.

11.16   ANISHA CARRASQUILLO, on behalf of and as a parent and/or guardian of A.M., who attends Chestnut Ridge Middle School.

11.17   ANITA CUNNINGHAM, who is a taxpayer and resident of Rockland County.

11.18   ANNAJEAN FRANCOIS, who is a taxpayer and resident of Rockland County.

11.19   ANNE CARMAND-LUNDI, on behalf of and as a parent and/or guardian of A.S., who attends Pomona Middle School, and P.L., who attends Hempstead Elementary School.

11.20   ANNE DIEUJUSTE, who is a taxpayer and resident of Rockland County.

11.21   ANNEBETHE GUILLAME-FISH, on behalf of and as a parent and/or guardian of H.G., who attends Grandview Elementary School.

11.22   ANNIE CRUDOP, who is a taxpayer and resident of Rockland County.

11.23   ANNIE F. WILSON, on behalf of and as a parent and/or guardian of S.W., who attends Margetts Elementary School.

11.24   ANNIE THOMPSON, who is a taxpayer and resident of Rockland County.

11.25   ANSELME HUGUETTE, on behalf of and as a parent and/or guardian of A.B., who attends Spring Valley High School, and E.B., who attends Chestnut Ridge Middle School.

11.26   ANTHONY GOULD, who is a taxpayer and resident of Rockland County.

11.27   ANTONIO ETIENNE, on behalf of and as a parent and/or guardian of B.E., who attends Grandview Elementary School, and C.E., who attends Pomona Middle School.

11.28   ANTONIO MIGUEL, on behalf of and as a parent and/or guardian of A.M., who attends Eldorado Elementary School.

11.29   ARKITE FELIX, who is a taxpayer and resident of Rockland County.

11.30   ARTHUR MONDESTIN, who is a taxpayer and resident of Rockland County.

11.31   ASSETNE BERNARD, who is a taxpayer and resident of Rockland County.

11.32   BARBARA TURNER, on behalf of and as a parent and/or guardian of L.E., who attends Margetts Elementary School.

11.33   BENITA GILES, on behalf of and as a parent and/or guardian of B.G., who attends Grandview Elementary School.

11.34   BERTHANE ANTOINE, who is a taxpayer and resident of Rockland County.

11.35   BETHANI JONES, on behalf of and as a parent and/or guardian of J.J.1, who attends Chestnut Ridge Middle School,  and J.J.2, who attends Eldorado Elementary School, and J.L., who attends Kakiat Elementary School.

11.36   BETTY CARMAND, on behalf of and as a parent and/or guardian of D.E. and J.E., who each attend Ramapo High School, and S.E., who attends Hempstead Elementary School.

11.37   BEVERLY JONES, on behalf of and as a parent and/or guardian of T.S., who attends Spring Valley High School.

11.38   BEVERLY PAIGE, on behalf of and as a parent and/or guardian of D.C., who attends Ramapo High School.

11.39   BEVERLY PATTERSON WATSON, on behalf of and as a parent and/or guardian of J.W., who attends Chestnut Ridge Middle School.

11.40   BILL MACK, on behalf of and as a parent and/or guardian of A.M., who attends Kakiat Elementary School, and J.M., who attends Chestnut Ridge Middle School.

11.41   BLANDINE LAROQUE, on behalf of and as a parent and/or guardian of S.M., who attends Ramapo High School.

11.42   BONNY YOLENE, on behalf of and as a parent and/or guardian of A.J. and P.J., who both attend St. Peter's, a private school.

11.43   BRENNAH HARRISON, on behalf of and as a parent and/or guardian of N.S., who attends Hempstead Elementary School.

11.44   CADET SAUVAL, on behalf of and as a parent and/or guardian of A.S., who attends Ramapo High School.

11.45   CARIDA PETIT-NAN, on behalf of and as a parent and/or guardian of J.P., who attends Spring Valley High School, and S.P., who attends Middletown Middle School, located outside of the ERCSD.

11.46   CARL JENKINS, on behalf of and as a parent and/or guardian of T.J., who attends Ramapo High School.

11.47   CARLA JOHNSON, on behalf of and as a parent and/or guardian of L.R., who attends Hempstead Elementary School.

11.48   CARLO JOSEPH, on behalf of and as a parent and/or guardian of C.J., who attends Chester Academy, a public school in Orange County, and J.J., a pre-school toddler, and R.J., who attends Pomona Middle School.

11.49   CARME MEHU, who is a recent graduate of the ERCSD and currently enrolled at the University of Bridgeport.

11.50   CARMEL FEDE, who is a taxpayer and resident of Rockland County.

11.51   CARMELLE AND BOILEAU MEHU, on behalf of and as parents and/or guardians of C.M. and F.M., who both attend Ramapo High School, and K.M., who attends Summit Park Elementary School.

11.52   CARMELLE JUSTINE-MOREAU, who is a taxpayer and resident of Rockland County.

11.53   CAROL SEC, who is a taxpayer and resident of Rockland County.

11.54   CASEY CICERON, who is a taxpayer and resident of Rockland County.

11.55   CATHERINE TELLEZ, on behalf of and as a parent and/or guardian of J.L., who attends Ramapo High School.

11.56   CERIL CAYO, on behalf of and as a parent and/or guardian of B.C., who attends Chestnut Ridge Middle School, and D.C., who attends Fleetwood Elementary School, and R.C., who attends local Head Start pre-school program.

11.57   CHANTAL JEAN, on behalf of and as a parent and/or guardian of S.B., who attends Spring Valley High School.

11.58   CHARLES LOUVIERE, on behalf of and as a parent and/or guardian of J.L., who attends Ramapo High School.

11.59   CHERI PARIS-HUDSON AND JOHN HUDSON, on behalf of and as parents and/or guardians of C.H., who attends Pomona Middle School.

11.60   CHRIS BIBBINS, who is a taxpayer and resident of Rockland County.

11.61   CHRISTINA AND RYAN DUNCAN, on behalf of and as parents and/or guardians of C.D., who attends Ramapo High School, and S.D., who attends Kakiat Elementary School.

11.62   CHRISTINA LOSIER, who is a recent graduate of the ERCSD and currently enrolled at the Rockland Community College.

11.63   CHRISTINIA PATTERSON, on behalf of and as a parent and/or guardian of D.B., who attends Spring Valley High School, and M.B., who attends Eldorado Elementary School.

11.64   CHRISTOPHER AND DONNA MESIBOV, on behalf of and as parents and/or guardians of J.M.1, who attends Chestnut Ridge Middle School, and J.M.2, who attends Spring Valley High School.

11.65   CICERON LAGUERRE, who is a taxpayer and resident of Rockland County.

11.66   CINDY SEVIER, on behalf of and as a parent and/or guardian of J.S.1, a pre-school student, and J.S.2, who attends Eldorado Elementary School.

11.67   CLAUDE DORCELLY, who is a taxpayer and resident of Rockland County.

11.68   COLIN GRANT, who is a taxpayer and resident of Rockland County.

11.69   CONSTANT FRIEND, on behalf of and as a parent and/or guardian of N.F., who attends Spring Valley High School.

11.70   COURTNEY J. JASMIN, who is a recent graduate of the ERCSD and currently enrolled at the University at Albany.

11.71   CRAIG BEITAL, on behalf of and as a parent and/or guardian of D.B., who attends Chestnut Ridge Middle School.

11.72   DANIEL PIERRE MAURICE, on behalf of and as a parent and/or guardian of D.M. and J.M., who both attend school within the ERCSD.

11.73   DAPHKAR FLEURIUS, who is a taxpayer and resident of Rockland County.

11.74   DAVID MCCRAY, who is a taxpayer and resident of Rockland County.

11.75   DAWN AND EROLL HOLNESS, on behalf of and as parents and/or guardians of D.H., who attends Ramapo High School.

11.76   DEBRAH BROWN, on behalf of and as a parent and/or guardian of D.B., who attends Ramapo High School.

11.77   DEMENTRIUS HOLMES, who is a taxpayer and resident of Rockland County.

11.78   DEMEURANT C. LOUISTHELMY, on behalf of and as a parent and/or guardian of D.L. and R.L., who each attend Chestnut Ridge Middle School, and M.L., who attends Spring Valley High School.

11.79   DENISE BALTHAZAR, on behalf of and as a parent and/or guardian of D.B., who attends Spring Valley High School.

11.80   DENISE DEL VALLE, on behalf of and as a parent and/or guardian of L.J., who attends Fleetwood Elementary School, and P.J., who attends Goddard, a private school.

11.81   DESHAWN PARKER, who is a taxpayer and resident of Rockland County.

11.82   DIEUDONNE FERDILUS, on behalf of and as a parent and/or guardian of A.F., who attends Lime Kiln Elementary School and C.F. and J.F., who each attend Ramapo High School, and K.F., who is a 2012 graduate of Ramapo High School, and S.F., who is a 2011 graduate of Ramapo High School.

11.83   DIEVLINE ST. GERMAIN, who is a taxpayer and resident of Rockland County.

11.84   DOMINIQUE REMY, who is a 2009 graduate of Albertus Magnus High School, a private school.

11.85   DONIQUE JOHNSON, on behalf of and as a parent and/or guardian of D.J., who attends Ramapo High School.

11.86   DONNA GARCES, on behalf of and as a parent and/or guardian of S.G., who attends Kakiat Elementary School.

11.87   DONOVAN DUNKLEY, a recent graduate of the ERCSD and currently enrolled at the Rockland Community College.

11.88   DORIAN BUTCHER, on behalf of and as a parent and/or guardian of S.B., who attends Chestnut Ridge Middle School.

11.89   DOROTHY ROONEY, who is a taxpayer and resident of Rockland County.

11.90   DOSSELAINE BADIO, who is a taxpayer and resident of Rockland County.

11.91   DOUGLAS CANTOR, on behalf of and as a parent and/or guardian of Z.C., who attended Spring Valley High School and was a student with special needs.

11.92   DYNAA LAUTURE, on behalf of and as a parent and/or guardian of D.D., who attends Summit Park Elementary School.

11.93   EDENS ZULME, who is a taxpayer and resident of Rockland County.

11.94   EDWARD MEDINA, JR., on behalf of and as a parent and/or guardian of J.M., currently a student at the North Rockland High School who previously attended the Spring Valley High School.

11.95   ELDA GOUBOTH, who is a taxpayer and resident of Rockland County.

11.96   ELDINE CICERON, who is a taxpayer and resident of Rockland County.

11.97   EMMA SUBIAO-DIZON, on behalf of and as a parent and/or guardian of M.D., who attends Ramapo High School.

11.98   EMMANUEL ALEXIS, who is a taxpayer and resident of Rockland County.

11.99   EMMANUEL AUGUSTIN, on behalf of and as a parent and/or guardian of E.A., who attends Spring Valley High School, and K.A., who attends Fleetwood Elementary School, and M.A., who attends Chestnut Ridge Middle School, and S.A., who attends Eldorado Elementary School.

11.100 ENELLE PIERRE, on behalf of and as a parent and/or guardian of C.P., who attends Summit Park Elementary School, and J.P., who attends Pomona Middle School, and K.P., who attends Kakiat Elementary School.

11.101 ENID LAMBERT, on behalf of and as a parent and/or guardian of A.M., who attends Spring Valley High School.

11.102 ENLUS VIERGELINE, on behalf of and as a parent and/or guardian of G.J. and M.J., both of whom attend the Ramapo High School.

11.103 ENNEDY BASQUIAT, who is a taxpayer and resident of Rockland County.

11.104 ESPERA EMMANUEL, who is a taxpayer and resident of Rockland County.

11.105 ESTEL CADET, on behalf of and as a parent and/or guardian of A.C., a pre-school toddler.

11.106 ESTHER DURANDICE, who is a taxpayer and resident of Rockland County.

11.107 ETHENE LARAME, on behalf of and as a parent and/or guardian of I.L., who attends Grace Point, a private school, and J.L. and R.L., who each attend Sacred Heart, a private school.

11.108 ETONNANTE JOSEPH, on behalf of and as a parent and/or guardian of R.J., who attends Chestnut Ridge Middle School.

11.109 EUGENIE EUGENE, on behalf of and as a parent and/or guardian of A.R.1 and A.R.2, who both attend ERCSD middle schools.

11.110 FAMILLA EPPS, on behalf of and as a parent and/or guardian of J.E., who attends Spring Valley High School.

11.111 FANNIE ONABANJO Q, on behalf of and as a parent and/or guardian of D.B., who attends Hilltop, an elementary school outside of the ERCSD.

11.112 FARA ST. FLEUR, who is a taxpayer and resident of Rockland County.

11.113 FATIMA DARLENE CANCIO, a graduate of the ERCSD and currently enrolled at the Rockland Community College.

11.114 FELICIA EVANS, on behalf of and as a parent and/or guardian of C.E., who attends Pomona Middle School, and M.E., who attends Summit Park Elementary School.

11.115 FLORE ST. LOUIS, on behalf of and as a parent and/or guardian of V.S., who attends Eldorado Elementary School.

11.116 FRANCENA HEYWARD, on behalf of and as a parent and/or guardian of M.C., who attends Pomona Middle School, and M.S., who attends Grandview Elementary School.

11.117 FRANCIS JAMAR GREEN, on behalf of and as a parent and/or guardian of I.G., who attends Fleetwood Elementary School, and H.G. and N.G., both of whom are pre-school toddlers.

11.118 FRANCKEL M. JOSEPH, who is a taxpayer and resident of Rockland County.

11.119 FRANCOIS BEVOLUS, who is a taxpayer and resident of Rockland County.

11.120 FRANDY GEORGES, who is a taxpayer and resident of Rockland County.

11.121 FRANKY SAINVIL, who is a taxpayer and resident of Rockland County.

11.122 FRED MICHEL, who is a taxpayer and resident of Rockland County.

11.123 GARFIELD WALKER, on behalf of and as a parent and/or guardian of A.W., who attends Elmwood Elementary School, and J.W., who attends Spring Valley High School.

11.124 GENIESE AND BAUDLAFRE THEAGENE, on behalf of and as parents and/or guardians of S.F., who attends Margetts Elementary School.

11.125 GEORGES DELALEU, on behalf of and as a parent and/or guardian of D.C., who attends Grandview Elementary School.

11.126 GERALD CHEREMEANT, who is a taxpayer and resident of Rockland County.

11.127 GERRY DEDIVITIS, on behalf of and as a parent and/or guardian of N.D., who attends Spring Valley High School.

11.128 GINA M. DUNCAN, a 2011 graduate of the Ramapo High School.

11.129 GLADYS CAYO, on behalf of and as a parent and/or guardian of M.P., who graduated from Spring Valley High School in 2009, and S.J., who attends Temple Bethel, a private school.

11.130 GLORIA KEY, on behalf of and as a parent and/or guardian of A.K., who attends Chestnut Ridge Middle School, and S.K., who currently attends Harvard University, and T.K., who currently attends Hudson Valley College.

11.131 GUY CHARLES, on behalf of and as a parent and/or guardian of A.C., who attends Albertus Magnus High School, a private school, and M.C. and T.C., who both attend Sacred Heart, a private school.

11.132 HARRIETT CHAMBERS, on behalf of and as a parent and/or guardian of A.J. and J.C., who each attend Kakiat Elementary School, and R.C., who attends the Ramapo High School.

11.133 HARVEY WILLIAMS, on behalf of and as a parent and/or guardian of M.A. and M.J., who both attend the Chestnut Ridge Middle School.

11.134 HIRAM RIVERA, on behalf of and as a parent and/or guardian of A.R., who attends Kakiat Elementary School, and T.R., who attends Ramapo High School.

11.135 ILLYANA DEJEAN, on behalf of and as a parent and/or guardian of M.F., who attends Spring Valley High School.

11.136 INGRID BOUCICANT, who is a taxpayer and resident of Rockland County.

11.137 INGRID PENA, on behalf of and as a parent and/or guardian of A.E., who attends Kakiat Elementary School, and B.E., who attends Pomona Middle School, and C.E., who attends Summit Park Elementary School.

11.138 IREUS REGINAL, who is a taxpayer and resident of Rockland County.

11.139 ISENIELA JEAN CHARLES, who is a taxpayer and resident of Rockland County.

11.140 ISRAEL MEDINA, on behalf of and as a parent and/or guardian of H.M., who attends Lime Kiln Elementary School.

11.141 JACQUELINE GRANNUM, on behalf of and as a parent and/or guardian of N.G.1, who attends Pomona Middle School, and N.G.2 and N.G.3, who both attend the Ramapo High School.

11.142 JAMES GULIFIELD, on behalf of and as a parent and/or guardian of J.G., who attends Elmwood Elementary School, and Q.G.1, who attends Margetts Elementary School, and Q.G.2, who attends Spring Valley High School.

11.143 JANAY JORDAN, on behalf of and as a parent and/or guardian of J.F., who attends Hempstead Elementary School.

11.144 JEAN BELLANTOU, who is a taxpayer and resident of Rockland County.

11.145 JEAN BOUCICANT, who is a taxpayer and resident of Rockland County.

11.146 JEAN CLAUDE AND LANA AUGUSTE, on behalf of and as parents and/or guardians of S.A., who attends Spring Valley High School.

11.147 JEAN DENIS, on behalf of and as a parent and/or guardian of A.D., who attends Summit Park Elementary School, and S.D., who attends Ramapo High School, and W.D., who attends Pomona Middle School.

11.148 JEAN JEAN CHARLES, on behalf of and as a parent and/or guardian of D.J., who attends Spring Valley High School.

11.149 JEAN JOSEPH, on behalf of and as a parent and/or guardian of J.J., who attends Chestnut Ridge Middle School, and K.J., who attends Spring Valley High School.

11.150 JEAN MARIO AND MARIMENE VIL, on behalf of and as parents and/or guardians of R.V., who attends Pomona Middle School.

11.151 JEAN WILSON JOCELIN, on behalf of and as a parent and/or guardian of S.J., who attends Ramapo High School.

11.152 JEAN-RENE VICSAMA, on behalf of and as a parent and/or guardian of F.V., who attends Chestnut Ridge Middle School, and R.V., who attends Spring Valley High School.

11.153 JEFHTEY CAJUSTE, on behalf of and as a parent and/or guardian of K.R., who attends Grandview Elementary School.

11.154 JERISON LORA, who is a taxpayer and resident of Rockland County.

11.155 JERMAINE WALKER, on behalf of and as a parent and/or guardian of I.W., N.W., and T.W.

11.156 JESITA CICERON, who is a taxpayer and resident of Rockland County.

11.157 JESULA AUGUSTE, who is a taxpayer and resident of Rockland County.

11.158 JOANNE CHERIMOND, who is a taxpayer and resident of Rockland County.

11.159 JOCELIN NOEL, on behalf of and as a parent and/or guardian of E.N., who attends the Jesse Kaplan School, a B.O.C.E.S.-based program serving children with special needs, and J.N., who attends Grandview Elementary School.

11.160 JOCELINE SHANGASE, on behalf of and as a parent and/or guardian of D.S., who attends Ramapo High School.

11.161 JOEL GUE, who is a recent graduate of the ERCSD and currently enrolled at the Rockland Community College.

11.162 JOHN BOYKIN, who is a taxpayer and resident of Rockland County.

11.163 JOHN MILES, on behalf of and as a parent and/or guardian of X.M., who attends Chestnut Ridge Middle School.

11.164 JOHNBERRY BADIO, who is a taxpayer and resident of Rockland County.

11.165 JORGE MONTANO, on behalf of and as a parent and/or guardian of G.M., who attends Ramapo High School.

11.166 JOSEPH CHARLES CLERVEAUX, on behalf of and as a parent and/or guardian of C.C., who attends the East Ramapo Early Childhood Center.

11.167 JOSEPH CHARLES, who is a taxpayer and resident of Rockland County.

11.168 JOSEPH FLEURANT, who is a taxpayer and resident of Rockland County.

11.169 JOSETTE FRANCOIS, who is a taxpayer and resident of Rockland County.

11.170 JUANA SANTIAGO, on behalf of and as a parent and/or guardian of C.G., who attends Ramapo High School.

11.171 JUCANGE GASPORD, who is a taxpayer and resident of Rockland County.

11.172 JUDITH DESIR, on behalf of and as a parent and/or guardian of J.S., a pre-school toddler.

11.173 JUDITH ISRAEL, who is a taxpayer and resident of Rockland County.

11.174 JUDITH JOHN-ROBINSON, on behalf of and as a parent and/or guardian of L.R., who attends Lime Kiln Elementary School, and P.R., who attends Ramapo High School.

11.175 JUDY AND MATT KARIUS, on behalf of and as parents and/or guardians of F.K., who attends Ramapo High School.

11.176 JULIA DERIVAL, on behalf of and as a parent and/or guardian of S.D., who attends Ramapo High School.

11.177 JULIA THOMPSON, who is a taxpayer and resident of Rockland County.

11.178 JULYSSE ALEXANDRE, who is a taxpayer and resident of Rockland County.

11.179 JUNIE CLAUTAIRE, on behalf of and as a parent and/or guardian of C.C. and T.C., who each attend Spring Valley High School, and J.J., who attends Fleetwood Elementary School.

11.180 JUSTIN BUDDE, who is a 2008 graduate of the Ramapo High School.

11.181 KALICHA CAMERON, on behalf of and as a parent and/or guardian of K.C. and O.C., who each attend Chestnut Ridge Middle School.

11.182 KATHLEEN CANCIO, who is a recent graduate of the ERCSD and currently enrolled at Northeastern University.

11.183 KATHLEEN D. CASTOR, who is a taxpayer and resident of Rockland County.

11.184 KATHRIN BALL, on behalf of and as a parent and/or guardian of K.J., who attends Kakiat Elementary School, and L.J., who attends Hempstead Elementary School.

11.185 KATHRYN KARIUS, who is a recent graduate of the ERCSD and currently enrolled at the State University of New York in Stony Brook.

11.186 KATIANA SAME, who is a graduate of the East Ramapo Central School District.

11.187 KATRINA GRIGSBY, on behalf of and as a parent and/or guardian of K.G., who attends Eldorado Elementary School.

11.188 KELLY SCOTT, who is a taxpayer and resident of Rockland County.

11.189 KENICE HIBBERT, on behalf of and as a parent and/or guardian of E.P., who attends Grandview Elementary School.

11.190 KENNETH BOLT, who is a taxpayer and resident of Rockland County.

11.191 KENNETH ISSACS, who is a taxpayer and resident of Rockland County.

11.192 KERNEY AND SANDRA OBY, on behalf of and as grandparents and/or guardians of D.O., who attends the Ramapo High School.

11.193 KETNA FRENEL FORESTAL, on behalf of and as a parent and/or guardian of D.F.1, who attends Kakiat Elementary School, and D.F.2, who attends Lime Kiln Elementary School, and K.F., who attends Summit Park Elementary School.

11.194 KIMBERLEY TREVISAN, on behalf of and as a parent and/or guardian of K.T. and V.T.1, who each attend Grandview Elementary School, and S.T. and V.T.2, who each attend Lime Kiln Elementary School.

11.195 KIMBERLY COLLICA-COX, on behalf of and as a parent and/or guardian of A.C., a pre-school toddler, and R.C., who attends Pomona Middle School.

11.196 KRISTEN RABELER, on behalf of and as a parent and/or guardian of S.O., who attends Spring Valley High School.

11.197 KRYSTAL WILSON, on behalf of and as a parent and/or guardian of E.W., who attends Pomona Middle School, and M.E., who attends Summit Park Elementary School.

11.198 LACHANDA JOHNSON, on behalf of and as a parent and/or guardian of R.J., a recent graduate of the ERCSD currently enrolled at Mansville State College.

11.199 LAGUERRE BERNADIN, on behalf of and as a parent and/or guardian of B.L., who attends Margetts Elementary School, and W.L., who attends Elmwood Elementary School.

11.200 LAMARRE BEAUVAIS, who is a taxpayer and resident of Rockland County.

11.201 LAMARTINE LARAME, on behalf of and as a parent and/or guardian of L.L.1, who attends Kakiat Elementary School, and L.L.2, who attends Ramapo High School.

11.202 LANA RHEUBOTTOM, on behalf of and as a parent and/or guardian of J.R., who attends Ramapo High School.

11.203 LATASHA D. EVANS, on behalf of and as a parent and/or guardian of O.J., who attends Ramapo High School, and R.F., who attends Lime Kiln Elementary School.

11.204 LATICIA THEZAN, on behalf of and as a parent and/or guardian of C.T., who attends Chestnut Ridge Middle School, and  J.T., who attends Eldorado Elementary School.

11.205 LATTICHA ACKERMAN, on behalf of and as a parent and/or guardian of D.A., who attends Spring Valley High School, and J.J., who attends Margetts Elementary School.

11.206 LENARD SAINVIL, on behalf of and as a parent and/or guardian of C.B., who attends Lime Kiln Elementary School.W.B., who attends Pomona Middle School.

11.207 LENTZ EUGENE, who is a taxpayer and resident of Rockland County.

11.208 LEON AND MONA CAYO, on behalf of and as parents and/or guardians of I.C., who attends Chestnut Ridge Middle School.

11.209 LEVY CAZEAU, on behalf of and as a parent and/or guardian of T.C., who attends Eldorado Elementary School.

11.210 LINDA HARVEY, on behalf of and as a parent and/or guardian of T.H., who attends Ramapo High School, and B.H.

11.211 LISA GOLDBERG, on behalf of and as a parent and/or guardian of B.M., who attends Chestnut Ridge Middle School, and G.G., who attends Margetts Elementary School, and M.G., who attends Elmwood Elementary School, and S.M., who attends Spring Valley High School.

11.212 LISA MEYERS, on behalf of and as a parent and/or guardian of S.M., who attends Academy of Holy Angels, a private school.

11.213 LISA PHILLIPS, on behalf of and as a parent and/or guardian of O.P., who attends Ramapo High School.

11.214 LITIA HAGANS, on behalf of and as a parent and/or guardian of D.C., who attends Elmwood Elementary School, and D.S., who attends Ramapo High School.

11.215 LIZANNE BRUNA, on behalf of and as a parent and/or guardian of E.B., who attends East Ramapo Early Childhood Center, and F.B., who attends Elmwood Elementary School, and L.B., who attends Spring Valley High School.

11.216 LOCITA PIERRE, on behalf of and as a parent and/or guardian of C.E., who attends Chestnut Ridge Middle School.

11.217 LORA FULLARD, who is a taxpayer and resident of Rockland County.

11.218 LORRAINE ALCIMAS, who is a taxpayer and resident of Rockland County.

11.219 LOUIS JEAN JACQUES, on behalf of and as a parent and/or guardian of J.J.

11.220 LOUIS WHARTON, who is a recent graduate of the ERCSD and currently enrolled at the Rockland Community College.

11.221 LUCIENNE SAINT FORT, on behalf of and as a parent and/or guardian of D.P., H.R., and M.P., all of whom attend Spring Valley High School.

11.222 LUCY BROCKS, who is a taxpayer and resident of Rockland County.

11.223 MACK ROBERTS, on behalf of and as a parent and/or guardian of S.L. and T.B., who each attend Summit Park Elementary School.

11.224 MAE OLA MCGILL, on behalf of and as a parent and/or guardian of T.L., who attends Margetts Elementary School.

11.225 MAGDA DESDUNES, on behalf of and as a parent and/or guardian of O.D.

11.226 MAGDA PIERRE-LOUIS, who is a taxpayer and resident of Rockland County.

11.227 MALLORY JOHNSON, on behalf of and as a parent and/or guardian of A.L., who attends a pre-school program.

11.228 MANUEL AND MAYRA PALMA, on behalf of and as parents and/or guardians of C.P., currently attending the State University of New York in Albany, and J.P., who attends Eldorado Elementary School, and M.P., who attends Spring Valley High School.

11.229 MARC  E. DORSANVIL, on behalf of and as a parent and/or guardian of M.D., who attends Spring Valley High School, and N.D., who attends Chestnut Ridge Middle School.

11.230 MARC-AUGUSTE DESERT, who is a taxpayer and resident of Rockland County.

11.231 MARCUS EXANTUS, who is a taxpayer and resident of Rockland County.

11.232 MARGARET TUCK, on behalf of and as a parent and/or guardian of J.A., who attends Ramapo High School.

11.233 MARGUEDALA AND JEAN EMMANUEL LAHENS, on behalf of and as parents and/or guardians of I.L., who attends Fleetwood Elementary School, and M.L., who attends Eldorado Elementary School.

11.234 MARIA FLORES-MARTINEZ, on behalf of and as a parent and/or guardian of A.M., who attends Pomona Middle School.

11.235 MARIA SINGH, on behalf of and as a parent and/or guardian of E.S., who attends Ramapo High School.

11.236 MARIE  MATHELUS, on behalf of and as a parent and/or guardian of A.M., who attends Hempstead Elementary School.

11.237 MARIE AND JUDSON LOUIS, on behalf of and as parents and/or guardians of S.L., who attends Chestnut Ridge Middle School.

11.238 MARIE AND PATRICK JEAN BAPTISTE, on behalf of and as parents and/or guardians of D.J.1, who attends Grandview Elementary School, and D.J.2, who attends Lime Kiln Elementary School, and P.J., who attends Pomona Middle School.

11.239 MARIE AURELUS, on behalf of and as a parent and/or guardian of C.A. and J.A., who each attend Fleetwood Elementary School.

11.240 MARIE CADICHON, who is a taxpayer and resident of Rockland County.

11.241 MARIE CAIZON, who is a taxpayer and resident of Rockland County.

11.242 MARIE CHARLES, who is a taxpayer and resident of Rockland County.

11.243 MARIE CLERVEAUX, who is a taxpayer and resident of Rockland County.

11.244 MARIE JOSEPH, who is a taxpayer and resident of Rockland County.

11.245 MARIE KATTY DORLEUS, who is a taxpayer and resident of Rockland County.

11.246 MARIE LAFONTANT, on behalf of and as a parent and/or guardian of S.D., who is a recent graduate of the ERCSD currently enrolled at the Rockland Community College.

11.247 MARIE LEONARD, on behalf of and as a parent and/or guardian of A.L., who attends Spring Valley High School.

11.248 MARIE NICOLE AND SAMESON DESCAS, on behalf of and as parents and/or guardians of N.D., who attends Pomona Middle School, and S.D., who attends Ramapo High School.

11.249 MARIE ROSE EXAUTES, who is a taxpayer and resident of Rockland County.

11.250 MARIE ROSE MICHEL, on behalf of and as a parent and/or guardian of Y.M., who attends Kakiat Elementary School.

11.251 MARIE SOMISE LOUIS, on behalf of and as a parent and/or guardian of S.L., who attends St. Peter's, a private school.

11.252 MARIE THERES LUBIN, on behalf of and as a parent and/or guardian of S.L., who attends Ramapo High School, and A.L.1, A.L.2, and B.L..

11.253 MARIE Y. DELPE MANBRUN, who is a taxpayer and resident of Rockland County.

11.254 MARIEE COMEAU, who is a taxpayer and resident of Rockland County.

11.255 MARILIA MONTILUS , on behalf of and as a parent and/or guardian of S.M., who attends Spring Valley High School.

11.256 MARION GRANT, who is a taxpayer and resident of Rockland County.

11.257 MARJORIE METELLUS, on behalf of and as a parent and/or guardian of I.C., who attends Lime Kiln Elementary School.

11.258 MARLENE ISRAEL, on behalf of and as a parent and/or guardian of B.I.1, who attends Chestnut Ridge Middle School, and B.I.2, who attends St. Joseph High School, a private school.

11.259 MARLENE SANCHEZ, on behalf of and as a parent and/or guardian of R.F., who attends Ramapo High School.

11.260 MARTHA SAINT FORT, who is a taxpayer and resident of Rockland County.

11.261 MARTINE NARCISSE, on behalf of and as a parent and/or guardian of D.N. and M.N., who both attend Kakiat Elementary School.

11.262 MARY HAYES, on behalf of and as a parent and/or guardian of Z.H., who attends Chestnut Ridge Middle School.

11.263 MARY JAMES GIBSON, on behalf of and as a parent and/or guardian of K.C., who attends Fleetwood Elementary School.

11.264 MARYANN WILLIAMS, on behalf of and as a parent and/or guardian of C.W., K.W., O.W., and T.W., all of whom attend Ramapo High School.

11.265 MATHIEU DIEUJUSTE, who is a taxpayer and resident of Rockland County.

11.266 MEGHAN C. FITZGERALD, on behalf of and as a parent and/or guardian of S.C., who attends St. Peter's, a private school.

11.267 MELVERLEEN BULLOCK, on behalf of and as a parent and/or guardian of C.B., and

11.268 MICHAEL LAKES, on behalf of and as a parent and/or guardian of A.L., who attends Chestnut Ridge Middle School.

11.269 MICHELE LOVELL, on behalf of and as a parent and/or guardian of I.L., who attends Pomona Middle School.

11.270 MICHELLE LARAME, who is a taxpayer and resident of Rockland County.

11.271 MINI JACOB, on behalf of and as a parent and/or guardian of J.J.1 and J.J.2, who both attend Ramapo High School.

11.272 MINNIE WILSON, on behalf of and as a parent and/or guardian of I.W., who attends Grandview Elementary School.

11.273 MONA LEGER, on behalf of and as a parent and/or guardian of M.L., who attends Pomona Middle School, and S.L., who attends Lime Kiln Elementary School.

11.274 MONESE THEODORE, on behalf of and as a parent and/or guardian of R.T., who attends Ramapo High School.

11.275 MURIELLE GUERIN, on behalf of and as a parent and/or guardian of M.G., who attends Ramapo High School.

11.276 MYRTHO FERDINAND, on behalf of and as a parent and/or guardian of B.L., who attends Margetts Elementary School, and W.L., who attends Elmwood Elementary School.

11.277 NADEGE DORCELLY, who is a taxpayer and resident of Rockland County.

11.278 NADIA DORCELLY, who is a taxpayer and resident of Rockland County.

11.279 NAMOI JOSEPH, on behalf of and as a parent and/or guardian of M.R..

11.280 NANA TWUM, who is a taxpayer and resident of Rockland County.

11.281 NANCY AND RAPHAEL TOUSSAINT, on behalf of and as parents and/or guardians of H.T., who attends Eldorado Elementary School.

11.282 NAOMI BAHLE, who is a taxpayer and resident of Rockland County.

11.283 NAOMI LEGERME, who is a recent graduate of the ERCSD and currently enrolled at the Delaware State University.

11.284 NAOMY LAGUERRE, on behalf of and as a parent and/or guardian of D.B. and J.A., who each attend Fleetwood Elementary School.

11.285 NASIK ELAHI, on behalf of and as a parent and/or guardian of K.E. and S.E., each of whom attends the Ramapo High School.

11.286 NATALIE SANCHEZ, on behalf of and as a parent and/or guardian of A.S., who attends Albertus Magnus High School, a private school, and C.S. and M.S., who each attended Spring Valley High School.

11.287 NESLIE CADET ALTUME, who is a taxpayer and resident of Rockland County.

11.288 NICOLAS MONTANO, who is a recent graduate of the ERCSD.

11.289 NICOLE RAPHINO, on behalf of and as a parent and/or guardian of A.M., who attends Ramapo High School, and A.P., who attends the B.O.C.E.S. program pursuing his G.E.D., and M.M., who attends Summit Park Elementary School.

11.290 ODNY  EUGENE, on behalf of and as a parent and/or guardian of J.E., who attends Kakiat Elementary School.

11.291 ONIKKA WHITEHEAD, on behalf of and as a parent and/or guardian of E.W. and I.W., who each attend Kakiat Elementary School.

11.292 ORICHA HERNANDEZ, who is a 2012 graduate of the Ramapo High School.

11.293 ORLANDO LORVEUS, on behalf of and as a parent and/or guardian of A.L., who attends Elmwood Elementary School, and J.L., who attends Spring Valley High School, and D.L., a graduate of the ERCSD and currently enrolled at the Rockland Community College.

11.294 OSNY EXANTUS, who is a taxpayer and resident of Rockland County.

11.295 OVID COLAS, who is a taxpayer and resident of Rockland County.

11.296 PAMELA HILL, on behalf of and as a parent and/or guardian of K.W.1, who attends Chestnut Ridge Middle School, and K.W.2, who attends Fleetwood Elementary School.

11.297 PAMELA SIMPSON, on behalf of and as a parent and/or guardian of Q.W., who attends Ramapo High School.

11.298 PATRICIA BYNUM, who is a taxpayer and resident of Rockland County.

11.299 PATRICIA COLLINS, on behalf of and as a parent and/or guardian of J.C., who attends Pomona Middle School, and J.M., who attends Lime Kiln Elementary School.

11.300 PATRICIA DESROCHES, who is a graduate of the ERCSD and currently enrolled at the Rockland Community College.

11.301 PATRICIA JOURDAIN, who is a taxpayer and resident of Rockland County.

11.302 PAUL LARAME, on behalf of and as a parent and/or guardian of V.L., who attends Ramapo High School.

11.303 PEARLINE WRAY, on behalf of and as a parent and/or guardian of R.M., who attends Ramapo High School.

11.304 PEGGY FLOYD, on behalf of and as a parent and/or guardian of S.F., who attends .

11.305 PETER SHARPE, who is a taxpayer and resident of Rockland County.

11.306 PHYNESCHEA SHAARIEFEREL, on behalf of and as a parent and/or guardian of J.J., who was formerly enrolled in the Hempstead Elementary School, and T.J., who was formerly enrolled in the Pomona Middle School.

11.307 PIERRE DESROSIERS, on behalf of and as a parent and/or guardian of C.D., who graduated from Spring Valley High School in 2011.

11.308 PIERRE LOUIS CYNILLE, who is a taxpayer and resident of Rockland County.

11.309 PRISCILLA BROWN, on behalf of and as a parent and/or guardian of A.A., who attends Ramapo High School.

11.310 PRUCILE VALEUS, on behalf of and as parents and/or guardians of E.V., who graduated from Spring Valley High School in 2010, and N.V. and R.V., who each attend Spring Valley High School.

11.311 PRUDENCE WRAY, on behalf of and as a parent and/or guardian of G.M., who attends Kakiat Elementary School, and N.R., who attends Ramapo High School.

11.312 RAMONA JONES, on behalf of and as a parent and/or guardian of E.J. and Y.J., who both attend Spring Valley High School, and  G.J. and T.J., who both attend Elmwood Elementary School.

11.313 RAQUEL NEWELL, on behalf of and as a parent and/or guardian of H.N., a pre-school toddler.

11.314 RAQUEL PAUL, a recent graduate of the ERCSD and currently enrolled at St. John's University.

11.315 RASHEED JERIMIE, who is a taxpayer and resident of Rockland County.

11.316 RAYMONDE BEAUVAIS, who is a taxpayer and resident of Rockland County.

11.317 RAYSHON PETTWAY, who is a taxpayer and resident of Rockland County.

11.318 REBEA GRARDA, who is a taxpayer and resident of Rockland County.

11.319 REBECCA ADJETEY, who is a taxpayer and resident of Rockland County.

11.320 REGINALDA BRUNO, on behalf of and as a parent and/or guardian of S.A., a pre-school toddler.

11.321 REGINE TAYETTE, on behalf of and as a parent and/or guardian of M.M., who attends Hempstead Elementary School.

11.322 RETTVIE JOURDAIN, on behalf of and as a parent and/or guardian of P.D., who attends Ramapo High School.

11.323 RICKEY MCGILL, on behalf of and as a parent and/or guardian of R.M., who attends Spring Valley High School, and S.M..

11.324 ROBERT BADIO, who is a taxpayer and resident of Rockland County.

11.325 ROBERT JAMES, who is a taxpayer and resident of Rockland County.

11.326 ROBERT MALEBRANCHE, who is a taxpayer and resident of Rockland County.

11.327 ROBERT MCGEE, on behalf of and as a parent and/or guardian of R.M., who attends Spring Valley High School.

11.328 ROBERT YOUNG, on behalf of and as a parent and/or guardian of R.Y., who attends Pomona Middle School.

11.329 ROLAND AND MARIE JOSIE ALEXANDRE, on behalf of and as parents and/or guardians of D.A. and E.A., who each attend Grandview Elementary School, and Z.A., who attends Pomona Middle School.

11.330 RONALD ROSEMOND, on behalf of and as a parent and/or guardian of A.L., who attends Lime Kiln Elementary School.

11.331 RONY JACQUES, on behalf of and as a parent and/or guardian of M.J., who attends an ERCSD middle school, and T.J. and T.R.J., who both attend Ramapo High School.

11.332 ROSE FRASER, who is a taxpayer and resident of Rockland County.

11.333 ROSELAURE FLEURANTIN, on behalf of and as a parent and/or guardian of R.F., who attends Hempstead Elementary School, and S.F., who attends Grandview Elementary School.

11.334 ROSENAY AND ELZA JACQUES, on behalf of and as parents and/or guardians of A.L., who attends Fleetwood Elementary School, and C.J., who attends Chestnut Ridge Middle School, and  J.J., who attends Spring Valley High School.

11.335 ROWSON BOIROND, who graduated from Spring Valley High School in 2007.

11.336 RUBIN JOANUS, on behalf of and as a parent and/or guardian of B.J., G.J., and P.J., who all attend Hempstead Elementary School.

11.337 RUSSELL BISHOP, who is a taxpayer and resident of Rockland County.

11.338 RUTH ARCHANGE, on behalf of and as a parent and/or guardian of J.L., who attends Summit Park Elementary School, and R.L.1, who attends Kakiat Elementary School, and R.L.2, who attends Pomona Middle School.

11.339 RUTH LAUTURE-WALKER, on behalf of and as a parent and/or guardian of J.L. and M.L., who both attend Spring Valley High School, and O.L., who attends Eldorado Elementary School.

11.340 SAHARA EVANS, who is a taxpayer and resident of Rockland County.

11.341 SANTANA ALLARD, on behalf of and as a parent and/or guardian of J.S., who attends Lime Kiln Elementary School, and S.A., who attends Grandview Elementary School.

11.342 SERETTE LAURENT, on behalf of and as a parent and/or guardian of A.C., a pre-school toddler.

11.343 SERGO BEAUBOEUF, on behalf of and as a parent and/or guardian of M.M., who attends Elmwood Elementary School.

11.344 SERGO PIERRE, on behalf of and as a parent and/or guardian of A.P., who attends Ramapo High School.

11.345 SHANTEL JACKSON, on behalf of and as a parent and/or guardian of J.B., who attends Grandview Elementary School.

11.346 SHARON BRYANT, who is a taxpayer and resident of Rockland County.

11.347 SHARON PARKER, on behalf of and as a parent and/or guardian of A.P., who attends Ramapo High School.

11.348 SHEILA JACKSON, on behalf of and as a parent and/or guardian of S.J., who attends Spring Valley High School.

11.349 SHEILA JEFFRIES, on behalf of and as a parent and/or guardian of A.J., who attends Spring Valley High School, and J.J., who attends Elmwood Elementary School.

11.350 SHELOMITHE JEAN, who is a student age 18 or older at Ramapo High School.

11.351 SHERINE GORDON, on behalf of and as a parent and/or guardian of B.L.1, who attends Pomona Middle School, and B.L.2, who attends Ramapo High School.

11.352 SHIRLEY JACKSON, on behalf of and as a parent and/or guardian of T.W., who attends Lime Kiln Elementary School.

11.353 SIABHAIN SNEAD, on behalf of and as a parent and/or guardian of C.B. and T.B., who both attend Pomona Middle School.

11.354 SONIA B. WATKINS, on behalf of and as a parent and/or guardian of G.W., who attends Chestnut Ridge Middle School.

11.355 STEPFON MCCRAY, a recent graduate of the ERCSD and currently enrolled at Westchester Community College.

11.356 STEPHANIE KARIUS, a 2009 graduate of the Ramapo High School.

11.357 STEPHANIE LAURENT, on behalf of and as a parent and/or guardian of G.M.1 and G.M.2, who both attend the Hempstead Elementary School.

11.358 STERLING AND LORRAINE INZAR, on behalf of and as parents and/or guardians of D.I., who attends Hackley, a private school, and T.I., who attends Lime Kiln Elementary School.

11.359 STEVEN AND EMILIA WHITE, on behalf of and as parents and/or guardians of A.W., who graduated from Spring Valley High School in 2012.

11.360 SYBIL BEACH-EDWARDS, on behalf of and as a parent and/or guardian of A.E., who attends Pomona Middle School.

11.361 SYLVIE PIERRE, on behalf of and as a parent and/or guardian of E.P., who attends Chestnut Ridge Middle School.

11.362 TAISHA PAQUIOT, on behalf of and as a parent and/or guardian of P.D., who attends Ramapo High School.

11.363 TAMME WHITAKER, on behalf of and as a parent and/or guardian of R.W., a 2011 graduate of the Ramapo High School.

11.364 TATIANA PIERRE-LOUIS, who is a taxpayer and resident of Rockland County.

11.365 TERRELL ACKERMAN, who is a recent graduate of the ERCSD and currently enrolled at the Rockland Community College.

11.366 TERRY BYNUM, on behalf of and as a parent and/or guardian of A.B., who attends Eldorado Elementary School, and D.B., who attends Chestnut Ridge Middle School.

11.367 TJOKDALEM ARSA ARTHA, who is a taxpayer and resident of Rockland County.

11.368 TONY MARSEILLE, on behalf of and as a parent and/or guardian of E.M., who attends Sacred Heart, a private school.

11.369 TRACY HARRIS, on behalf of and as a parent and/or guardian of C.H., who attends Lime Kiln Elementary School, and E.H., who attends Grandview Elementary School, and N.H., who attends Ramapo High School.

11.370 VALQUISE LOUIS-JACQUES, on behalf of and as a parent and/or guardian of A.L., who attends Lime Kiln Elementary School.

11.371 VELLA MARDY-ARRE, on behalf of and as a parent and/or guardian of R.M., who attends Fleetwood Elementary School.

11.372 VERONA GREY, who is a taxpayer and resident of Rockland County.

11.373 VERONICA LEVEILLE, on behalf of and as a parent and/or guardian of C.L., who attends Lime Kiln Elementary School, and R.K., a recent graduate of the Ramapo High School, and L.L. and S.L., who each attend Ramapo High School.

11.374 VICTORIA COPELAND, on behalf of and as a parent and/or guardian of D.C., who attends Spring Valley High School.

11.375 VICTORIA JEAN CHARLES, who is a taxpayer and resident of Rockland County.

11.376 VIRGINIA HARRIS, on behalf of and as a parent and/or guardian of T.H., who attends Spring Valley High School.

11.377 VITAL AND TANYA JOSEPH, on behalf of and as parents and/or guardians of S.J., who attends Summit Park Elementary School.

11.378 WELMIR FRANCOIS, a 2008 graduate of the ERCSD.

11.379 WILBUR STUART, who is a taxpayer and resident of Rockland County.

11.380 WILLARD BODIE, on behalf of and as a parent and/or guardian of D.W., who attends Ramapo High School.

11.381 WILLIAM AND TEAL YVETTE TYNES, on behalf of and as parents and/or guardians of D.S., a recent graduate of the Ramapo High School, and D.T., who attends Ramapo High School.

11.382 WILLIAM FLOYD, on behalf of and as a parent and/or guardian of J.F., who attends Hempstead Elementary School.

11.383 WILMA GLOVER-KOOMSON, on behalf of and as a parent and/or guardian of F.K., who attends Pomona Middle School.

11.384 YANIK CHARLES-PIERRE, who is a taxpayer and resident of Rockland County.

11.385 YOLANDA BARHAM, on behalf of and as a parent and/or guardian of D.O., who attends Spring Valley High School.

11.386 YOLANDA NAVARRO, on behalf of and as a parent and/or guardian of R.P., who attends St. Augustine's School, a private school.

11.387 YOLANDA WHITE, who is a taxpayer and resident of Rockland County.

11.388 YOLANDE PANIAGUE, on behalf of and as a parent and/or guardian of L.H., a pre-school toddler, and O.H., who attends Hempstead Elementary School.

11.389 YOLENE ALTIDOR, who is a taxpayer and resident of Rockland County.

11.390 YOLENE HIPPOLYTE, on behalf of and as a parent and/or guardian of I.H.1 and I.H.2, who each attend Pomona Middle School, and R.H., who attends Kakiat Elementary School.

11.391 YONEL CADICHON, who is a taxpayer and resident of Rockland County.

11.392 YVELOURD TREVIL, on behalf of and as a parent and/or guardian of Y.T., who attends Spring Valley High School.

11.393 YVETA AND HARRY BELANGE, on behalf of and as parents and/or guardians of E.B. and Y.B., who each attend Ramapo High School.

11.394 YVONNE LORINCE, on behalf of and as a parent and/or guardian of S.L., who attends Pomona Middle School.

12.     Plaintiff District is a school district created pursuant to Section 1805 of the New York State Education Law ("N.Y. Educ. Law") that includes the public schools in parts of the

Towns of Ramapo, Clarkstown, Haverstraw, and Orangetown; all or parts of the villages of Spring Valley, New Square, Chestnut Ridge, Pomona, Airmont, Wesley Hills, Kaser, and New Hempstead, and the hamlets of Hillcrest and Monsey.[3]

13.    The District is included as a necessary party because the lawsuit, in part, seeks restitution from Defendants to the District.

14.    Defendants are:

a.    Daniel Schwartz, who was a member of the Board during some or all of the period between July 2011 to present and is currently President of the Board;

i.  the Board is a Board of Education authorized by Section 2503 of the N.Y. Educ. Law to administer the District.

ii.  The Board was or continues to be the official body charged with the responsibility for developing policies with respect to the administration and operation of the public schools in the District N.Y. Educ. Law.

b.    Yehuda Weissmandl, who was a member of the Board during some or all of the period between 2011 to present and is currently on the Board.

c.    Moses Friedman, who was a member of the Board during some or all of the period between May 18, 2010 to present and is currently on the Board.

d.    Moshe Hopstein, who was a member of the Board during some or all of the period between July 2008 to present and is currently on the Board.

e.    Eliyahu Solomon, who was a member of the Board during some or all of the period between July 2009 to present and is currently to the Board.

---

[3]    *See* Exh. 1, map of the District.

f.      Nathan Rothschild, who was a member of the Board during some or all of the period between the 2008-2009 school year to April 2011.

g.      Aron Wieder, who was a member of the Board during some or all of the period between July 2008 to June 2011 and was Board President from July 2010 to June 2011.

h.      Morris Kohn, who was a member of the Board during some or all of the period between July 2009 to June 2012, and was Board President from July 2011 to June 2012.

i.      Richard Stone, who was a member of the Board during some or all of the period between the 2008-2009 school year to September 2010.

j.      Albert D'Agostino, who at all relevant times was counsel to the Board. D'Agostino is an attorney at law licensed in the State of New York.

k.      Joel Klein, who at all relevant times was Director of Special Education for the District from August 2010 to March 2011, and was Superintendent or interim Superintendent of Schools for the District from March 2011 to present.

l.      Eliezer Wizman, who at all relevant times was Assistant Superintendent or Special Student Services and/or Funded Programs.

15.     Defendants are, and were at all times relevant herein, elected officers, employees, and/or agents of the District. Defendants are and were at all relevant times herein, acting under color of state law, although in a manner that was *ultra vires,* in bad faith, and with discriminatory animus.

16.     Defendants receive federal, State and local education funds, including what are known as Title I, Title II, and Title III funds, State education grants, state and local taxes, and monies from other funding sources, all of which make up the educational funds from which the District's budget is made.

a.   Defendants control these funds because they operate as a voting bloc on the Board with the intent to commit the unlawful acts and practices complained of herein.

17.   Defendants are responsible for providing Plaintiff students with equal educational opportunities and a sound basic education.

a.   Defendants are responsible for providing Plaintiffs students with the educational services to obtain equal educational opportunities and a sound basic education, including materials, teachers, books, and all the others tools necessary for plaintiffs' students to academically become productive members of society.

## CLASS ACTION ALLEGATIONS

18.   Plaintiffs sue on behalf of themselves and all others similarly situated individuals, and seek to represent, pursuant to Rule 23(a), Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, the class of parents who have or will have students in the District.

19.   Plaintiffs are representatives of a pending class of 394 plaintiffs that comprise three subclasses: (a) those plaintiffs who are parents of children currently in District public schools sue on behalf of parents whose children attend, or have since on or about August 7, 2008 attended, a public school in the District; (b) those plaintiffs who are recent high school graduates sue on behalf of all recent high school graduates of Spring Valley High School and Ramapo High School, both high schools within the District; and, (c) those plaintiffs who pay local, state, and federal taxes, sue on behalf of local, state and federal taxpayers within the District.

a.   Each class is so numerous that joinder of all members is impracticable.

b.   There are questions of law and fact common to each class, including that members of the classes described in ¶ 19(a) & (b) have common rights under the First Amendment of the United States to attend schools that do not discriminate or

segregate on the basis of race, color, national origin, ethnicity, or religion; one

that does not seek to promote religion through its improper use of federal and

state funds to the detriment of its public school students, and other similar

common issues and members of the class described in ¶ 19 (c) have a right to

keep their tax money from being spend to promote religious education.

c.   The claims or defenses of the representative parties are typical of the claims or

defenses of each class.

d.   The representative Plaintiffs will fairly and adequately protect the interests of

each class. The violations alleged against Plaintiffs stem from the same course of

conduct by Defendants that violated and continues to violate the rights of

members of the class; the legal theory under which the Plaintiffs seek relief is the

same or similar to that on which each class will rely. In addition, the harm

suffered by the named Plaintiffs is typical of the harm suffered by the absent class

members.

e.   Counsel for the named Plaintiffs are experienced in federal complex litigation and

will vigorously pursue this action in the interest of each class.

f.   A class action is superior to other available methods for the fair and efficient

adjudication of this controversy because (i) the prosecution of hundreds or

thousands of separate actions would be inefficient and wasteful of legal resources;

(ii) the issues raised can be more fairly and efficiently resolved in the context of a

single class action than in piecemeal in many separate actions.

g.   The party opposing each class has acted or refused to act on grounds that apply generally to each class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting each class as a whole.

## FACTUAL BACKGROUND AND BACKGROUD OF THE NAMED PLAINTIFFS

20.   According to the 2010 US Census, the District has a general population of approximately 110,000 residents, 65% of which is white, 21% black, 4.3% Asian, 6.8% other, and 2.4% multi-racial.

21.   The population of students in the District's schools, of which there are 14 including its Early Childhood Center,[4] comprise a much different ratio. Of the total number of students enrolled in the District, an average of 90% are students of color: 57.1% black,[5] 29 % Hispanic, 7.7% Asian, and .1% American Indian.[6]

22.   Almost all of the named Plaintiff parents' minor children are of color, and are either African-American, Hispanic, Haitian, multi-racial, or non-white; none are Hasidic.

23.   A significant number of plaintiff students speak a language other than English as a their primary language in the home. None of the plaintiff students speak Yiddish at home.

24.   All of the named plaintiff students were denied equal educational opportunities and a sound basic education in violation of the law.

25.   All of the named plaintiff students are experiencing academic harm and will continue to experience harm to their academic careers as a result of Defendants' conduct complained of herein.

---

[4]   Exh. 2.

[5]   Within the black race category, Haitians and African–Americans are both included.

[6]   Exh. 3.

26.     All of the named plaintiff students have been denied educational services to which they are entitled as a result of Defendants' conduct complained of herein.

27.     In contrast to the 18% of the district residents that fall below the poverty line, the poverty levels of the District's students steadily increased from 55.7% in 2009 to 63.6% in 2011.[7] By 2012, the District student poverty level rose to 70.3%, "an all-time high."[8] As a result, The New York State Education Department ("NYSED") has identified the District as a "high need, low resource" district, based on the level of poverty (the percentage of students grades K-6 who qualify for free lunch) and the financial resources of the district.

28.     A significant number of the named plaintiffs' families' incomes fall below the poverty line.

29.     In stark contrast to its public schools, there are over 50 private yeshivas with approximately 18,000 students in attendance.[9] Almost all of these students are white,[10] and almost all, if not all, of these students are Hasidic Orthodox Jews who speak Yiddish at school and in the home.

30.     Over the past several years, the composition of the school board has shifted. It is currently controlled by Hasidic Jews, who hold six of the nine seats. These six members vote as a "voting bloc" on the Board to carry out the unlawful and improper acts complained of herein.

31.     Defendants are charged, as a matter of law, with the responsibility of their office as members of the School Board, in that they must comply with all of the laws of these United States and must fulfill their obligations to the public trust. This they failed to do.

---

[7]     *Id.*

[8]     *See* Exh. 4, Nicosia, Mareesa, 2012. "East Ramapo schools chief proposes $202M budget; layoffs, program cuts likely." *The Journal News*, Feb. 16. <http://www.lohud.com/article/20120216NEWS03/302150107/East-Ramapo-schools-chief-proposes-202M-budget-layoffs-program-cuts-likely> (last visited Nov. 5, 2012).

[9]     Exh. 5.

[10]     *Id.*

## STATEMENT OF RELEVANT FACTS

**A.      DEFENDANTS CONSPIRED WITH RABBI JACOB HOROWITZ, EXECUTIVE DIRECTOR OF THE YESHIVA ASSOCIATION OF ROCKLAND COUNTY AND EXECUTIVE DIRECTOR OF THE COMMUNITY EDUCATION CENTER, TO DIVERT TITLE I AND TITLE III FUNDS TO PRIVATE RELIGIOUS SCHOOLS AND THEREBY PROMOTE RELIGION AND RELIGIOUS EDUCATION.**

**1.      Title I and Title III Statutory Provisions
         Prohibiting Support to Religious Schools**

32.      Title I funds are provided by the federal government for remedial services to help improve the academics of public and nonpublic students. Title I, Part A ("Title I") of the Elementary and Secondary Education Act of 1965, 20 U.S.C. § 6301 *et seq.*, as amended ("ESEA"), "provides financial assistance to local educational agencies ("LEA") and schools with high numbers or high percentages of children from low-income families to help ensure that all children meet challenging state academic standards."[11]

33.      Title I funds are available to students in both public and private schools, including private religious schools.[12] However, ESEA specifically provides that funds distributed to private schools must be used for secular, neutral, educational programs.[13] Control of Title I funds must remain with the public agency.[14] Title I also states that its funds cannot be used for religious worship or instruction.[15]

---

[11]      *Available at*, <http://www2.ed.gov/programs/titleiparta/index.html> (last visited Oct. 30, 2012); *and see* 20 U.S.C. § 6301 *et seq.*

[12]      20 U.S.C. § 6320(a)(1).

[13]      20 U.S.C. § 6320(a)(2). Section 6320(a)(2) states, "(2) SECULAR, NEUTRAL, NONIDEOLOGICAL – Such educational services or other benefits, including materials and equipment, shall be secular, neutral, and nonideological."

[14]      20 U.S.C. § 6320(d)(2)(B). Section 6320(d)(2)(B) states, "(B) REQUIREMENT – In the provision of such services, such employee, individual, association, agency, or organization shall be independent of such private school and of any religious organization, and such employment or contract shall be under the control and supervision of such public agency."

[15]      20 U.S.C. § 6316(e)(9). Section 6316(e)(9) states, "PROHIBITION – Nothing contained in this subsection shall permit the making of any payment for religious worship or instruction."

34.     The purpose of Title III Part A is to help ensure that children who are limited English proficient attain English language proficiency, develop high levels of academic attainment in English, and meet the same challenging State academic standards that all children are expected to meet.[16]

35.     As members of the Board of Education of the District, and in their respective capacities as trustees, employees, or officers of the District, Defendants are charged with knowing the manner and means in which Title I and Title III funds can and cannot be used, including each of the provisions stated above, and with ensuring that these provisions are followed.

**2.     Defendants' Conspiracy with Horowitz to Divert Title I
Funds and Promote Religion and Religious Education**

36.     From at least in or about December 2009 through and continuing to the 2012-2013 school year, Defendants agreed to enter into contract(s) with Rabbi Jacob Horowitz ("Horowitz"), the now deceased Executive Director of the Yeshiva Association of Rockland County ("YARC"), an association of numerous yeshivas in Rockland County, to provide remedial services for children attending private religious schools using Title I and Title III funds.[17]

37.     In certain instances, Defendants agreed to enter into contract(s) with Horowitz in his capacity as Executive Director of the Community Education Center ("CEC") to provide remedial services for children attending private religious schools using Title I and Title III funds.[18]

---

[16]     20 U.S.C. § 6801 *et seq.*

[17]     *See, e.g.*, Exh. 6, Board minutes, dated Dec. 16, 2009, at 6434, and Exh. 7, Board minutes, dated Apr. 7, 2010, at 6506.

[18]     *See, e.g.*, Exh. 8, Board minutes, dated Aug. 18, 2010, at 6428, and Exh. 9, Board minutes, dated Aug. 25, 2010, at 6431.

38.     Defendants entered into these contracts with Horowitz without requesting bids or requests for proposals;[19] these contracts amount to millions of dollars in Title I and Title III funding grant awards. Horowitz and his organizations administered the remedial services contracts in the private religious schools – schools believed to be part of his association, YARC.

39.     YARC is located at 50 Melnick Drive, Monsey, New York 10952.[20] The CEC is a division of the Community Outreach Center ("COC"). Both the COC and the CEC were directed by Horowitz, and are located at the same address as YARC.[21]

40.     According to its Certificate of Incorporation (COI), YARC is an organization formed to provide assistance to "private educational institutions and schools." Its COI further states, "[t]his organization will enlighten [the private educational institutions and schools] "to the various government programs and grants that are available for their benefit."[22] YARC's COI includes "religious" as one of its four purposes for which the corporation was organized.[23]

41.     On or about December 16, 2009, for example, Defendants on behalf of the District entered into an Agreement with YARC to provide what were termed "after-school remedial services" at Yeshiva Avir Yakov, a private religious school, using Title I funds.[24] Upon information and belief, YARC did not provide or include the required safeguards to ensure that these government-funded services did not promote religion or provide or promote religious education.

---

[19]    *See* allegations, *infra*, regarding the New York State Comptroller's Audit finding that Defendants failed to issue RFPs for its professional services contracts.

[20]    Exh. 10, YARC's Certificate of Incorporation, p. 2.

[21]    Exh. 11, COC's 2009 Services Guidebook.

[22]    *See* Exh. 10.

[23]    *Id.*

[24]    *See* note 17, *supra.*

42.     On or about August 27, 2010, Defendants entered into an Agreement between the District and the CEC to have the CEC provide what were termed "mentor/tutor services" pursuant to Title I and Title III at private religious schools.[25] Upon information and belief, the CEC did not include the required safeguards to ensure that these government-funded services did not promote religion or provide or promote religious education. The Agreement provided that the programs would operate "on site of the schools as indicated in the annexed list of schools."[26] According to the Agreement, the programs were in operation between the hours of 9:00 am and 7:00 pm.[27]

43.     Upon information and belief, Horowitz, received an administration fee of approximately a half million dollars for each contract.

44.     For example, one private religious school that received Title I remedial services is Yeshiva Darchei Noam.[28]

a.     As reflected in its Parent Handbook,[29] "The talmidim [students][30] of Yeshiva Darchei Noam are required to conduct themselves according to the guidelines of Torah [First five books of the Bible][31] and Yiddishkeit [Jewish Way of Life][32]."

b.     In addition, the handbook states "all boys should be "chazering" (reviewing) their Limudei Kodesh studies on a regular basis as well."

---

[25]     *See* Exh. 12, referenced within this Aug. 2011 contract.

[26]     *Id.*

[27]     *Id.*

[28]     Rabbi Horowitz's son is Dean of Yeshiva Darchei Noam.

[29]     See *Exh.* 13.

[30]     Talmidim, *available at,* <http://www.lightofmashiach.org/glossary.html> (last visited on Aug. 6 2012).

[31]     Torah means "instruction" and refers to the books of Moshe – the "law" comprised of the books: Genesis, Exodus, Leviticus, Numbers, and Deuteronomy. "Torah" is also used loosely in traditional Judaism to mean all Jewish law, Scriptural and oral, *available at*, <http://www.lightofmashiach.org/glossary.html> (last visited on Aug. 6, 2012).

[32]     Yiddishkeit, *available at*, <http://en.wikipedia.org/wiki/Yiddishkeit> (last visited on Aug. 6 2012).

      c.      Limudei Kodesh is the study of the "Torah, Hebrew Bible, Talmud, rabbinic literature and similar works, all of which are Judaism's religious texts. Ideally within Judaism it is done for the purpose of the mitzvah ("commandment") of Torah study itself."[33]

      d.      Students also engage in davening, or reciting the prescribed liturgical prayers.

45.      Upon information and belief, other schools on Exhibit 13, Attachment A's list of schools, have similar Parent Handbooks with similar language and similar religious requirements.

46.      On December 15, 2010, Defendants then on the Board authorized an amendment to the Agreement between the District and the CEC referenced above; the basic terms of the agreement, however, remained the same.[34]

47.      On or about August 17, 2011, Defendants then on the Board authorized an amendment to the Agreement between the District and the CEC referenced above; the basic terms of the agreement, however, remained the same.[35]

48.      Upon information and belief, the Title I and Title III remedial programs provided in the District's public schools as compared with those provided in the private religious schools receive substantially less funding and have less assigned resources. The private religious schools receive substantially more funds and substantially more resources, including teachers and materials, and operate for longer hours.

49.      Upon information and belief, Defendants' purposes for awarding the Title I and Title III service contracts to the CEC and YARC were because Horowitz controlled both CEC

---

[33]    Limudei_Kodesh, *available at,* <http://en.wikipedia.org/wiki/Limudei_Kodesh> (last visited on Aug. 6, 2012).

[34]    Exh. 14, Board minutes, dated Dec. 15, 2010, at 6699.

[35]    Exh. 15, Board minutes, dated Aug. 17, 2011.

and YARC, and because the funds would be used in the listed private religious schools for the benefit of their respective students, most of which were part of the association of yeshivas controlled by Horowitz as part of YARC, to promote religion and religious education.

50.     Upon information and belief, no safeguards were or are in place to prevent the promotion of religion and religious education in the private religious schools that are the recipients of Title I or Title III funds distributed by Defendants and controlled by Horowitz, CEC, and YARC, and received by the respective private religious schools.

51.     As members of the Board, Defendants knew or should have know about the affiliations between the CEC, YARC, and Horowitz; further, Defendants knew or should have known that these affiliations were more likely than not to have precluded the CEC from being independent from YARC. Similarly, Defendants knew or should have known these affiliations were more likely than not to have precluded Horowitz, in his religious position as a Rabbi, from being an independent administrator of Title I funds, in that as Executive Director of CEC, he controlled and influenced numerous religious organizations, and particularly given that the Title I and Title III services were operating within the private religious schools.

52.     Defendants knew or should have known that based on the affiliations and relationships between the CEC, YARC, and Horowitz that Title I funds provided to the CEC and distributed to programs operating in private religious schools would fail to maintain proper safeguards to ensure that religion and religious education was not being promoted or was not occurring during the delivery of Title I or Title III services and programs.

53.     Upon information and belief, in 2010, the District's auditors, Tobin and Company, prepared a report about the District's federal and state funded programs and its

nonpublic school support[36] after which Defendants voted to issue an RFP to replace the auditors, as Defendants alleged they were "unhappy" with the quality of their work.

54.　　Upon information and belief, the auditors findings included the following;

a.　　Defendants have not maintained adequate back up for how the per pupil amount for Title 1 funding is calculated;

b.　　The English as a Second Language count used to calculate Title III funding allocation among schools is prepared by an external consultant and submitted on as an EXCEL report that can be easily altered; and

c.　　There is no documentation to show that Defendants ever approved either the pupil allocation, or the amounts needed to fund both public and nonpublic schools.[37]

55.　　In or about the summer and fall of 2011, the New York State Office of Inspector General initiated an audit of the District to determine "whether expenditures for mentor/tutors under Title I, Part A of the Elementary and Secondary Education Act of 1965, as amended, were allowable and in accordance with applicable laws, regulations, and guidance; and whether non-salary expenditures for Individuals with Disabilities Education Act (IDEA), Part B funds were allowable in accordance with applicable laws, regulations, and guidance."[38]

56.　　The Office of Inspector General closed the audit without issuing any findings and indicated by letter to Defendant Dr. Joel Klein, Superintendent of Schools, that the closure of the audit "does not preclude the Department of Education from taking action concerning any aspect of the East Ramapo Title I or IDEA program … [and] should not be interpreted as agreement

---

[36]　　Upon information and belief, the reference to "nonpublic school support" was a reference to the District's support of private religious schools.

[37]　　Upon information and belief, the reference to "nonpublic schools" was a reference to the District's private religious schools.

[38]　　Exh. 16.

with or endorsement of areas reviewed." The audit that was performed "was not extensive enough to answer the objectives … [or] would not necessarily disclose all material weaknesses in the areas of [their] stated objectives."[39]

57.     Based on the foregoing, and upon information and belief, Defendants failed to conduct any meaningful oversight of the use of Title I or Title III funds following their dispersement to CEC, YARC, and Horowitz; Defendants further failed to determine whether the funds were being used for their stated purposes. In short, Defendants completely abrogated their responsibility to manage and account for use of these federal funds.

**B.     DEFENDANTS HAVE ENGAGED IN A PATTERN OF SETTLING SPECIAL EDUCATION CASES AS A MEANS OF PLACING STUDENTS IN PRIVATE RELIGIOUS SCHOOLS, INCLUDING SCHOOLS OUTSIDE THE DISTRICT, AT EXORBITANT COSTS DEPLETING THE PUBLIC SCHOOLS OF MUCH NEEDED REVENUE .**

**1.     The IDEA Statutory Process**

58.     Under the Title I, Part B, also known as, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, a child eligible for special education services receives an Individual Education Plan ("IEP"), 20 U.S.C. § 1414(d), describing a set of goals for the child, and a suggested placement where the children can receive the appropriate special education services.

59.     The Committee on Special Education ("CSE") is a multidisciplinary team whose task is to make placement determinations. If a parent disagrees with the CSE placement determination, the parent has the right to an Impartial Hearing.[40]

---

[39]    *Id.*

[40]    *See* 20 U.S.C. § 1415.

60.     If a parent chooses to place their child unilaterally in a private school placement, without completely the Impartial Hearing process, the parent has no right to receive tuition reimbursement from the state or the school district.[41]

61.     If a special education placement in a private school or out of district school is approved by the CSE, or through an Impartial Hearing, federal, state, and school district money may be used to reimburse the District for the child's tuition.[42]

62.     If private placement is made through a settlement process, without an Impartial Hearing or without findings made by the CSE, the district may obligate itself to pay for the child's tuition. In other words, a district in such circumstances may not be able to seek reimbursement from the federal or state government for the child's tuition.

## 2.     Defendants' Scheme to Divert Funds, Promote Religion and Religious Education, and Segregate the School System

63.     Over the past several years an increasing number of students purportedly eligible for special education services in the District have been placed in private religious schools for the purported purpose of providing required services that may be reimbursable under Title I, Part B.[43]

          a.     Upon information and belief these placements are occurring because parents and a majority of the School Board members want their children to be placed in private religious schools. Parents and Defendants agreed that pursuant to an unwritten policy between them, adopted by Defendants, that they could simply write a letter stating they did not accept the CSE placement in a public school and request a specific private placement with the

---

[41]     *See* 20 U.S.C. § 1412.

[42]     *See* 20 U.S.C. § 1411.

[43]     Board minutes for the academic years 2007-2008 through 2012-2013 reflect an increase in the number of special education settlements.

understanding that their request would be granted without a hearing. Private placement

resolutions were then passed by Defendants then on the Board in lieu of an Impartial Hearing.

Private placements were always made to schools that were ethnically, racially, and religiously

segregated schools, including schools such as Rockland Institute for Special Education ("RISE"),

Kiryas Joel (an out of District school), and Hebrew Academy for Special Children ("HASC").

        b.     Upon information and belief, these settlements not only included the

Defendants authorizing the District to pay their children's tuition, but also often include the

District paying the parents' attorneys fees, if any, as well.

        64.    When Defendants settled with parents prior to having impartial hearings, no state

reimbursement is available for the private school tuition and tuition is paid entirely from District

funds.[44] Upon information and belief, Defendants believed that these settlements would not be

available to the public, would not be available under the New York Freedom of Information

Law, and also knew they would be difficult for the public to challenge or to even become aware

of. Indeed, without a hearing, or even a CSE investigation, what services, if any, the child

requires are unknown, or whether the child requires private placement, which would require a

finding that the services available to the child in the District are not sufficient to meet the needs

of the child (thus requiring the placement of the child in an alternate setting).

        65.    Upon information and belief, Defendants knew or should have known that

appropriate non-religious public school placements were available and were or would have been

proposed by the CSE when Defendants settled for private school placement in religious schools.

        66.    Upon information and belief, Defendants' intent has been to segregate and

perpetuate the segregation of the public schools on the basis of race, national origin, ethnicity,

---

[44]    Upon information and belief, however, since the initiation of this action, certain private religious schools have been charging parents a religious education fee as a tuition cost.

and religion, and promote religious education such that the non-Hasidic, non-white children remain in public schools, while placing all special needs Hasidic, white children in private religious schools.

**3.     Defendants' Scheme to Send Students to RISE, a Private Religious School**

67.     With respect to the placement by Defendants of students in RISE, a private religious school within the District:

a.     Upon information and belief, most or all of the students placed in RISE were through the settlement process. No impartial hearings were held even though the CSE had made recommendations for appropriate placements in public schools. Placement in RISE were not approved by the state for reimbursement and were paid out of District money;

b.     Upon information and belief, certain IEP reports were changed in an attempt to gain the CSE approval necessary for private school placement;

c.     Several of the Defendant Board members attempted to have the District assume administrative control of RISE and run the school as a public school despite its direct connection with the Hasidim and Jewish faith; and

d.     On or about January 10, 2011, Defendants sent a letter to RISE in an effort to assure the administration and its staff that they would be hired to work for the District and that teaching "cultural subjects" would be permissible.[45]

**4.     Defendants' Scheme to Send District Students to Kiryas Joel, a Segregated School**

68.     On May 11, 2009, at a Board meeting, Defendants then on the Board authorized the Superintendent of Schools, Dr. Ira Oustatcher, to sign an agreement regarding billing for services for Kiryas Joel, a public school within a religious community outside of the District.[46]

_____

[45]     Exh. 17.

[46]     Exh. 18.

69.      On July 2, 2009, at a Board meeting, Defendants authorized a payment of $2,301,784.66 to Kiryas Joel for District special education students who were sent out of District.[47]

a.      Upon information and belief, Defendants specifically sent students to Kiryas Joel knowing they would receive religious teaching in a purportedly public school.

b.      Upon information and belief, Defendants specifically sent students to Kiryas Joel with the intent to segregate and perpetuate the segregation of the public schools on the basis of race, color, national origin, ethnicity, and religion, such that the non-Hasidic, non-white children remain in public schools, while placing the Hasidic, white children in a segregated public school that operates within a religious community.

c.      Upon information and belief, Defendants specifically agreed to send children to Kiryas Joel so they would not have to wait for tuition reimbursement from New York State; they could pay the tuition directly out of District funds and would not be subject to an audit.

i.      Defendants signed a Memorandum of Understanding ("MOU") with Kiryas Joel, setting a tuition rate of $74,000 per child, per year. This MOU was to be paid by the District annually regardless of whether students actually attend school in Kiryas Joel.

ii.      Upon information and belief, Defendants then on the Board agreed to pay Kiryas Joel approximately $3 million dollars for tuition for forty-three (43) students in the 2010-2011.

---

[47]   Exh. 19.

iii.     Upon information and belief, Defendants then on the Board agreed to pay Kiryas Joel approximately $4 million dollars for tuition for fifty-six (56) students in 2011-2012.[48]

iv.     Upon information and belief, the amount Defendants then on the Board agreed to pay for tuition to Kiryas Joel will increase from $68,000 to $78,000 per child and will include an additional fifteen (15) students for the 2012-2013 school year.

d.     Upon information and belief, thirteen (13) of the students paid for by the District, with knowledge and agreement of Defendants, pursuant to the MOU, actually live in Kiryas Joel and are not residents of the District.

e.     The tuition rate for Kiryas Joel, a public school, exceeds the tuition of comparable private school placements.

f.     Defendants knew or should have known that the special education services purportedly provided in Kiryas Joel are otherwise available and can be provided in the District.

70.     Defendants conspired with Defendant D'Agostino to place students in private religious schools through the settlement process to promote religion and religious schools utilizing public funds and to discriminate and to segregate and perpetuate the segregation of the public schools on the basis of race, color, national origin, ethnicity, and religion.

71.     Some of the settlements discussed include sending students to schools not certified by New York State to issue diplomas.

C.     **DEFENDANTS CONSPIRED TO SEND A NON-DISTRICT RESIDENT CHILD FOR RESIDENTIAL PLACEMENT AT DISTRICT EXPENSE**

72.     Upon information and belief, a student not a resident of the District, requiring a high level of services was evaluated for the student's annual IEP by the District's CSE. CSE

---

[48]     *See, e.g.,* Exh. 20.

made a recommendation that the student attend a Board of Cooperative Educational Service

("BOCES") funded program; however, the parent, a Hasidic Jew, wrote a letter to Defendants

requesting residential placement.

73.     Not enough documentation was provided in support for residential placement, yet

applications' packets were sent out on the student's behalf by Defendants.

74.     When the student was accepted to a school out of state, the school required

documentation that tuition would be paid for by New York State.

75.     Because proper documentation did not exist, Defendants wrote a promissory note

to the school on the letterhead of Minerva & D'Agostino, P.C., that the District would pay for

this out-of-state residential placement.

76.     The amount the Defendants obligated the District to pay for this inappropriate

placement was approximately $400,000, which included tuition, non-education services, aides,

and transportation.

77.     Upon information and belief, Defendants, at Defendant D'Agostino's direction,

directed the District to set aside this $400,000 out of District funds.

78.     Upon information and belief, Defendants knew the child would not be approved

for reimbursement by the State of New York when they obligated the District to pay the tuition.

79.     Upon information and belief, Defendants then on the Board and Defendant

D'Agostino knew that the child was not a resident of the District and was, instead, a resident of

New York City.

80.     Upon information and belief, the payment using District funds for approximately

$400,000 was a considered by Defendants to be a "gift" to the student's parents.

**D.**  **IN 2010 THE NEW YORK STATE EDUCATION DEPARTMENT AUDITED THE DISTRICT AND WARNED DEFENDANTS THAT THEIR PRIVATE SCHOOL SPECIAL EDUCATION PLACEMENTS WERE NOT SUPPORTED BY ADEQUATE DOCUMENTATION OF STUDENTS QUALIFYING FOR SPECIAL EDUCATION.**

81.    In or about the spring of 2010, staff from the New York State Education Department ("NYSED") Office of Special Education, Hudson Valley Regional Office of Special Education Quality Assurance ("SEQA"), conducted a "monitoring review" to ensure that the District's "policies, procedures and practices regarding placement of students with disabilities were consistent with the requirements of federal and State laws and regulations."[49]

82.    The review was administered by examining District records including individual records of students with disabilities and by conducting interviews with District central office administration and special education staff. At the conclusion of the review, NYSED found that in approximately 50% of the student records examined – 13 out of 27 – the "present level of performance statements" in the students' individual education program ("IEP") lacked specificity and/or lacked information on how the disability affected involvement and progress in the general education curriculum, as was required in section 200.4(d)(2)(i) of the Regulations of the Commissioner of Education.[50]

83.    The review also found in 24 of 27 student records reviewed – or in virtually *all of the records reviewed* – the written notice that must be provided to parents regarding the Committee on Special Education ("CSE") IEP, and the CSE recommendations lacked one or more of the required components mandated in section 200.5(a)(3) of the Regulations of the Commissioner of Education.[51]

---

[49]    Exh. 21.

[50]    *Id.*

[51]    *Id.*

84.     Additionally, where the IEP had been amended without a CSE meeting, prior written notice of the changes had not been provided to parents as mandated by sections 200.4 (g)(1) and 200.5(a) of the Regulations of the Commissioner of Education.[52]

85.     NYSED also found private school special education placement files lacked the documentation required when seeking State reimbursement pursuant to section 200.6(j)(1)(iii) of the Regulations of the Commissioner of Education. These placement files specifically lacked documented efforts to place students in public facilities, or to enable them to benefit from public instruction, in less restrictive settings, using special education services. The placement files also did not demonstrate that the students' lack of progress in previously less restrictive public programs warranted placement in a private school at public expense. Because these less restrictive comparators had not been attempted and/or found to have been unacceptable, potentially and/or unnecessarily costly private placements were made, costing the District hundred of thousands, if not millions of dollars per year.

86.     Given the aforementioned inadequacies in the District's management and record-keeping, NYSED determined that the District engaged in a practice of placing students with disabilities in private schools when appropriate placements were available in public facilities. As such, the District was held to be non-compliant with the following Regulations of the Commissioner of Education: section 200.4(d)(2)(i), section 200.5(a)(3) and section 200.6(j)(1)(iii).[53]

87.     Based on these findings, NYSED mandated that specific actions be taken, including:

---

[52]     The Regulations of the Commissioner of Education are annexed as Exh. 22.

[53]     *See* Exh. 21.

     a.     adoption of a Compliance Assurance Plan to address each of the non-compliance issues, with a timeline by which the non-compliance issues must be resolved.[54]

     b.     utilization of technical assistance and professional development to assist District Board members (including Defendants), CSE members, and special education staff to address the  identified areas of non-compliance.[55]

     c.     provision of a list of action steps to address the lack of adequate documentation to support the need for placing students with disabilities in private schools when appropriate placements were available in public facilities.[56]

88.     NYSED mandated that the Committee on Special Education evaluate and revise the placement recommendations of the students placed in private schools that lacked the proper "least restrictive environment" documentation.[57]

89.     NYSED also stated they would no longer accept electronic applications from the District for State reimbursement pursuant to N.Y. Educ. Law § 4405 for a student in an in-state or out-of-state private school placements from East Ramapo.[58]

**E.     ALMOST TWO YEARS LATER NYSED CONDUCTED A FOLLOW-UP AUDIT AND FOUND FLAGRANT DISREGARD FOR COMPLIANCE STANDARDS IT PREVIOUSLY ISSUED INCLUDING DEFENDANTS' INABILITY TO PRODUCE REQUIRED DOCUMENTATION TO SUBSTANTIATE PRIVATE SCHOOL PLACEMENTS OF SPECIAL EDUCATION STUDENTS.**

90.     On February 28 and 29, 2012, NYSED staff conducted a subsequent on-site follow-up monitoring review of the District's private school special education placements to

---

[54]   *Id.*

[55]   *Id.*

[56]   *Id.*

[57]   *Id.*

[58]   *Id.*

determine if the practices identified as deficient during the April 2010 special education monitoring review had been successfully changed.[59]

91.     After examination of both private school and public school student records, a continued lack of adequate documentation was found. NYSED determined that Defendants had completely failed to implement the recommended practices to place students with disabilities in public facilities as required in section 200.6(j)(1) of the Part 200 Regulations of the Commissioner of Education.[60]

92.     According to N.Y. Educ. Law § 306(2), "[the] commissioner of education may also withhold from any district or city its share of the public money of the state for willfully disobeying any provision of law or any decision, order or regulation as aforesaid."

93.     As a result, NYSED withheld reimbursement from the District for the cost of the placement of students in approved private schools during the 2010-11 and 2011-12 school years, causing a loss to the District's budget of millions of dollars.

94.     For example, for the 2010-11 school year, Defendants placed seventy-seven (77) students with disabilities in private schools. Fifty-four (54) of these applications were submitted for State reimbursement and only 10% were approved. Thirty-eight (38) did not contain the required documentation, and six (6) were denied due to lack of justification for the approved private school placement.

95.     For the 2011-12 school year, Defendants placed seventy-three (73) students with disabilities in private schools. Fifty (50) of these applications were submitted for State

---

[59]     Exh. 23.

[60]     *Id.*

reimbursement; thirty-one (31) were approved and nineteen (19) denied, again due to lack of justification for the approved private school placement.[61]

96.     Defendants on the Board during these periods know or should know that NYSED will continue to withhold funds if the District refuses to comply with NYSED recommendations.[62] Meanwhile, Defendants have authorized and will continue to authorize the payments of millions of dollars to private religious schools for undocumented and unwarranted special education placements despite the lack of reimbursement from the State.

**F.     DEFENDANTS ENGAGED IN MANIPULATIVE REAL ESTATE SCHEMES BY ATTEMPTING TO SELL COLTON ELEMENTARY SCHOOL AT BELOW MARKET VALUE AND FAIL TO ENFORCE THE TERMS OF THE EXISTING LEASE, THEREBY DELIBERATELY DEPRIVING THE DISTRICT OF MUCH NEEDED REVENUE AND DENYING ITS PUBLIC SCHOOL CHILDREN THEIR RIGHT TO A SOUND BASIC EDUCATION.**

97.     On April 1, 2009, Defendants then on the Board (referred to as Defendants in this section of the Complaint) decided to close Colton Elementary School ("Colton").[63]

98.     On April 22, 2009, Defendants agreed to engage the services of an appraiser, Valuation Plus, Inc.[64]

99.     On May 1, 2009 and May 6, 2009 bids were opened.

100.    On July 15, 2009,[65] Defendants agreed to accept a bid from the Hebrew Academy for Special Children, Inc. ("HASC"), a private religious school, and Congregation Bais Malka

---

[61]    *Id.*

[62]    *Id.*

[63]    Exh. 24.

[64]    Exh. 25.

[65]    Exh. 26.

("Bais Malka"), a synagogue, and approved the Lease Agreement and Rider with HASC and Bais Malka to lease Colton.[66]

101.    The lease for Colton to HASC and Bais Malka is for a period of five years, from August 1, 2009 through July 31, 2014.

102.    Upon information and belief, the last lease payment Bais Malka made to the District was on or about November 1, 2011.[67] Since then, only partial monthly lease payments have been made, and even these partial payments have been made repeatedly late.[68]

103.    Upon information and belief, as of March 1, 2012, approximately $85,360.24 in arrears is due to the District from Bais Malka. In addition, Defendants failed to increase the lease amount due to the District by three percent (3%) for late charges due as required by the Rider.[69]

104.    The District's Invoice/Credit Memo History also does not reflect a three percent (3%) increase as required pursuant to the Rider to the Lease.[70]

105.    Upon information and belief, on March 17, 2010, Defendants authorized an independent appraisal of Colton for the purposes of selling the property. The appraisal estimated the value of Colton at $6,800,000.

106.    Upon information and belief, on or about February 28, 2011, the same appraisers conducted another appraisal of Colton which resulted in an appraisal value of $6,600,000.

107.    On May 25, 2011, the District agreed to sell Colton to HASC and Bais Malka for $6.6 million.[71]

---

[66]    Exh. 27.

[67]    Exh. 28.

[68]    *Id.* Although there are copies of checks from Bais Malka to the District, including two partial lease payments dated 12/14/2011 and 1/27/2012, these payments have not been included in the Invoice/Credit Memo History.

[69]    *See* Exh. 27, Lease Rider, ¶ 20 "Late charges of 3% of the unpaid rent shall be added to the rent for rental payments that are made after the 30th day of the month; *see also*, *id.* at 6, monthly rent payments totally $63,235.63.

[70]    *See* Exh. 28.

108.     Defendants agreed to the contract of sale for Colton despite the fact that no RFP had been issued. The Contract of Sale was conditioned on the District's right to issue a request for proposals ("RFP") to offer the property for sale to the general public.[72]

109.     *After* the decision to sell was made by Defendants, an RFP was issued on June 1, 2011, "in order to try to solicit higher bids;" bids were to be opened on July 27, 2011.[73]

110.     Under the terms of the RFP, Colton would be sold subject to the existing lease. However, upon information and belief, a prospective bidder *would not know* about the late payments of the current tenants, HASC and Bais Malka, because Defendants did not disclose this information in the RFP.[74]

111.     However, on May 27, 2011, the then interim Superintendent, Defendant Joel Klein, had been quoted in the Journal News as stating that Colton would be sold at the assessed price of $6.6 million dollars to HASC and Bais Malka.[75]

112.     On June 6, 2011, Defendants refused to release any appraisals of Colton despite a FOIL request.[76]

113.     On June 17, 2011, a taxpayer of the District challenged the Defendants' proposed sale of Colton.[77]

114.     The Town of Ramapo Real Property Assessment lists Colton's market value as $11,966,758 as of July 1, 2010.[78]

---

[71]  Exh. 29, at 6802.

[72]  *Id. See also,* Exh. 30. Contract for Sale of Colton, dated May 25, 2011.

[73]  Exh. 30, Verified Petition of Brenda Carole Anderson, dated June 17, 2011.

[74]  Exh. 31.

[75]  Exh. 32.

[76]  Exh. 33.

[77]  Exh. 34.

[78]  *Id.*

115.    According to Affiant Meyers, "In order to sell a property in Rockland County it would be much more efficacious to advertise repeatedly in newspapers of local circulation such as the Rockland Journal News as other local sellers routinely do. I believe that owners know this when marketing property and I assume that the Board knew this as well."[79]

116.    Upon information and belief, the RFP was published in the legal notices section of the local newspapers and not in the real estate advertising section, which is where potential users and commercial purchasers of a facility such as the property would be likely to look for properties for sale or lease, or see the availability of this property.[80]

117.    Upon information and belief, "a New York State real estate broker was engaged to further market the property. However, the real estate broker who was engaged is based in Valley Stream, New York, where Defendant Attorney D'Agostino [office is located] … [N]o reasonable real estate seller … would hire a broker in Nassau County to sell a property located in Rockland County, nearly 100 miles away. Upon information and belief, the retained real estate broker is not as familiar with the Rockland County market or business community and would not be particularly qualified by his or her associations or contacts to effectively sell property in Rockland County."[81]

118.    The District, at the direction of or with the knowledge of Defendants then on the Board, did not make good faith efforts to properly market Colton at the highest and best price.

119.    Upon information and belief, one appraisal of Colton was done by Valuation Plus, Inc. Valuation Plus had previously undervalued another school property, namely, the Hillcrest School, which sale was stopped by the State Education Commissioner. Valuation Plus identified

---

[79]    *See* ¶ 3, Meyers Aff., annexed as Exh. 35.

[80]    *Id..*, ¶ 3.

[81]    *Id.*, ¶ 5.

a reasonable marketing time to be 9-18 months. Here, Defendants signed a Contract for Sale *before* an RFP was issued, marketing the property for only eight (8) weeks.

120.    The District did not take the appraisal by Valuation Plus into consideration in the sale of the property.

121.    Defendant Klein's public statement on May 27, 2011, regarding the Colton's prior sale by the District to HASC and Bais Malka at best confused potential bidders and at worst, conveyed that the sale had already occurred.

122.    The District, with Defendants knowledge gave preferential treatment to HASC and Bais Malka by accepting partial lease payments, and failing to enforce lease provisions in regards to late payments, and failing to collect an increase in rent.

123.    Defendants, then on the Board, approved a Contract for Sale that gives preferences and an unfair advantage in the bidding process to HASC and Bais Malka with regard to the following terms:[82]

    a.    Credits in the Rider to the Contract includes $36,000 for "repair and replacement of the electrical system;"[83] a $100,000 maximum for "replacement of the Asphalt areas;"[84] $250,000 for any necessary remediation for the removal of asbestos;[85] and an undetermined amount (as of June 17, 2011) for the "granting of a resolution of subdivision by the Planning Board of the Incorporated Village of New Hempstead, which subdivision application shall be submitted and processed in diligent fashion by and at the sole cost and expense of the Seller."[86]

---

[82]    Exh. 27.

[83]    *Id.*

[84]    *Id.*

[85]    *Id*.

[86]    *Id.*

b.      The infrastructure and/or facilities have been improved with expenditures of $881,437 since 2001 by the District.[87]

c.      Handwritten notes in the contract state that the District "will give credit of rent payments (from July 1, 2011) forward towards purchase price as soon as the contract becomes unconditional. This credit is not in the initial lease contract," and amounts to an interest free loan to HASC and Bais Malka.[88]

**G.      DEFENDANTS ENGAGED IN MANIPULATIVE REAL ESTATE SCHEMES BY APPROVING THE SALE OF THE HILLCREST SCHOOL, USING FRAUDULENT APPRAISALS IN THEIR ATTEMPT TO SELL THE BUILDING TO A RELIGIOUS SCHOOL UNDER MARKET VALUE PLACING THEIR PERSONAL INTERESTS ABOVE THOSE OF THE DISTRICT, THEREBY DEPRIVING THE DISTRICT OF MUCH NEEDED REVENUE AND DENYING ITS PUBLIC SCHOOL CHILDREN THEIR RIGHT TO A SOUND BASIC EDUCATION.**

124.    On or about April 19, 2010, the District including Defendants then on the Board agreed to close the Hillcrest School ("Hillcrest" or the "property"), deem its building and grounds surplus property, and hire Valuation Plus, Inc. to appraise the property in contemplation of selling or leasing it.[89]

125.    In or about May, 2010, a first appraisal, by Valuation Plus, Inc. of Mamaroneck NY, was received by the District, valuing the Hillcrest School at $5.9 million.[90]

126.    On or about June 8, 2010, Defendants, acting through the Board, authorized the issuance of a request for proposals ("RFP") for the sale or lease of the Hillcrest School.[91]

127.    On or about June 16, 2010, an RFP was issued and advertised in a local newspaper only, namely, the Journal News, and on the District's website.[92]

---

[87]    *See* Exh. 30

[88]    *Id.* (handwritten notes).

[89]    Exh. 36, Board minutes, dated Apr. 19, 2010, at 6519-6520.

[90]    *See* Exh 37, *Appeal of White*, 50 Ed. Dept Rep., Decision No. 16,239, at 6.

[91]    *Id.*

128.    The District received three bids for Hillcrest: $1.65 million, $4.6 million, and $3.1 million. The latter bid came from the Congregation Yeshiva Avir Yakov (the Yeshiva).[93]

129.    The District authorized the Board's attorney, defendant D'Agostino, to obtain a second appraisal "in view of the discrepancy between the range of bids and the first appraisal."[94]

130.    On or about July 26, 2010, the District received a second appraisal by Appraisal Group International of Parsippany, NJ, valuing Hillcrest at $3.24 million (hereafter referred to as the "Second Appraisal").

131.    The Second Appraisal for $3.24 million was based upon comparable sales of property a significant distance from the location of Hillcrest. The "Comparable Sale #2" used by the Second Appraisal references Document Number 27785 and indicates a property that is a three-story building, with a site size of 0.77± Acres, and a sale price of $1,900,000; however, records of the Town of Ramapo, where the sale was located, indicate this property is "Land Only."[95]

132.    Hillcrest's value "was estimated by the Town of Clarkstown assessor at $11 million."[96]

133.    On or about July 28, 2010, and despite the wide variation between the assessor's valuation and the high bidder, the District accepted the Congregation's bid at a price of $3.1 million.[97]

---

[92]    Commissioner John King, Jr. described these methods as "restrictive." *See Appeal of White*, 50 Ed. Dept Rep., Decision No. 16,239, at 6.

[93]    This Yeshiva, also operates a religious school under the same name.

[94]    *See* Exh. 38. Board minutes, July 28, 2010, *available at,* <http://www.eram.k12.ny.us/education/page/download.php?fileinfo=MjAxMDA3MjhfLV8wNy0yOC0xMC1yZWc tbXRnLW1pbnV0ZXMucGRmOjo6L3d3dy9yY2hvb2xzL3NjL3JlbW90ZS9pbWWFnZXMvZG9jbWdyLzE5NzJma WxlOTE1NS5wZGY=&sectiondetailid=38228> (last visited on Aug. 6, 2012).

[95]    Exh. 39.

[96]    Exh. 40.

[97]    *Id.*

134.     Robert A. Forrest, a former CREA Senior Appraiser and NY licensed real estate appraiser, made a valuation analysis of Hillcrest and concluded that the fair market value of the property was $13.9 million.[98]

135.     The RFP was issued and open for less than a month and advertised purely locally.

136.     On or about August 7, 2010, plaintiff Steven White filed a petition with the New York State Commissioner of Education challenging the sale of the Hillcrest School on various grounds including that it was not in the best interests of the District or its children.

137.     On August 31, 2010 the Commissioner granted interim relief prohibiting the sale of Hillcrest pending a final decision, but permitted the Board to lease Hillcrest to Congregation. The Board, including Defendants then on the Board, voted to lease Hillcrest to Congregation on October 20, 2010.

138.     On June 6, 2011, the Commissioner prohibited the sale. The Commissioner could not conclude that the Defendants "acted in haste to approve the sale."[99] In addition, the Commissioner was unable to conclude that the Defendants "took reasonable steps to ascertain the best method of sale for Hillcrest as a means of securing the best price." The Commissioner wrote, "the board abused its discretion by hastily approving the sale of Hillcrest to the Congregation and that such sale must be set aside."[100]

139.     Upon information and belief, there is a special relationship between Defendants Aron Weider, Moshe Hopstein, Richard Stone, Eliyhu Solomon, and Morris Kohn with the New Square Community. They are referred to as, "Our own candidates from within the community in

---

[98]     *Id.*

[99]     *See* Exh. 37, *Appeal of White*, 50 Ed Dept Rep, Decision No. 16,239.

[100]     *Id.*

the village of New Square."[101] Yeshiva Avir Yakov is located in New Square. The Hillcrest School is directly adjacent to New Square.

140.  Upon information and belief, the undervalued appraisals were solicited to obtain a below market value sale price to benefit the aforementioned Defendants' personal interest and their special relationships with the Yeshiva. Further, Defendants then on the Board failed in their fiduciary responsibilities to obtain the best price for the property on behalf of the District, particularly in light of the budget deficits and shortfalls, failed to act in the best interests of the District and the children and taxpayers whom they serve, and deprived the District of much needed revenue by selling and/or leasing the property at the highest and best possible terms.

141.  On August 29, 2011, though the Commissioner of Education invalidated the District's decision to sell Hillcrest to the Yeshiva, the Board, led by Defendants then on the Board again voted to lease Hillcrest to the Yeshiva for one year.[102] The lease provides "for a right of first refusal to purchase the property and provides the Congregation with options to extend the lease for four (4) successive one (1) year terms."[103]

## H.  DEFENDANTS WERE FOUND BY THE STATE COMPTROLLER TO HAVE FAILED TO PROPERLY TRACK ACCOUNTS RECEIVABLE, MAINTAIN PROPER PROCUREMENT CONTROL, AND PROPERLY TRACK THE DISTRIBUTION OF TEXTBOOKS.

142.  The Office of the New York State Comptroller conducted an audit of the District, examining the period from July 1, 2008 through April 13, 2010.[104]

---

[101]  *See Slate of stealth candidates refuse to provide information to voters in East Ramapo School Board Elections*, <http://www.preserveramapo.org/Preserve%20Ramapo%202009/slate_of_stealth_candidates_refu.htm> (last visited on Aug. 6 2012).

[102]  Exh. 41, at 6868.

[103]  *Id.*

[104]  Exh. 42.

143.   In many instances the Comptroller was unable to obtain requested information due to the District's failure to provide or implement fiscal and business policies, their failure to employ appropriate business and fiscal practices, and/or their deliberative unresponsiveness.

144.   The Comptroller found that "[t]he Board, along with District officials, failed to fulfill its stewardship, oversight, and leadership responsibilities when it failed to establish a proper control environment, implement its own adopted policy, and establish policies and procedures required by sound business practices. The deficiencies exposed District funds and assets to abuse, waste and/or loss."[105]

145.   The Comptroller confirmed that "the Board and District officials failed to adopt and enforce policies and procedures required by sound business practices and, most importantly, failed to set a good example for District employees to follow."[106]

146.   The Comptroller found three areas of concern: health insurance premium reimbursement, procurement, and textbook distribution.[107]

147.   Among other issues, according to the Comptroller, the District's failure to establish a procedure governing health insurance payments resulted in a period of improper enrichment of Defendants, who along with other Defendants had knowledge of such impropriety.

a.   Participants in the District's health insurance plan must "pay their portion of their monthly insurance premiums to the District one month in advance."[108] "The District then pays the insurance carriers on behalf of the participants using the moneys collected."[109] There is

---

[105]   *Id.*, at 3.

[106]   *Id.* at 8.

[107]   *See* allegations *infra*, regarding the improper acquisition of religious textbooks.

[108]   *See* Exh. 42.

[109]   *Id.*

no provision for payments by the District if participants do not pay their monthly health insurance premiums.

   b.  In addition to a very informal process for all participants regarding reimbursements, the District staff did not apply the same "procedures" to Defendants then on the Board as they did to the other health insurance plan participants. The "process" for participants other than Defendants consisted of issuing late notices that included the date their insurance would be terminated, and then subsequently canceling insurance after two to three months of nonpayment (a period during which the District paid the premiums). However, of the forty (40) late notices sent to three Defendants, none included termination dates and no Defendant's insurance was terminated after three months of non-payment. In other words, Defendants received special treatment at the public's expense.

   c.  The Director of Human Resources of the District had knowledge of these occurrences and, upon information and belief, at Defendants' direction, directed the benefits clerk not to include specific termination language that was standard for all other participants.[110]

   d.  The Director of Human Resources was aware of these improprieties since May 2009 and allegedly informed Superintendent Dr. Oustatcher. Allegedly, Oustatcher told Defendants to resolve their taking advantage of public funds to pay their personal health insurance premiums; however, nothing changed. Defendants then on the Board did nothing to remedy their debts to the District.[111]

---

[110] *Id.*, at 9

[111] *Id.*

e.      Although the District has since recouped all health insurance premiums owed, Defendants past failure to reimburse the District was found by the Comptroller as an "indication of impropriety and improper enrichment at taxpayers' expense."[112]

148.    The Comptroller also found that the District failed to secure professional contracts and failed to obtain professional services with the "best interest of the taxpayers, in the most prudent and economical manner, and without favoritism."[113] Said actions/inactions were taken with the knowledge of Defendants.

a.      In addition to health insurance premium reimbursement, the Comptroller addressed Defendants' procurement of services. The District, per protocol, maintains a procurement policy, yet the District, with Defendants knowledge, did not utilize this policy. Instead, the District repeatedly failed to enter into written agreements for professional services.[114] This practice does not ensure the District and its taxpayers are receiving the most economical or best services. Two professionals hired by Defendants did not have a written agreement indicating "the services to be provided or the basis for compensation," yet the District paid them $495,023.[115] Defendants tried, after the Comptroller's review, to excuse their failure to enter into these agreements by noting that the Comptroller did not find that these "professionals did not perform the services for which they were paid or that the payments they received were somehow improper."[116] However, the failure to enter into a written agreement made it impossible to measure whether payments or services were proper or not since none were described according to any standard of compensation.

---

[112]   *Id.,* at 3.

[113]   *Id.*

[114]   *Id.*, at 11.

[115]   *Id.*

[116]   *Id.*, at 5.

b.      Even when the District had a written agreement with a professional (an exterminator), the Comptroller deemed the $10,289 payment to be inconsistent with the agreement detailing an hourly rate for services because the payment was based on a flat rate.[117]

c.      In addition to Defendants' failure of ensuring adequate services and payments by having the District enter into written agreements with professional service providers, as required, the Comptroller found "that the District did not use competition to procure professional services by soliciting proposals via Requests for Proposals or written quotations for professionals."[118] The Comptroller noted the importance of "assur[ing] taxpayers that they are obtaining services in the best interest of the taxpayers, in the most prudent and economical manner, *and without favoritism.*"[119] (Emphasis added).

d.      Although the District acknowledges that professional services must "be procured in a manner so as to ensure the prudent and economical use of public monies in the best interests of the taxpayers," Defendants continue to require the District to maintain the services of Defendant Attorney D'Agostino at two times the fees of the Board's previous counsel.[120]

149.    The Comptroller also found that the District lacked essential procedures for ensuring textbooks are accounted for and appropriately distributed.

a.      The Comptroller was unable to conduct a full and thorough audit due to the unavailability of textbook inventory records from nonpublic schools, despite the fact that the District maintains a policy, Board Policy No. 1740,[121] that requires a nonpublic school to maintain

---

[117]    *Id.*, at 11-12.

[118]    *Id.*, at 12.

[119]    *Id.*

[120]    *Id.*, at 5 (citing Board Policy No. 6700-R).

[121]    *Id. See also,* Exh. 43, Board Policy No. 1740.

an inventory of textbooks on loan from the District.[122] As a result, these requested records were never provided to the Comptroller. "District officials allowed this to happen because they failed to enter into written agreements to compel the nonpublic administrators to provide the records."[123] All of this occurred with the knowledge and concurrence of defendants

150.    Upon information and belief, Defendants know or should know that various public schools in the District do not receive the proper allocation of textbooks.[124] According to the Plan of Corrective Action, The District outlined various policies that would be implemented in this area.[125] Upon information and belief, to date, these textbook policies have not been implemented.

I.    **DEFENDANTS UNLAWFULLY USED DISTRICT FUNDS TO PURCHASE AND/OR APPROVE THE PURCHASE OF RELIGIOUS BOOKS AND TEXTBOOKS THEREBY PROMOTING RELIGION AND RELIGIOUS EDUCATION AND DEPRIVING THE DISTRICT AND ITS CHILDREN OF MUCH NEEDED RESOURCES AND OF A SOUND BASIC EDUCATION.**

151.    Defendants ordered or condoned the ordering of non-secular books that reflect or teach traditional values and stories rooted in the Jewish faith. The District's purchase orders contain religious titles and the subject matter of the books at issue violate the letter and spirit of the statutes and laws of the United States, the U.S. Constitution, and the New York State Education Law.

152.    For example, in purchase order FP11-05351,[126] dated 6/16/2011, the District paid $3099.19 to Merkaz, Haseforim & Judaica for 102 different books.

---

[122]    *Id.*

[123]    Exh. 42, at 13.

[124]    East Ramapo Principal Pat Simmons, *available at*, <http://www.youtube.com/watch?v=6tuM_5Zmnsg&feature=relmfu> (last visited on Aug. 6, 2012); *and see* N.Y. Educ. Law § 701(4).

[125]    Exh. 44.

[126]    Exh. 45.

a.      The purchase order was requested by Defendant Wizman.

b.      All of the books listed on the purchase order have incomplete or
inaccurate ISBN numbers.

c.      Titles of the books ordered include:

i.      *The Embroidered Veil*, a story described as heightening the
reader's understanding and feeling for Judaism.[127]

ii.     *5 Great Lives*, an examination of Rabbis Moshe Feinstein, Yaakov
Kamenetsky, Yaakov Yisroel Kanievsky (the Steipler Gaon), Shlomo Zalman Auerbach. and
Yehudah Zev Segal. The text is a suite of "carefully chosen anecdotes -- culled from interviews
and a host of research" designed to "present their subjects as teachers, guides, and role models,
aside from their greatness in Torah."[128]

iii.    *Why Weren't You Zisha and Other Stories*, an illustrated book
about "some of the great Chasidic masters... the Baal Shem Tov, the Rebbe Reb Zisha, and Reb
Pinchas of Koretz."[129]

iv.     *Hamalach HaGoel*, full title *HaMalach HaGoel and Other
Bedtime Stories*, described by the publisher's website as "a book of timeless tales with Torah
messages."[130] The Hebrew phrase in the title is derived from a traditional children's prayer, itself
taken from Genesis 48:16.

v.      *Let My Nation Go*, a story about the Pesach miracle from slavery
in Egypt.

---

[127]   *Id.*

[128]   *5 Great Lives,* Artscroll.com, <http://www.artscroll.com/Products/FIVH.html> (last visited July 11, 2012).

[129]   *Why Weren't You Zisha and Other Stories*, Artscroll.com, <http://www.artscroll.com/Products/ZISH.html.> (last visited July 11, 2012).

[130]   *HaMalach HaGoel and Other Bedtime Stories,* Feldheim.com, <http://www.feldheim.com/jewish-books-for-children/children/hamalach-hagoel-and-other-bedtime-stories.html> (last visited July 11, 2012).

vi.     *Let My Nation Live*, full title *Let My Nation Live: The story of the Jewish Deliverance in the Days of Mordechai And Esther*.

vii.    *I Keep Kosher*, a children's book about the rules of keeping kosher.

viii.   *Let's Go to Shul!*, an illustrated book meant to augment "appreciation for the laws of the synagogue."[131]

ix.     *Reb Moshe: the Life and Ideals of Hagaon, Rabbi Moshe Feinstein* – Feinstein was an internationally renowned Orthodox rabbi and a widely considered authority on Jewish law.

x.      *5 Great Leaders*, full title *5 Great Leaders: R Chaim Ozer Zensky, R Meir Shapiro, R Yosef Chaim Sonnenfeld, R Eichonon Wasserman, The Chazon ish*, by Rabbi Shimon Finkelman.

153.    In purchase order BD12-02199,[132] dated 8/5/2011, the District paid $3,217.00 to Merkaz Jaseforim & Judaica for two sets of textbooks:

a.      "Machanayim Books –Yiddish" – these books are in Yiddish, describing "miracles and faith."

b.      The check number for this purchase is 332323, and the description of the purchase is listed only as "textbooks and workbooks." Complete and accurate ISBN numbers are not included in the purchase order.

c.      The purchase order contains a disclaimer stating "do not send any books that violate NYS textbook/library law. Only materials that are secular in nature can be accepted." Yet, the entire purchase order is for non-secular texts.[133]

---

[131]   *Let's Go to Shul!*, Feldheim.com, <http://www.feldheim.com/jewish-books-for-children/young-readers/let-s-go-to-shul.html> (last visited July 11, 2012).

[132]   Exh. 46.

[133]   *Id.*

154.     In purchase order BD12-01867,[134] dated 11/25/ 2011, the District paid $4,302.40 to Bais Rochel Books. No ISBN numbers are provided on the purchase orders and purchase orders are in English and in Yiddish.

155.     Upon information and belief, numerous other purchase orders contained purchases of non-secular books for the yeshiva(s).

156.     Defendants knew or should have known the District's is prohibited by law from using District funds to purchase religious textbooks for or on behalf of private religious schools.

157.     Using these books, doctrines and tenets of Hasidic Judaism are taught with little, if any, financial criteria or control.

## J.     DEFENDANTS REPEATEDLY VIOLATED THE DISTRICT'S POLICIES GOVERNING MANDATED BUSINESS PRACTICES AND FINANCIAL OBLIGATIONS.

158.     Defendants continue to fail in "implement[ing] its own adopted policy, and establish policies … required by sound business practices."[135] Defendants have failed in this attempt by allowing the District to violate and fail to enforce the following policies:

a.     Board Policy No. 1740 states that " [t]he nonpublic school shall maintain an inventory of textbooks belonging to the District... and return those books to the District when they are no longer used by the nonpublic school."[136] The District's actions, condoned by Defendants, are in direct violation of this policy. Furthermore, Defendants have failed to amend the aforementioned policy in accordance with the State Comptroller's Plan of Corrective Action that explicitly requires "a random physical inspection of nonpublic school textbooks to be

---

[134]   *Id.*

[135]   *See* Exh. 43

[136]   *See* Exh. 44.

reconciled against the District's own inventory of textbooks on loan to those schools."[137] In addition, an agreement "to maintain on-site the necessary records for textbooks on loan including student information, parent request, textbook inventory and their location" is required. If such amendments have been made they have not been published pursuant to State laws and regulations.

      b.    Board safety policy 5450 requires that "[t]he safety of students shall be assured through close supervision of students in all school buildings and on school grounds and... special attention given to the maintenance of a safe school environment."[138] Nevertheless, Defendants caused the District to reduce the number of assistant principals in addition to engaging in numerous other deleterious practices that imperil the safety of students on school grounds, all of which are in contradiction to this stated policy.

      c.    Board Policy No. 6700-R states that professional services must "be procured in a manner so as to ensure the prudent and economical use of public monies in the best interests of the taxpayers."[139] As evidenced by the Comptroller's Audit, Defendants caused the District to violate this policy and continue to do so in an egregious manner by currently employing the services of Defendant Attorney D'Agostino. In 2010-2011 the budget reflected $457,616 for legal fees;[140] in 2011-2012, $455,000;[141] in 2012-2012, $600,000.[142] To date,

---

[137]    No amendment to Board Policy 1740 was found on the District's website as of the last visit on July 11, 2012.
[138]    Exh. 47.
[139]    Exh. 48.
[140]    Exh. 49.
[141]    Exh. 50.
[142]    *Id.*

Defendant Attorney D'Agostino has been paid by the District $1,276,033.30 (November 2009 through June 2012).[143]

       d.     Board Policy No. 2560 relating to the payment of health insurance premiums states, "[t]he benefits clerk shall promptly remit bills...and shall collect the premiums...in a timely fashion,"[144] from Board members. A practice has been adopted by the District, which Defendants condone, that is inconsistent with the above-stated policy; Defendants have condoned late payments of premiums, and when appropriate did not terminate the insurance of Defendants and other Board members who disregarded the aforementioned policy; Defendants have similarly allowed late lease payments for tenants of Colton despite the lease agreement provisions.[145]

       e.     Board Policy No. 6900 states, "Each year, a determination shall be made of which equipment,[and] supplies are obsolete...and [f]ollowing approval by the Board of Education items may be sold...."[146] The Clerk at the Depository has failed to obtain prior approval from the requisite authority prior to disposing books that were considered obsolete. This action amounts to a substantial violation of this policy. In addition, Defendants have not amended and subsequently published the required changes to the aforementioned policy pursuant to the Comptroller's Audit Recommendation and Corrective Action Plans.

159.    Superintendent of Schools Defendant Joel Klein has stated, "We have policies. We have procedures. We have a staff. Under the Corrective Action Plan, we'll review our policies, our procedures and make changes if needed. But as far as we can determine, we are

---

[143]    The total paid was gleaned from Minerva & D'Agostino, P.C. invoices for the period rom November 2009 through June 2012.

[144]    Exh. 51.

[145]    Exh. 52.

[146]    *Id.*

following the letter of the law."[147] The Superintendent's statement acknowledges the existence of Board policies, and distinguishes acting in accordance with "the letter of the law."[148]

160.    Defendants have not amended and published changes to policies pursuant to the Comptroller's Audit Recommendation and its own Corrective Action Plans. This includes the development of "procedures and standards for written agreements for professional services. The standards [should have] require[d] written contracts for amounts less than $5,000 and more detailed written contract for amounts greater than $5,000."[149]

161.    Additionally, in 2010 the Office of the State Comptroller included East Ramapo in an audit of nine school districts to determine "whether school districts are procuring special education professional services for the best value."[150] The dates of the audit were from July 1, 2008 through August 31, 2009.

162.    The Comptroller determined that the District, at Defendants' behest,  spent $206,000 on contracted special education professional services, hiring seven professionals for the period examined.

163.    The audit recognized that General Municipal Law ("GML") does not require competitive bidding for professional services; however, the audit determined that the District, at Defendants' behest, spent $13,000 more on these contractual services than it would otherwise at the lowest hourly rate.[151] For example:

a.    For Physical Therapy services for the academic school year 2008-09 and 2009-10, Defendants paid providers a rate of $65 to $140 an hour.

---

[147]    "East Ramapo Klein does his Pinocchio act," *available at,*
<http://www.youtube.com/watch?v=rlPOMWOOxdc,> Sept. 8, 2011, (last visited on July 12,2012).
[148]    *Id.*
[149]    Exh. 44.
[150]    Exh. 53/
[151]    *Id.*

b.     For audiology services for the academic school year 2008-09 and 2009-10 Defendants paid providers a rate of $113 to $117 an hour.

164.     A follow-up letter from the Comptroller's office stated, "By not seeking competition for these services, District officials do not have adequate assurance that they procured these services in the most economical manner and in the best interest of the District's taxpayers. In addition, District officials were unable to provide documentation of how the vendors for these services were determined, as required by GML."[152]

165.     The Comptroller's letter continues, noting that the District did not follow their own purchasing regulations: "While the District complied with the GML requirement to develop specific procedures for the procurement of professional services, we noted that the District did not advertise for or issue RFPs for special education professional services as required by the District's own purchasing regulations."[153]

## K.     DEFENDANTS HIRED ATTORNEY D'AGOSTINO AT DOUBLE THE PRICE OF THEIR PRIOR ATTORNEY WITH THE INTENT TO FURTHER THEIR SCHEME OF PROMOTING RELIGION AND PRIVATE RELIGIOUS SCHOOLS AT TAXPAYER EXPENSE.

166.     Until late 2009, the school attorney for ERCSD was Stephen Fromson of the firm of Greenberg, Wanderman & Fromson.

167.     Upon information and belief, for his services as school attorney, Mr. Fromson charged the District $120 per hour.

168.     On November 18, 2009, a motion was made by then-Board-member Defendant Aron Wieder to replace Mr. Fromson with Defendant Attorney D'Agostino, Esq. of the firm of Minerva & D'Agostino, P.C.[154]

---

[152]     *Id.*

[153]     *Id.*

[154]     Exh. 54.

169.     Then-Superintendent of Schools, Dr. Ira E.Oustatcher, presented the District with an estimated cost of the services of D'Agostino which ranged between $600,000 to $1.3 million per year.[155]

170.     This estimate prompted inquiry from non-defendant Board member Stephen Price regarding the cost the District would incur, given that the estimated cost of Defendant D'Agostino's services presented by Dr. Oustatcher was twice the then current cost of $325,000.[156] Non-defendant board member Calhoun also expressed similar concerns, and urged Defendants to adhere to the "enormous [fiduciary] responsibility," that the District has to the public.

171.     In response, Defendant Wieder rejected Dr. Oustacher's evaluation that the District would incur such a high cost. When asked to provide an estimate, Defendant Wieder stated in substance that he believed it would not cost "that much," and would not provide an approximate cost.[157]

172.     Dr. Oustatcher urged the Board to re-evaluate the impact that Defendant D'Agostino's services would have on the District's budget.

173.     Then-Board member Calhoun urged Defendants to consider that such a decision cannot be based simply on the whims of an assumption, and that it would be "totally irresponsible" to do so.

174.     Nevertheless, the Defendants who were then on the Board disregarded Dr. Oustatcher's advice, and recklessly voted to approve the hiring of Defendant D'Agostino as General Counsel for the District.

---

[155]     East Ramapo part 6, *available at*, <http://www.youtube.com/watch?v=RgN_2wFGd2o&feature=relmfu> (last visited on Aug. 6, 2012).

[156]     *Id.*

[157]     *Id.*

175.    Defendant Attorney D'Agostino had previously gained a reputation for representing the Board of Education of the Lawrence Union Free School District, a district where the Board majority consisted of Orthodox Jews whose children attended private yeshivas.[158]

176.    While serving as counsel to the Lawrence Board, Defendant Attorney D'Agostino devised a novel way to use public money to fund special education in private religious schools,[159] similar to that described above.

177.    The motion to appoint Defendant Attorney D'Agostino was sudden and unexpected. The subject of changing school attorneys was never put on the Board's agenda prior to the November 18 meeting, nor was any special meeting called in advance to discuss the matter.[160]

178.    Some members of the Board were not informed prior to the meeting that Minerva & D'Agostino, P.C. had submitted a proposal for services to the Board, as they had to be informed of the name of the firm and the contents of the proposal at the November 18 meeting.[161]

179.    Defendant D'Agostino proposed to serve as school attorney in exchange for a $40,000 per year base retainer, with all work billed at a rate of $250 per hour, and travel billed at a rate of $125 per hour.

180.    Defendant Attorney D'Agostino's office is in Valley Stream, Nassau County, while the Administration offices of District are located in Spring Valley, Rockland County. Travel between the two locations takes more than one hour each way. In other words, any services Defendant Attorney D'Agostino performed would cost more than double what Mr.

---

[158]    Peter Appleboom, Board's Hiring Sets Off a School War, The New York Times, December 6, 2009, <http://www.nytimes.com/2009/12/07/nyregion/07towns.html> (last visited on, Aug. 2012).

[159]    *See Id.*

[160]    Exh. 54, at 6416

[161]    *Id.*

Fromson charged, and if Defendant Attorney D'Agostino had to be present for any Board business, the Defendants agreed to pay him over $500 simply to travel to the meeting.

181.     The reasons for appointing Defendant Attorney D'Agostino to the position of school attorney were discussed secretly in Executive Session over the objections of Board members Price and Young-Mercer and then-Board-member Calhoun.[162] Defendants Hopstein, Kohn, and Solomon voted to convene into the Executive Session and were present at the three-hour Executive Session.[163]

182.     Upon the Board's return to Open Session, Defendants Hopstein, Kohn, and Solomon with then-Board-members Defendants Wieder and Stone, again over the objections of Members Price and Young-Mercer and then-member Calhoun, voted to retain Defendant Attorney D'Agostino as school attorney.[164]

183.     The Board members who were aware of Minerva and Attorney D'Agostino's proposal for services did not request or receive proposals from any other attorneys or law firms at the time they made their initial decision to retain Defendant Attorney D'Agostino as School District attorney.[165]

184.     Soon after Defendant Attorney D'Agostino was appointed as School District attorney, an appeal to the Commissioner was filed, challenging the appointment. At a special meeting on December 1, 2009, the Board voted to hire the firm of Kuntz, Spagnuolo & Murphy to represent the Board in the appeal.[166]

---

[162]   *Id.*, at 6416
[163]   *Id.*
[164]   *Id.*, at 6417.
[165]   *Appeal of White*, 50 Ed Dept Rep, Decision No. 16,239; Exh. 29.
[166]   Exh. 55, at 6419.

185.    At its regular meeting on December 2, 2009, members of the public were permitted to address the Board regarding Defendant Attorney D'Agostino's appointment. Eight (8) parents and four (4) students spoke in opposition to the decision to appoint Defendant Attorney D'Agostino, compared with only one (1) non-public school parent speaking in favor of the decision.[167]

186.    During this meeting, an altercation between Defendant Attorney D'Agostino and a parent was recorded on video.[168] The video is available for viewing on the internet at www.youtube.com/ watch?v=74T0j_X6-HM. When this parent criticized Defendant Attorney D'Agostino for charging too high a fee and for his "checkered past," Defendant Attorney D'Agostino became intemperate and stated, "I am putting this gentleman on notice,"[169] "You will be the subject of a lawsuit," [170] and "You want to speak to me outside?"[171] Defendant Attorney D'Agostino then approached the parent and can be seen on the video yelling inaudible remarks at the parent and making aggressive hand gestures[172] until he is physically led away from the parent by a security official.[173]

187.    At this meeting, Defendants voted to put Defendant Attorney D'Agostino's appointment "on hold" until the resolution of the appeal concerning the appointment.[174]

188.    As noted by the Commissioner in *Appeal of White*, the Board issued a request for proposals for the position of school attorney on January 8, 2010. On February 1 and 2, 2010,

---

[167]    Exh. 56, at 6422.

[168]    Antonio Luciano, *available at*, <www.youtube.com/watch?v=74T0j_X6-HM> (last visited Aug. 6, 2012).

[169]    *Id.*

[170]    *Id.*, at 1:28.

[171]    *Id.*, at 1:37.

[172]    *Id.*, at 2:15.

[173]    *Id.*, at 2:22.

[174]    Exh. 56, at 6425.

Defendants met in executive session to review the 11 proposals it received[175] and to interview candidates for the position of School District attorney.[176]

189.     On February 3, 2010, a majority of the Board (Hopstein, Kohn, Stone, and Weider) again voted to retain Defendant Attorney D'Agostino as School District attorney, despite the increase in cost, despite the altercation in December, and over the objection of members Price, Young-Mercer, Calhoun and Rothschild.[177]

190.     In sum, when the decision was made to appoint Defendant Attorney D'Agostino, no explanation was offered as to the reason for switching school attorneys; some members of the Board were never informed of the fact that their fellow members had been negotiating with Defendant Attorney D'Agostino to provide legal services to the Board; those Board members who were informed, including Defendants Hopstein, Kohn, and Solomon, sought Attorney D'Agostino out specifically, and did not request bids from any other attorneys; despite Attorney D'Agostino's higher price; the resounding community opposition to his appointment; the apparent lack of a need for a new school attorney, and Defendant Attorney D'Agostino's public display of intemperance in the face of criticism, defendants Hopstein, Kohn, and Solomon (along with others no longer on the Board) voted to appoint him as school attorney.

191.     During Defendant Attorney D'Agostino's tenure, as described, *supra*, the Board has been increasingly "settling" challenges to CSE placements by allowing Hasidic children to be placed in private yeshivas at public expense, even though public facilities would appropriately satisfy their needs.[178]

---

[175]    Exh. 57, at 6455.

[176]    Exh. 58, at 6457.

[177]    Exh. 59, at 6461.

[178]    School Board meeting minutes for the Academic years 2007-2008 through 2012-2013, reflect an increase in the number of special education settlements.

192.    The hiring of Defendant Attorney D'Agostino was an act to further Defendants scheme to promote religion and to provide benefits to private religious schools at public expense. Defendants approved the appointment of Defendant Attorney D'Agostino because they believed that, because of his prior record in Lawrence, New York, of developing methods to fund yeshivas using special education money, he would be complicit in a scheme to send Hasidic children requiring special education to East Ramapo area yeshivas at public expense, under the guise of a special education settlement, despite a lack of proof that public resources were unavailable. Defendant Attorney D'Agostino has been, in fact, complicit in such a scheme. The act of hiring Attorney D'Agostino thus evinces an intent to violate the law and the First Amendment.

L.    **DEFENDANTS DELIBERATELY WITHHELD NECESSARY BUDGET INFORMATION FROM OTHERS, INCLUDING OTHER BOARD MEMBERS, AND ENGAGED IN SCHEMES TO PROMOTE THEIR PERSONAL INTERESTS, WHICH INCLUDED PROMOTING PRIVATE RELIGIOUS EDUCATION, BY GUTTING THE DISTRICT'S PUBLIC SCHOOL BUDGET THEREBY SEGREGATING PUBLIC SCHOOLS, AND EFFECTIVELY DENYING THE DISTRICT'S PUBLIC SCHOOL CHILDREN OF THEIR RIGHT TO A SOUND BASIC EDUCATION.**

193.    Plaintiffs are guaranteed the right to a sound basic education by the laws and policies of the federal government and the State of New York. However, Defendants have engaged in a scheme and course of conduct that intentionally deprives the District's public school children, who are 90% non-Hasidic, and non-white – mostly poor black, Hispanic, and Haitian children of their right to equal educational opportunities and sound basic education.

194.    Over the course of their tenure as members of the School Board, Defendants have been intentionally systematically gutting virtually every public school program, and diverting its public education funds to promote religion and the private religious schools within the District.

195.     The gutted and defunded programs include but are not limited to the following: a significant decrease in the amount of advanced classes, BOCES programs, teachers, and guidance counselors. Defendants also eliminated all assistant principals, and extracurricular activities such as art and music, and the Students with Interrupted Formal Education (SIFE) program, which ensure that immigrant students achieve their full potential, and do not significantly lag behind their peers. Further, and for example:

a.   For the academic year 2011-12, the budget's BOCES allocation for management information services was reduced to $376,120[179] from $666,120[180]. In addition, the District's summer school program at the middle school level was completely eliminated, although the District had projected a fund balance of $13,153,000 from the previous budget. Moreover, the District's audited financial statement showed a fund balance of $17, 793,047, $4.6 million more than was projected.[181]

b.   Upon information and belief, over the past two years, the District has laid off 25% of its teachers, eliminated full-day kindergarten, eliminated school social workers, eliminated assistant principal slots, reduced collaborative special education classes in the high schools and middle schools to only classes that result in a Regents Exam, cut BOCES training programs, cut the Twilight Academy and increased class size.

---

[179]   Exh. 49, at 9.

[180]   Exh. 50, at 5.

[181]   According to Comptroller DiNapoli, the projected 2010 year-end fund balance was grossly miscalculated and was without support. There was no documentation provided showing how the projection was arrived at and no explanation for the inaccuracy of the projected fund balance. "The failure of District officials to project an accurate fund balance resulted in available resources not being used for the benefit of the taxpayers." Defendants "failed to project an accurate fund balance and … failed to produce any documentation to indicate that a reasonable effort was made to do so." *See* Exh. 42.

    c.   Upon information and belief, public school students no longer received an

        appropriate allocation of textbooks.[182]

196.    As a result of Defendants' actions, equal educational opportunities have been

denied for public school students, while funds have been improperly and inappropriately allocated to

private yeshivas within the District. Article XI, §3 of the New York State Constitution forbids this

practice:

> "Neither the state nor any subdivision thereof, shall use its property or credit or
> any public money, or authorize or permit either to be used, directly or indirectly,
> in aid or maintenance, other than for examination or inspection, of any school or
> institution of learning wholly or in part under the control or direction of any
> religious denomination, or in which any denominational tenet or doctrine is
> taught, but the legislature may provide for the transportation of children to and
> from any school or institution of learning."

197.    Undoubtedly, the illegal and deliberate act of allocating public funds to private

yeshivas, in addition to the capricious and arbitrary cuts made to public education, demonstrate at a

minimum Defendants' indifference to their duty, but as demonstrated here, Defendants have engaged

in deliberate and intentional acts to deprive these public school children of their right to a basic

sound education, and Defendants' duty as declared in Article XI, §3 of the New York State

Constitution, to provide a sound education to Plaintiffs' children and the class they represent.

198.    In addition, while carrying out their scheme, Defendants have failed to address or

remediate the academic needs of the public school system under their control, and instead have

funded and promoted the purported education of the students in the District who attend private

religious schools. Consequently, during the last five years, as a group, as programs and resources are

stripped away, and teachers are laid off and class-sizes increase, students in the District have

---

[182]   *See* <http://www.youtube.com/watch?v=6tuM_5Zmnsg&feature=autoplay&list=PL3E2ED9106E846F77&playnext=1>.
(last visited on Aug. 6, 2012) (Pat Simmons, a school principal, talks about cuts to textbooks stating that her school
did not have enough textbooks that year. She also discusses how cutting assistant principals will affect the safety of
the school and describes a code); *see also* <http://www.youtube.com/watch?v=KEJty5Md5sM&feature=plcp> (last
visited on Aug. 6, 2012) (A parent speaks out. Her daughter has to share textbooks; there are not enough papers).

performed below their peers in state-mandated academic examinations. The patterns of student underachievement as depicted in state evaluations such as the New York State Education Department (NYSED) Comprehension Information Report and the Accountability and Overview Report, both of which are created for all school districts in the state and accessible to the public, are too consistently negative for Defendants not to be held personally and officially responsible.

199.    NYSED's Comprehensive Information Report for the 2010-11 academic year[183] depicts a public school system that accommodates more students than many of its peers in the county, but with lower results. The Regents Exams Chart[184] shows lower percentages of students scoring at or above the 55th, 65th, and 85th percentiles in many subjects than in neighboring districts. In most cases, ERSCD's figures rank the lowest in Rockland County.

200.    NYSED's Accountability and Overview Report[185] for the same year indicates that the District has not made "Adequate Yearly Progress" (AYP), or "satisfactory progress by a district or a school toward the goal of proficiency for all students" in English and Language Arts (ELA) and Mathematics at the elementary and secondary testing levels.  NYSED gives ratings of "Made AYP," "Made AYP Using Safe Harbor Target," and "Did Not Make AYP." Among special education students, "limited English proficiency" students, and "economically disadvantaged" students, the only "Made" rating was given for "economically disadvantaged" students in Secondary Mathematics and the only "Made Using Safe Harbor Target" was given to the same subset in Secondary ELA. On all other counts, ERSCD has been given a "Did Not Make AYP" rating.

201.    The Accountability and Overview report also offers an "Overview of District Performance" for students in grades 3-8 on state-administered examinations in ELA and

---

[183]    Exh. 60.

[184]    *Id.*

[185]    Exh. 61.

Mathematics. Student performance is described in terms of a four-level scale, where Level 1 designates a student's performance as "Below Standard" and Level 4 designates a student's performance as "Exceeds Proficiency Standard." Students who "Meets Proficiency Standard" are classified at Level 3.

202.     The 2010-11 results for District are easily the worst when compared to the results for the rest of the school districts in Rockland County. The percentage of students that scored at or above Level 3 in their respective grade levels for language arts and mathematics are the only ones in Rockland County that fall below 50%. The maximum in any grade in the District is 52%. Two of the three exams that surpassed 50% involved exams administered at the 6th grade level, which provided the lowest amount of test-takers of any grade in the District. Only 30% of 8th grade students scored at or above Level 3 in both ELA and mathematics, while the number of students who took each exam was the highest in the 3-8 span.  Students in the District also accounted for the lowest percentages of students in grades 4 and 8 who met the state's proficiency standards for those respective grade levels in science.

203.     Secondary students in the District accounted for the county's lowest percentages of students who scored at or above Level 3 in English and Mathematics, 76% and 75%, respectively. Those are the only two figures in the county below 80%, and the only ones to fall below the percentages provided for the entire test-taking student body across the state.  The latter attribute also applies to the corresponding percentages of the District's classes of 2009 and 2010.

204.     Among students with disabilities, the percentage of students with disabilities who scored at or above Level 2 has decreased from 46% in the Class of 2009 to 43% in the Class of 2010 to 33% in the Class of 2011. These figures are by far the lowest of all school districts in the county.

Significantly, the last figure can be correlated with significant decreases in allocations for special education in Defendants' budget.

205.     All of the aforementioned disparities are large enough to demonstrate the public school children in the District have been suffering and are suffering an ongoing harm. Not enough resources have been devoted or are being devoted to ensuring student proficiency in the aforementioned areas according to the Regents' standards.

206.     In 2011-2012, the District itself was newly identified as a District in Need of Improvement due to the substantial number of schools designated in Need of Improvement.[186]

207.     In 2011-2012, Chestnut Ridge Middle School, Eldorado Elementary School, Grandview Elementary School, Kakiat Elementary School, Lime Kiln School, Margetts Elementary School, Pomona Middle School, Ramapo High School, and Spring Valley High School are identified as schools that are in Need of Improvement. This assessment encompasses both of the District's high schools, three of the District's six (6) middle schools, and four (4) of the District's five (5) elementary schools – in other words, nine (9) of the District's thirteen (13) schools.[187]

208.     In 2010-2011, only East Ramapo High School was listed as in Need of Improvement.

209.     In the school years, 2008-2009 and 2009-2010, only Pomona Middle School was listed as in Need of Improvement.

210.     For the 2007-2008 school year, no schools were identified as a school in need of improvement.[188]

---

[186]          *See* http://www.p12.nysed.gov/irs/accountability/2011-12/November2011DistrictsNewlyIdentified.pdf
[187]    Exh. 62.

[188]    *Id. See* School Accountability Status for Rockland County, found at
<http://www.p12.nysed.gov/irs/accountability/designations/home.html> (last visited on Nov. 6, 2012).

211.    For the 2012-2013 school year, the District received $47.5 million in State aid, an increase of $2 million from the previous year, and $30 million in federal aid, and proposed a tax levy increase of 1.91%, which, according to the State's new property tax cap, could have increased to 4.8%.

212.    Despite this increase in revenue, Defendants' adopted 2012-13 $192 million budget decreased spending on the public schools by $7 million, and cut more than $12 million in essential staff and programs.

213.    Once Defendants put the 2012-13 Budget into effect, Defendants will have eliminated all social workers, assistant principals, guidance counselors, and collaborative classes, in addition to all elementary middle, and High School ESL support specialists, and the full-day kindergarten program.

214.    Defendants made draconian cuts to the Boards of Cooperative Educational Services (BOCES), which provide services such as vocational-technical programs for high school students intended to ensure that such students receive an adequate education.

215.    Defendants also made a 25% cut to several of the District's most significant extracurricular programs, including sports. In addition, Defendants made a 50% cut in the District's elementary band and orchestra instrumental lessons.

216.    Defendants, however, did not reduce spending on transportation to non-public religious schools on non-mandated days, which would have saved $490,000, more than the elimination of middle school deans (a $207,000 savings) and the reduction of sports ($213,000) combined.[189]

---

[189]    Exh. 63.

217.     The cumulative effect of these significant cuts has resulted in a dramatic increase in general education class sizes, and a significant decrease in the number of sections in Advanced Placement and Honors courses for the 2012-13 academic year.

218.     Defendants have created a "public perception that the District may not be acting in the best interests of all students." There have been numerous "reports of growing tension, distrust, and anger being expressed at board meetings and in the community" and "many African American and Hispanic parents [whose children make up over 90% of the students in the District's public schools] have lost confidence in the East Ramapo school district."[190]

219.     The school budget cuts are unclear to the public and even to certain Board members. Joanne Thompson, former board member, for example, has stated that when she was on the Board (through the 2011-12 academic year), because Defendants intentionally refused and failed to provide sufficient information in order for her to make informed budget decisions.[191]

220.     Defendant Board President Schwartz brushed off the public's and other non-defendant Board member concerns about the lack of budget information.

221.     Defendants failed to provide non-defendant Board members copies of the budget in sufficient time to make informed decisions concerning the budget.

222.     Defendant Schwartz cavalierly suggested cutting the students' graduation as a superfluous expense.[192]

223.     Upon information and belief, in April 2012, a parent asked then Board President, Morris Kohn, why the Board was considering making special education cuts for public school students. Kohn replied that they were not making special education cuts and this parent had to

---

[190]    Exh. 64.

[191]    *See* <http://www.youtube.com/watch?v=ZJitiW3Yw_w&feature=bf_next&list=PL3E2ED9106E846F77> (last visited Aug. 6, 2012).

[192]    *Id.*, at 12 minutes.

explain to him that the Collaborative Classes (which were being cut) were special education classes. Kohn did not know what the Collaborative Classes were and this parent had to explain what they were to him.

224.     Defendants intentionally manipulated the budget to under-represent the amount of money the District had available. According to Comptroller DiNapoli, the projected 2010 year-end fund balance was grossly miscalculated and was without support.[193] There was no documentation provided showing how the projection was arrived at and no explanation for the inaccuracy of the projected fund balance. "The failure of District officials to project an accurate fund balance resulted in available resources not being used for the benefit of the taxpayers." Defendants "failed to project an accurate fund balance and … failed to produce any documentation to indicate that a reasonable effort was made to do so."[194]

225.     Defendants refused to provide specific information at Board meetings causing parents and non-Defendant Board members to become frustrated with the process. Defendants' intentions were to keep the public and others, including non-defendant Board members from evaluating proposed budget programs, including whether a program should remain or be cut, or whether a program was a mandated or a non-mandated program. When asked when more information was to be provided, the then Board chair stated that the information would be provided at time of the vote, leaving Board members no time to assess the programs and their value.[195]

226.     As religious school related spending has increased over the last few years, spending on the public schools has decreased. In order to fund their unlawful diversion of public

---

[193]   *Id.*, at 15 minutes.

[194]   *Id.*

[195]   School Board - Mismanagement and Cuts for 2012-2013, *available at*, <http://www.youtube.com/watch?v=1J4vX7Dsufs> (last visited Aug. 6, 2012).

resources to the yeshivas and religious education, the Defendants have significantly cut spending on programs fundamental to the operation of the public schools in the District.

**N.     THE DEFENDANTS HAVE SEGREGATED NON-WHITE, NON-HASIDIC STUDENTS FROM WHITE, HASIDIC STUDENTS IN SPECIAL EDUCATION PROGRAMS.**

227.     Defendants intentionally discriminated against Plaintiff students on the basis of race, color, national origin, ethnicity, and religion by placing Hasidic, white students allegedly requiring special education in private religious schools, and leaving poor minority non-white, non-Hasidic students of color in the public schools.

228.     Defendants acted to segregate the public schools on the basis of race, color, national origin, ethnicity and religion, such that all Hasidic, white students were placed in private religious schools by whatever means possible, leaving non-Hasidic, non-white students in the public schools.

229.     Further, the Hasidic, white purportedly special needs children being sent to or placed in private religious schools could have been receiving the same or similar services in public schools at substantially less cost. Instead, Defendants are wrongfully expending unnecessary public funds to improperly educate Hasidic, white children in private religious schools, when they could otherwise be educated in public schools at substantially less cost.

230.     Non-white students and students of non-American (US) heritage compromise approximately 90% of the District public schools. Non-white students and students of non-American (US) heritage only compromise approximately 32% of the students residing in the District.

231.     Defendants' practice of assigning white children purportedly needing special education services to private schools while keeping all non-white children and children of Hispanic heritage in the District public schools has resulted in substantial separation of white children of

American heritage from non-white children and children of non-American (US) heritage among schools in the District.

232.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs in each of the Causes of Actions set forth below.

### AS AND FOR A FIRST
### CAUSE OF ACTION

### (DEPRIVATION OF RIGHTS UNDER THE FIRST
### AMENDMENT TO THE UNITED STATES CONSTITUTION)

233.     By the aforedescribed actions, including but not limited to the scheme to improperly place special education students in yeshivas in violation of the IDEA and the State Education Law, the ordering of religious text books, the contract to provide Title I and Title III services to yeshiva students through a religious organization, the efforts to sell school buildings to religious institutions for a cost below market value, the failure to collect rent from religious institutions renting school property, the failure to keep inventories of textbooks loaned to religious schools, the retention of Defendant D'Agostino, and the diversion of tax payer funds in other ways to religious schools, Defendants, acting under the color of law, without lawful justification, intentionally and with a deliberate indifference to and a reckless disregard for the natural and probable consequences of their acts, caused injury and damage to Plaintiff District and to the individual Plaintiffs and the class they represent, in violation of Plaintiffs' Constitutional rights and guaranteed under the First Amendment to the Constitution of the United States.

## AS AND FOR A SECOND
## CAUSE OF ACTION

## (DENIAL OF FEDERALLY GUARANTEED EQUAL PROTECTION)

234.     As described above, Defendants conspired to negotiate and accept unreasonable special education placement "settlements," which allowed white Hasidic students to receive tuition reimbursement for attendance at private religious schools.

235.     Defendants also spent District money on religious textbooks for use in private religious schools that, under the law, should never have been bought by the District.

236.     The substantial and unnecessary increase in the cost of tuition reimbursement and textbook costs for private religious education has put a strain on the District's finances, and has resulted in severe budget cuts to important programs throughout the District public schools.

237.     Defendants committed the above-alleged acts with intent to benefit Hasidic families only, all of whom are Caucasian.

238.     Defendants acted with deliberate indifference to the effects of their conspiracy to benefit Hasidic families on non-Hasidic school children within the District, particularly Black, Haitian, and Hispanic school children.

239.     Defendants acted under color of state law in the commission of the above-alleged acts, but with discriminatory animus.

240.     Defendant D'Agostino conspired with individuals acting under color of state law in the commission of the above-alleged acts.

241.     By their above-alleged acts, Defendants denied Plaintiff parents' and their children equal protection of the laws on the basis of religion, race, color, national origin, and ethnicity in violation of the Fourteenth Amendment to the United States Constitution.

## AS AND FOR A THIRD
## CAUSE OF ACTION

## (DENIAL OF NEW YORK STATE GUARANTEED EQUAL PROTECTION)

242.    As described above, Defendants also denied Plaintiff parents' and their children

equal protection of the laws as guaranteed by Article I, §11 of the New York State Constitution.

## AS AND FOR A FOURTH
## CAUSE OF ACTION

## (DELIBERATE SCHOOL SEGREGATION – 20 U.S.C.§ 1703)

243.    Plaintiff Board is an educational agency as defined in 20 U.S.C. § 1720(a).

244.    Defendants deliberately agreed and acted so as to allow white children, who are

ethnically and culturally self-identified as Hasidic Orthodox Jews to attend private religious schools

at the District's expense, while not making similar arrangements for non-white, African-American,

Haitian, and Hispanic children, and other children of color.

245.    Defendants did so with the intent to segregate these white Hasidic students from

the non-white non Hasidic students, who were predominantly  African-American, Haitain, and/or

children of Hispanic heritage.

246.    Defendants' actions did directly and proximately cause the schools attended by

non-white children, African-American, Haitian, and/or children of Hispanic heritage to be

substantially separate from schools attended by white Hasidic children.

247.    By its above-alleged actions, Defendant Board deliberately segregated the East

Ramapo School District on the basis of race, color, and national origin, and ethnicity and religion

and did thereby deny Plaintiff parents' children equal educational opportunities, and equal protection

in violation of 20 U.S.C. §1703.

**AS AND FOR A FIFTH**
**CAUSE OF ACTION**

**(UNCONSTITUTIONAL GIFT OF PUBLIC FUNDS)**

248.     Defendants have given public money and in-kind aid to private schools without

consideration to the District.

249.     By their above-alleged acts, Defendants have caused Plaintiffs' tax money to be

rendered to private schools as an unconstitutional gift of public funds, in violation of Article VIII, §1

of the New York State Constitution.

**AS AND FOR A SIXTH**
**CAUSE OF ACTION**

**(DEPRIVING CHILDREN OF THEIR RIGHT TO SOUND BASIC EDUCATION IN**
**VIOLATION OF ARTICLE XI, § 1 AND § 3 OF THE NEW YORK STATE**
**CONSTITUTION AND 20 U.S.C.A. § 1221-1)**

250.     Article XI, Section 1 of the New York State Constitution states: "The legislature

shall provide for the maintenance and support of a system of free common schools, wherein all the

children of the state may be educated." This provision creates an entitlement to an education for

New York children.

251.     It has been recognized by the New York State Court of Appeals that children have

a constitutional right to the opportunity for a sound basic education.

252.      The inappropriate allocation and spending of District money led to significant

cuts in public school education spending. The cuts include, but are not limited to, a significant

decrease in the amount of advanced classes, teachers, guidance counselors, and the elimination of

assistant principals, decreases in BOCES programs, elimination of extracurricular activities such as

art and music, and the SIFE program.

253.     Congress has declared, at 20 U.S.C. § 1221-1: "Recognizing that the Nation's economic, political, and social security require a well-educated citizenry, the Congress (1) reaffirms, as a matter of high priority, the Nation's goal of equal educational opportunity, and (2) declares it to be the policy of the United States of America that every citizen is entitled to an education to meet his or her full potential without financial barriers."

254.     Additionally, Article XI, §3 of the New York State Constitution states, "Neither the state nor any subdivision thereof, shall use its property or credit or any public money, or authorize or permit either to be used, directly or indirectly, in aid or maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught, but the legislature may provide for the transportation of children to and from any school or institution of learning."

255.     As a result of Defendants' actions as aforedescribed, educational opportunities have been cut for public school students, while private schools continue to receive illegal District support. Defendants have dramatically cut important programs within the District in order to fund the unlawful religious activities complained of in the preceding paragraphs incorporated herein.

256.     Defendants have demonstrated deliberate indifference to duty to provide s sound education to Plaintiffs' children and the class they represent.

### AS AND FOR A SEVENTH
### CAUSE OF ACTION

### (CIVIL RIGHTS VIOLATIONS AND CONSPIRACY)
### Section 1983, Section 1985, Section 1986

257.     As described herein, Defendants formed a voting bloc to carry out each of the schemes described above, without any rational basis, based on discriminatory animus, for the purposes of segregating students on the basis of race, color, ethnicity, national origin, and religion.

258.     Defendants used their voting bloc, and their positions on the Board, to deprive Plaintiffs' and the students of the District of their constitutional rights secured by the First and Fourteenth Amendments to the Constitution, in violation of 42 U.S.C. §§ 1983, 1985, 1986, and all related provisions of the New York State Constitution. Defendants committed these violations, or permitted them to occur, or condoned their occurrence, or neglected to prevent them having the duty and obligation to do so, with deliberate indifference to the rights of these constitutional rights. In so doing, Defendants deprived Plaintiffs' children of their right to an equal educational opportunities, and to a sound basic education and to the necessary educational services to which Plaintiffs students are entitled.

259.     A probable consequence of defendants conspiracy is to so cripple the school system by depriving it of its educational services is to force more cuts in services to be made, to close more schools, and to further reduce federal and state funding, thereby essentially force the minority community to seek alternate residential and educational opportunities outside the District further segregating the community.

260.     Defendants, together or separately, could have prevented the aforedescribed violations of the rights of Plaintiffs and those in the class they represent from occurring.

## AS AND FOR A EIGHT
## CAUSE OF ACTION

### (BREACH OF FIDUCIARY DUTY)

261.     Under New York State law, a fiduciary relationship exists between each board member and the schools in the district.

262.    "Among other things, school boards are responsible for educational standards, budget matters, management issues and health and safety. In carrying out these duties, individual board members have a fiduciary obligation to act constructively to achieve the best possible governance of the school district."[196]

263.    Each member of a board of education of a school district must complete training on "financial oversight, accountability and fiduciary responsibilities of a school board member," (N.Y. Educ. Law § 2102-a.)

264.    Policies enacted by the Board must ensure fiduciary responsibility as promulgated by State education laws and regulations. In furtherance of this requirement, the Board must implement and enforce those policies consistent with the letter and spirit of the law. Here, defendants failed to enforce and implement appropriate policies, and as such, breached their fiduciary duties as board members.

265.    By failing to "tak[e] reasonable steps to ascertain the value" of Hillcrest and Colton and not "utiliz[ing] a method of sale, which is apt to bring in the best price," the Board breached their "fiduciary duty to secure the best price obtainable in the board's judgment for any lawful use of the premises."[197]

266.    Defendants have further breached their fiduciary duty by diverting public funds to private religious institutions, by unnecessarily placing special education students in private schools, by losing the ability to gain state reimbursement for special education placement, by failing to engage in sound procurement practices, by failing to properly track library books loaned to private schools, by purchasing religious books with public funds, by cutting necessary educational programs, by showing a deliberate indifference to how the schools in the District are providing an

---

[196]    *Application of Nett*, 45 Ed. Dept. Rep., Decision No. 15,315.
[197]    *Appeal of White*, 50 Ed. Dept. Rep., Decision No. 16,239.

education, by creating a segregated public school system, and by creating an environment of public distrust for the school board.

## AS AND FOR A NINTH
## CAUSE OF ACTION

### (VIOLATION OF EDUCATION LAW SECTION 3811)

267.     By all of their aforedescribed actions, Defendants have abused the public trust, violating their fiduciary duty to both the taxpayers of the District and to the public school students of the District.

268.     On top of the aforedescribed waste of public money, Defendants have spent hundreds of thousands, and perhaps millions of dollars defending these unlawful practices in actions brought by the State Education Commissioner, the Comptroller, the State Attorney General, and District parents, and an action brought by Plaintiffs herein, before the State Education Department, seeking the removal of Defendants Daniel Schwartz, Yehuda Weissmandl, Moses Friedman, Moshe Hopstein, and Eliyahu Solomon.

269.     On or about July 17, 2012, the District Board agreed, by resolution, to invoke Public Officers Law §18 in response to a Petition brought by parents to remove Defendant Board members currently pending with the New York State Commissioner of Education. According to Section 3811, the District will provide for the defense of the Board members in this action if it "aris[es] out of any alleged act or omission which occurred or allegedly occurred while the employee was acting within the scope of [their] public employment or duties." Public Officers Law § 18 (3)(a).

270.     Similarly, Section 3811 provides that "whenever … any … member of the board of education of a school district … shall defend any action or proceeding … arising out of the exercise of his powers or the performance of his duties … all his *reasonable* costs and expenses, as well as all costs and damages adjudged against him, shall be a district charge … provided that … it

shall be certified by the court of by the commissioner of education, as the case may be, that he

appeared to have acted in good faith with respect to the exercise of his powers or the performance of

his duties."

271.    At a Special Board meeting on July 17, 2012, called to discuss the Removal

Petition pending with the New York State Commissioner of Education, an inquiry was made to

determine if New York State Reciprocal Insurance ("NYICR") would cover attorneys' fees and

other costs associated with defense of the Petition. In a subsequent meeting, the Board reconvened

and made the announcement that NYICR will not insure or cover Board Members for the costs

associated with the Petition. Therefore, any and all costs, including attorney's fees will come out of

District budget.

272.    A similar invocation of Pub. Off. Law 18 and N.Y. Educ. Law 3811 is expected

for this case as well.

273.    Defendant Board members should be denied the ability to invoke Pub. Off. Law

18 and N.Y. Educ. Law 3811, because Defendants used their position under the color of state law, to

act unconstitutionally, unlawfully, and with deliberate indifference to State law, and are charged

with breaching their fiduciary duty to the District whose funds they want to use for their self-

defense.

274.    New York Education Law 3811 was created to protect District employees from

being held liable for actions occurring within the scope of their employment. The actions of Board

members as described in this complaint are a complete departure from the intent and purpose of the

indemnification protections of N.Y. Educ. Law 3811. Board actions that are unlawful,

unconstitutional, and *ultra vires* should not be considered as actions arising out of the exercise of

Defendants' powers or the performance of their duties as board members for purposes of applying 3811.

275.     Defendant Board members who are parties to this complaint and Defendant Board members who were parties to the petition pending with the Commissioner of Education, have already been found to have violated State Education Law. Additionally, their actions to use public funds to support private religious interests in violation of the US Constitution is in direct conflict with the District's interest in maintaining a secular public school district with equal opportunities for all children in the District.

276.     Denial of reimbursements is supported by New York Commissioner of Education, Decision No. 12,584, where the Commissioner refused to "sanction the expenditure of public funds for the defense of a public officer or employee for misconduct committed in the exercise of his or her official duties" and stated that "[s]uch indemnification would serve as a deterrent to the bringing of disciplinary charges against the public officer or employee, which is contrary to the public interest."

277.     Here, such indemnification would serve as a deterrent for parent-Plaintiffs from bringing charges against Board members for looting the District and damaging their children's futures because even more public funds would be diluted for the Defendant Board members' defense.

278.     It is against public policy for the School District to indemnify the Defendant Board members for costs, attorneys' fees, and judgments that arise out of already established breaches of fiduciary duty to the District. State agencies have repeatedly cited the Defendant Board members for violating NY State and federal law.

279.     This is not a question of unknowing, negligent acts under the scope of an official's duties. Rather, Defendants' actions constitute a willful disregard and blatant misuse of public funds. Both NY Public Officers § 18 and NY Education § 3811 should not indemnify actions by Defendant Board members already found by the State to be improper.

280.     By acting as aforedescribed and by threatening to use District funds to pay for the defense of this litigation, Defendants have breached and will continue to breach their fiduciary responsibilities and engage in a deliberate, blatant conversion of public funds.

## AS AND FOR A TEN
## <u>CAUSE OF ACTION</u>

### (FRAUD)

281.     Defendants knowingly altered or condoned the alteration of book purchase orders for religious textbooks.

282.     In the purchase orders described in this complaint none of the books ordered have complete or accurate ISBN numbers listed.

> i.     ISBN numbers are 10 or 13 digit identifying number for a book. In purchase orders from East Ramapo, numbers listed are incomplete, some only providing six digits, making identification of the books difficult.

> ii.     Complete ISBN numbers listed are for different books.

> iii.     Titles are not searchable.

> iv.     Many of the listed titles are not in English

> v.     Some of them have ISBN codes but cannot be found on Internet search engines.

283.     Additionally, the descriptions listed on the checks for these books are listed only as "textbooks and workbooks."

284.    Defendants were members of the Board on the dates of the textbook invoices and after the Comptroller's report was issued.

285.    Additionally, Defendants and their agents tried to cover up their intent to order religious texts by including the phrases on invoices, "Do not send any books that violate NYS Textbook/Library Law. Only materials that are secular in nature can be accepted" Yet, the books ordered promote religion. This is direct evidence of intent to defraud taxpayers.

286.    Purchase orders also include the phrase, "Foreign language books must have an ISBN number on the book or the vendor must provide the English translation. Books without translation will not be accepted" This is an attempt by Defendants to coverup their intent to buy books in Yiddish.

287.    Defendants made repeated misrepresentations on purchase orders, which they knew to be false with the intent of defrauding the plaintiff District. Plaintiffs relied on Defendants to purchase books for the District in accordance with the law, which is justifiable in that the Defendants had a fiduciary relationship with the Plaintiffs to ensure compliance with Education Law. Accordingly Plaintiffs experienced injury.

288.    Defendants committed acts of fraud by misrepresenting property values in an attempt to sell public school property to Yeshivas.

289.    As discussed *supra*, the appraisal used by the District, with their new contractor to value the Hillcrest school at $3.2 million set a value far below market rate for the property. This is because the appraisal compared the Hillcrest property to vacant land.

290.    As discussed *supra*, the appraisals used to evaluate Colton Elementary were far below market rate for the property.

291.     Defendants allowed the use of false appraisal and arbitrarily low appraisals in an attempt to sell the Hillcrest school and Colton Elementary to yeshivas quickly and without many other bids.

292.     Defendants allowed the use of low appraisals despite also having appraisals or tax district assessments at much higher values for both properties.

293.     Defendants used this misrepresentation of fact, which they knew was false, with an intent to induce Plaintiff District to rely upon it.

294.     Plaintiff District relied upon the decisions of Defendants and their agents to evaluate the property because of the fiduciary relationship between Plaintiff and Defendants. Defendants had a duty to make financial decisions in the best interest of the Plaintiffs, and it was justifiable that the Plaintiff District rely on the Defendants' representations in what it thought was in furtherance of that duty.

295.     Plaintiff District lost funds as a result of those misrepresentations.

296.     Defendants and their agents have made misrepresentations of the residency of special education students, stating that student resided outside of the district were entitled to District placements, or have allowed such misrepresentations to be made.

297.     Upon information and belief, Defendants and their agents altered and misrepresented IEPs in order to secure private religious school placements of Hasidic children in certain yeshivas.

298.     Defendants' actions as aforedescribed have cost the District hundreds of thousands, and perhaps millions of dollars.

## DAMAGES

299.     Plaintiff District and the Plaintiff tax payers has suffered a loss of millions of dollars, the exact sum of which is as yet unknown, as a direct and proximate result of the aforedescribed actions of Defendants.

300.     Plaintiff parents and the children on whose behalf they sue and the Plaintiff graduates have been deprived of educational opportunities to their damage in a sum as yet to be determined.

301.     Defendants have acted intentionally and recklessly, in total disregard of the rights of Plaintiffs, the schoolchildren of East Ramapo Central School District, and the taxpayers of the East Ramapo Central School District, entitling Plaintiffs to an award of punitive damages.

302.     The injury suffered by the District, and by the children on whose behalf Plaintiff parents and Plaintiff graduates sue, is irreparable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.     Enter a preliminary and permanent injunction:

1.     Prohibiting the expenditure of District funds to defend this lawsuit or the appeal to the State Education Commissioner titled *Jones et al. v. Schwartz,* an action to compel the removal of five defendants herein from the School Board of the District

2.     Prohibiting the placement at District expense or continued placement of any child in a special education program not located in a public school of the District absent a showing, before a neutral hearing officer, that (a) the child resides in the district, and (b) the public school system in the District cannot attend to that child's special education needs.

3.      Prohibiting the expenditure of District money on any textbook which is religious in nature, violative of federal law.

4.      Prohibiting contracts with any entity controlled by a religious institution to provide Title I or Title III services in any school in the District.

B.      Enter judgment:

1.      Requiring restitution by Defendants, jointly and severally, of all funds lost by the District as a result of the unlawful activities complained of in this Complaint.

2.      To each plaintiff, and member of Plaintiffs' class, in a sum to be determined, of a sum compensating that plaintiff's child or plaintiff him or herself, if he or she sues as a graduate for the loss of educational opportunities, and for punitive damages in the sum of at least $10 million.

3.      Awarding Plaintiffs' attorneys' fees and costs, and such other and further relief as is just and equitable.

## JURY DEMAND

Plaintiffs demand a jury trial on all claims.

Dated: November 6, 2012

ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS


By:_____/s/_____
                 Arthur Z. Schwartz
225 Broadway, Suite 1902
New York, New York 10007
(212) 285-1400


ADVOCATES FOR JUSTICE


By:_____/s/_____
                 Laura D. Barbieri
225 Broadway, Suite 1902
New York, New York 10007
(212) 285-1400


ATTORNEYS FOR PLAINTIFFS

## **VERIFICATION**

STEVEN WHITE, a plaintiff herein, declares under penalty of perjury and verifies that the facts stated in the Complaint are true to my knowledge, and that I believe that the facts alleged, upon information and belief, are true.

Dated: November $\underline{6}$, 2012

Steven White