UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
REBECCA MONTESA, *et al.*,

                 Plaintiffs,

      -against-

DANIEL SCHWARTZ, *et al.*,

               Defendants.

-------------------------------------------------------X

**OPINION AND ORDER**

12 Civ. 6057 (CS)(JCM)

      By motion filed November 20, 2015, defendant East Ramapo Central School District

("Defendant District" or "ERCSD") seeks to compel plaintiff Steven White ("Plaintiff White") to

produce e-mail communications with third parties, and to compel plaintiff Marguedala Lahens

("Plaintiff Lahens") to disclose the content of Plaintiff White's statements at meetings regarding

the litigation in 2015. (Docket No. 560). Plaintiffs oppose the motion. (Docket No. 567). The

Court heard oral argument on these issues at a pre-motion conference held on October 15, 2015.

(Docket No. 558). On April 4, 2016, the Court directed Plaintiffs to submit for *in camera* review

copies of the e-mail communications listed in Plaintiffs' privilege log ("Plaintiffs' First Privilege

Log"). (Docket No. 599). Plaintiffs complied with the Court's order at a status conference held

on April 7, 2016. At that conference, Defendant District informed the Court that Plaintiffs had

served a supplementary privilege log ("Plaintiffs' Second Privilege Log") on April 6, 2016, with

further privilege assertions over which Defendant District raises the objections noted in the

pending motion. The Court ordered supplemental affirmations and briefing from Plaintiffs and

Defendant District, which the Court received from Plaintiffs on April 15, 2016 and May 4, 2016,

and from Defendant District on April 28, 2016. (Docket Nos. 604, 616, 613).

## I. BACKGROUND

The Court assumes familiarity with the history of this case, and recites only the facts necessary to this Order.  Plaintiffs are parents acting on behalf of current students in the ERCSD and taxpayers residing within the District (collectively, "Plaintiffs"). Plaintiffs allege that defendants, who are or were "members, employees, or attorneys" of the ERCSD Board of Education, "divert[ed] federal, State, and local District education funds to promote religion and private religious schools and institutions," and "gutt[ed] the District's funding of the public schools thereby depriving its students of educational opportunities." (Docket No. 554 ¶ 1.)

### A. Plaintiff White's E-mails with Third Parties

The documents at issue are e-mail communications sent between Plaintiff White, Plaintiffs' counsel and additional non-parties to this litigation ("the *Montesa* action").  Plaintiffs contend that these non-parties are "Consultants/Investigators" retained by Plaintiffs' counsel, Advocates for Justice, ("AFJ"), "over the course of the pre-litigation investigation and the litigation of the *Montesa* action for various purposes at various times." (Docket No. 568 at ¶ 3). They therefore argue that the attorney-client privilege, the work product doctrine, the common interest privilege, the investigative reporter privilege, or some combination thereof, protects these communications. (Docket No. 503-1).  Defendant District objects to these privilege assertions.

Defendant District first raised its objections in a letter on September 4, 2015, requesting a pre-motion conference. (Docket No. 503).  A pre-motion conference was held on October 15, 2015, at which the Court ordered Plaintiffs to expressly identify the AFJ consultants by October 22, 2015. (Docket No. 558)  On November 2, 2015, following a letter from Defendant District averring that Plaintiffs had not complied with that order, Plaintiffs submitted to the Court a copy

of a letter sent to Defendant District on July 10, 2015, which listed seven

consultants/investigators: Oscar Cohen, Margaret ("Peggy") Hatton, Antonio Luciano, Robert

Forrest, Carole Anderson, Robert Kerkula and Michael Castelluccio. (Docket No. 549).

Defendant District filed its motion to compel on November 20, 2015, objecting to the assertion

of these privileges in relation to those individuals. (Docket No. 560).

In opposition to Defendant District's motion, Laura D. Barbieri, an attorney with AFJ,

submitted a declaration further identifying the same seven individuals listed in Plaintiff's July

10, 2015 correspondence, and clarifying their role in the *Montesa* action. (Docket No. 568).  She

explained that the "Consultants/Investigators" included on these communications "have

specialized knowledge and experience with the School District so as to well serve Plaintiffs'

counsel in the investigation and litigation against members of the School Board and District

administration." (*Id.* at ¶ 5).  Ms. Barbieri asserted that each individual worked with AFJ in a

volunteer capacity, (*Id.* at ¶ 7), and that their roles were "to obtain and/or provide information

regarding East Ramapo to AFJ and its counsel to assist counsel in rendering legal advice to

Plaintiffs, including prosecuting and defending the Montesa action," (*Id.* at ¶ 40).  She asserted

that these individuals did not have "an 'interest' in the litigation – pecuniary or otherwise." (*Id.*

at ¶ 34).  More specifically, Ms. Barbieri provided biographical information on each

"Consultant/Investigator," and explained how each individual assisted AFJ with the instant

litigation. (*Id.* at ¶¶ 8-28).  I will summarize this information for each individual in turn.

Ms. Barbieri asserted that Dr. Oscar Cohen was previously a teacher and a superintendent

of the Lexington School for the Deaf, and for the past ten years has been involved in activism

against the East Ramapo School Board. (*Id.* at ¶ 8).  He currently serves as the Educational Chair

of the NAACP, Spring Valley Branch, and in that capacity, brought a complaint against the East

Ramapo School Board with the Office of Civil Rights, Department of Education in 2010. (*Id.*).

Ms. Barbieri asserted that Dr. Cohen consults with AFJ on "a variety of issues, including but not

limited to (1) the ERCSD's failure to provide its children of color with a sound basic education,

[and] (2) other potential claims and complaints against the District and School Board" and stated

that he "also works with other stakeholders to bring attention to the failures of the School

Board." (*Id.* at ¶ 10).  Dr. Cohen was a recipient of two e-mail communications at issue,

Document Nos. 26 and 30. (Pl. 1st Priv. Log[1]).

Next, Ms. Barbieri discussed the qualifications of Peggy Hatton. (Docket No. 568 at ¶¶

11-14).  Ms. Hatton is the mother of two special education students who previously attended

schools within the East Ramapo Consolidated School District. (*Id.* at ¶ 11).  She was a parent

member of the Committee for Special Education from 2006 to 2007. (*Id.* at ¶ 11).  In June 2008,

she lobbied parents and the community against the plan to rent out the bottom floor of an

elementary school to a yeshiva. (*Id.* at ¶ 12).  She serves as a co-host of East Ramapo

Underground, "a popular radio program that serves the Ramapo Community." (*Id.* at ¶ 13).  Ms.

Barbieri noted that in October 2012, upon learning that Ms. Hatton had "substantial information

concerning political and educational affairs in East Ramapo and the surrounding community" she

"recruited [Ms. Hatton and Antonio Luciano, discussed below] . . . [to] contribut[e] their

personal and specialized knowledge and experience in furtherance of the litigation." (*Id.* at ¶ 14).

Ms. Hatton is a recipient of eight e-mail communications at issue, Document Nos. 3, 4, 9, 10, 19,

20, 32 and 40. (Pl. 1st Priv. Log).  Additionally, Ms. Hatton sent one e-mail communication at

issue, Document No. 8. (*Id.*).

---

[1] Refers to Plaintiffs' First Privilege Log, found at Docket Nos. 503-1, 560-1, 568.

Regarding Mr. Luciano, Ms. Barbieri asserted that he also previously had children in the ERCSD, has attended and videotaped "almost every School Board meeting since 2007," and has obtained "a substantial number of documents" from the School Board through Freedom of Information Law ("FOIL") requests. (Docket No. 568 at ¶¶ 16-17).  As noted above, Mr. Luciano has provided consultant/investigative services "concerning the political and educational affairs of the ERCSD" and "contribute[d his] personal and specialized knowledge and expertise in furtherance of the litigation." (*Id.* at ¶ 19).  Mr. Luciano was a recipient of eight e-mail communications at issue, Document Nos. 4, 5, 8, 10, 19, 20, 38 and 40, and he sent two e-mail communications at issue, Document Nos. 6 and 7. (Pl. 1st Priv. Log).

Robert Forrest sent one e-mail, Document No. 1, and was a recipient of one e-mail, Document No. 40. (*Id.*).  Ms. Barbieri asserted that Mr. Forrest is "a volunteer Real Estate Consultants[sic]/Investigator for AFJ and provides informal opinions regarding the particular property transactions that are the subject of this litigation." (Docket No. 568 at ¶ 20).  Mr. Forrest also sought legal advice from AFJ regarding an administrative proceeding before the State Education Commissioner in the Appeal of Forrest. (*Id.* at ¶ 21).

Robert Kerkula was a recipient of three e-mails at issue, Document Nos. 18, 20 and 40. (Pl. 1st Priv. Log).  Ms. Barbieri asserted that Mr. Kerkula is an activist in opposition to the School Board who has assisted AFJ in serving school board members with administrative actions filed against certain members. (Docket No. 568 at ¶ 24).  Additionally, Mr. Kerkula has routinely sought out documents through FOIL requests, and has provided those documents and other information to AFJ at various times over the course of the litigation. (*Id.* at ¶ 25).

AFJ also recruited Carole Anderson to serve as a volunteer consultant/investigator, with the duty of obtaining information from various Plaintiffs in order to respond to interrogatories.

(*Id.* at ¶ 22).  Ms. Anderson sent one e-mail at issue, which contained six attachments, and Plaintiffs assert that privileges protect the e-mail and all attachments, Document Nos. 11-17. (Pl. 1st Priv. Log).  Finally, Plaintiffs assert privilege protection over communications between Mr. White and Mr. Castelluccio, the editor and reporter for *Preserve Ramapo*, a website and blog, Document Nos. 2 and 25. (Docket No. 568 at ¶ 27; Pl. 1st Priv. Log).

The Court received the initial twenty-eight e-mails at issue for *in camera* review at a status conference on April 7, 2016.  At that conference, Defendant District reported that Plaintiffs served their Second Privilege Log on April 6, 2016, asserting privileges over communications with additional third parties, who were not detailed in Ms. Barbieri's original submission in opposition to the motion.  Plaintiffs' counsel responded that production of Plaintiff White and other Plaintiffs' e-mails was ongoing, and that although Plaintiffs' counsel could not yet anticipate all of the Plaintiffs' communications that would raise these privilege issues, they could detail for the Court the overall list of third parties that had been included on such communications.  As such, the Court ordered Plaintiffs to supplement their opposition briefing to include the information about the additional third parties not included in Ms. Barbieri's earlier declaration.

On April 15, 2016, Ms. Barbieri submitted a supplemental letter and declaration regarding additional "Consultants/Investigators." (Docket No. 604).  Ms. Barbieri named eight additional individuals: Amy Alston, Louise Castelluccio, Eustache Clerveaux, Julio Clerveaux, David A. Curry, Judith Johnson, Steven Lee and Willie Trotman. (Docket No. 604-1 at ¶ 4).  Ms. Barbieri explained that these individuals were "member[s] of the East Ramapo community" some of whom "have been more vocal in bringing the failures of the school Board and District Administrators to the attention of the public" while some "have been more active in the search

for solutions to the critical educational deprivation suffered by the public school children of East Ramapo." (*Id.* at ¶ 5).  Plaintiffs assert that the specific assistance that each of these newly detailed individuals provided to AFJ is privileged, but Ms. Barbieri disclosed that the individuals had provided "critical advice and information regarding the history and background of the East Ramapo community and the difficulties people of color, particularly children, have faced over the years in this community and have provided assistance with Plaintiffs' discovery obligations." (*Id.* at ¶ 6).  She specifically noted that Judith Johnson and Willie Trotman were both "known in the community as leading advocates for the welfare of East Ramapo's children[,]" Ms. Johnson for her "extensive knowledge and experience as an educator" and Mr. Trotman "because of his role in the Spring Valley NAACP and his knowledge of the minority community's struggles within East Ramapo and the surrounds." (*Id.* at ¶ 7).

In response to Ms. Barbieri's April 15, 2016 submission, Defendant District continued to argue that the privileges at issue here do not apply to these individuals. (Docket No. 613).  In addition, Defendant District pointed out that certain individuals that appeared on Plaintiffs' Second Privilege Log were not included on Plaintiffs' updated list of consultants/investigators. (*Id.* at 3).  On May 2, 2016, the Court ordered Plaintiffs to provide clarification as to the identities and roles of these individuals and of five individuals who appeared on Plaintiff's Second Privilege Log with AFJ e-mail addresses, but who had not been identified for the Court: Stephanie Torre, Christopher Owens, Colette Menaldino, Jason Shatz and Kevin Toussaint. (Docket No. 615).  Plaintiffs complied on May 4, 2016. (Docket No. 616).  Ms. Barbieri's declaration clarified that Stephanie Torre is an attorney who worked with AFJ in 2012 during the investigation and initial pleading stage of the *Montesa* action, and left AFJ in or about October 2012. (*Id.* at ¶ 3).  She also explained that Christopher Owens was the former Executive Director

of AFJ, a role he held from 2012 to April 30, 2013. (*Id.* at ¶ 4).  Colette Menaldino, Jason Shatz, Kevin Toussaint and Carlos Ortiz were summer interns for AFJ in 2012, with Mr. Toussaint continuing to work part-time with AFJ until the end of 2014. (*Id.* at ¶ 5).  Ms. Barbieri reported that Ashley Okonkwo was a volunteer with the NAACP during the summer of 2012. (*Id.* at ¶ 6). Ms. Barbieri also confirmed Defendant District's allegation that Simon Brandler is an Assistant Attorney General with the Office of the Attorney General of the State of New York. (*Id.* at ¶ 7). Ms. Barbieri did not assert that Mr. Brandler was engaged as a consultant with AFJ, instead stating that the State Attorney General's Office "shared a common interest in investigating various aspects" of Defendant District. (*Id.*).

## B.  Plaintiff Lahens' Deposition

In addition to the documents discussed above, Defendant District moves to compel the testimony of Plaintiff Lahens.  At a deposition on May 12, 2015, Plaintiff Lahens reported that she had attended meetings in which Plaintiff White had discussed the litigation, with the last meeting occurring sometime in March 2015. (Lahens Depo.[2] at 23).  Plaintiff Lahens confirmed that no attorneys attended the meeting in March, and that there were between thirty and fifty people in attendance. (Lahens Depo. at 27).  Plaintiff Lahens said that all of the attendees were Plaintiffs, but when asked how she knew, she said "Because we're all there for one – one cause." (Lahens Depo. at 28).  Counsel for Defendant District followed up: "But it was just about the lawsuit or talking about the school district in general?" and Plaintiff Lahens replied, "Yeah. The school district in general." (*Id.*).  When asked about the content of the discussions at these meetings, Ms. Barbieri objected, stating that "discussions of Plaintiffs' strategy at Plaintiffs'

---

[2] Refers to the transcript of the deposition of Plaintiff Lahens, found at Docket No. 503-4.

meetings is objectionable" and directed the witness "not to answer the question if it's discussing the strategy of the litigation." (Lahens Depo. at 25).

Counsel for Defendant District then questioned Plaintiff Lahens about attendance at the meeting prior to March 2015, and whether only Plaintiffs were invited to attend or anybody could attend. (Lahens Depo. at 29-30). Plaintiff Lahens testified that the meeting was announced at her church and "anybody – anybody who has kids or nieces or nephews or grandkids" could attend. (Lahens Depo. at 31). When asked if anyone in attendance at the meeting was not a plaintiff, Plaintiff Lahens responded, "Oh, I don't think they're going to identify themselves like they're not the Plaintiffs" and she intimated that she would not question each person to see if he or she was a plaintiff. (Lahens Depo. at 32). Plaintiff Lahens confirmed, however, that she did not know whether any non-Plaintiffs attended this meeting. (Lahens Depo. at 32).

## II. DISCUSSION

Motions to compel are "entrusted to the sound discretion of the district court," and "[a] trial court enjoys wide discretion in its handling of pre-trial discovery." *In re Fitch, Inc.,* 330 F.3d 104, 108 (2d Cir.2003) (internal quotation marks and citation omitted). Under Rule 26 of the Federal Rules of Civil Procedure ("Rule 26"), the scope of discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The relevancy requirement "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).

**A.  The Attorney-Client Privilege**

The attorney-client privilege protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). As an initial matter, "the privilege protects not only communications by the client to the lawyer . . . [but also] communications by the lawyer to the client." *In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness*, 265 F. Supp. 2d 321, 334 (S.D.N.Y. 2003) ("*In re Grand Jury Subpoenas*") (citations omitted).  While not dispositive, generally, "the presence of a third party counsels against finding that the communication was intended to be, and actually was, kept confidential." *Mejia*, 655 F.3d at 134. However, courts have extended the attorney-client privilege to communications involving "persons assisting the lawyer in the rendition of legal services" including "office personnel, such as secretaries and law clerks, who assist lawyers in performing their tasks." *In re Grand Jury Subpoenas*, 265 F. Supp. 2d at 325 (citations omitted).

The Second Circuit extended this principle in *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961), holding that the attorney-client privilege would still apply to communications with an accountant employed by a law firm where "the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." 296 F.2d at 922.  Analogizing an accountant to an interpreter who provides foreign language translation for an attorney, the court clarified that the privilege would apply regardless of whether the accountant was present for the consultation with the attorney and the client, or the attorney had directed the client to communicate with the

accountant directly; "[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." *Id.*

Plaintiffs and Defendant District disagree over the extent to which *Kovel* and its progeny stand for the proposition that communications with third parties working with attorneys are covered by the privilege.  Defendant District asserts that the *Kovel* exception applies only where the third party is working "to improve the comprehension" of attorney-client communications, and therefore does not allow for investigators such as the third parties involved here to fall under the privilege. (Docket No. 561).  Plaintiffs interpret Defendant District's argument to be that only accountants and interpreters can qualify under the *Kovel* attorney-client privilege analysis, and assert that this interpretation of *Kovel* is too restrictive.  (Docket No. 567).

Since *Kovel*, the Second Circuit has further clarified that the *Kovel* decision "recognized that the inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client." *United States v. Ackert*, 169 F.3d 136, 139-40 (2d Cir. 1999).  On the other hand, where an attorney seeks out a third party in order to obtain information that his client does not have, the third party's role is "not as a translator or interpreter of client communications, [and] the principle of *Kovel* does not shield his discussions with [the attorney]." *Id.*; *See also*, *Merck Eprova AG v. Gnosis S.p.A.*, No. 07 Civ. 5898(RJS)(JCK), 2010 WL 3835149, at *2 (S.D.N.Y. Sept. 24, 2010); *United States Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 161 (E.D.N.Y. 1994) (where the experts' "function was not to put information gained from defendants into usable form for their attorneys to render legal advice, but rather, to collect information not obtainable directly from defendants" the privilege did not apply).

"The party claiming the benefit of the attorney-client privilege has the burden of establishing all the essential elements." *United States v. Adlman*, 68 F.3d 1495, 1500 (2d. Cir. 1995) ("*Adlman I*").  While not required, courts have looked to contemporaneous documentary proof, such as retainer agreements and billing statements, or the absence thereof, in determining the nature of the third party's engagement with counsel. *See Id.* at 1500 n.1 (holding that district court did not err in considering the absence of a contemporaneous retainer agreement in concluding that the privilege did not apply, as such an analysis was "an application of common sense to the circumstances"); *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 594 (S.D.N.Y. 2015) (holding that "mere statements" by the third party and others "may not *ipse dixit* establish privilege *ex post facto*" particularly "where the [third party's resulting] report is not labeled confidential or privileged").

**B. Analysis of Contested Third Parties**

As an initial matter, there has been no assertion that Michael Castelluccio has been engaged as a consultant or investigator for Plaintiffs' counsel, or that Mr. Castelluccio is in any way engaged as an agent of counsel.  The attorney-client privilege, therefore, does not protect communications between Plaintiff White and Mr. Castelluccio.

Plaintiffs similarly fail to meet their burden of demonstrating that the attorney-client privilege protects communications with Dr. Cohen, Ms. Hatton, Mr. Luciano or Mr. Kurkela. Plaintiffs assert that all of these individuals "have specialized knowledge and experience with the School District so as to well serve Plaintiffs' counsel in the investigation and litigation against members of the School Board and District administration." (Docket No. 568 at ¶ 5).  Dr. Cohen allegedly consults with AFJ on "potential claims and complaints against the District and School Board" based on his ten years of activism against the East Ramapo School Board and position as

Educational Chair of the NAACP, Spring Valley Branch. (*Id.* at ¶¶ 8, 10). Plaintiffs' counsel

asserts that she recruited Ms. Hatton and Mr. Luciano upon learning that they had "substantial

information concerning political and educational affairs in East Ramapo and the surrounding

community." (*Id.* at ¶ 14). Mr. Forrest "provides informal opinions regarding the particular

property transactions that are the subject of this litigation." (*Id.* at ¶ 20). Mr. Kerkula has

obtained documents through FOIL requests, which he has provided to AFJ. (*Id.* at ¶ 25). None

of these activities involve "improve[ing] the comprehension of the communications between"

AFJ and Plaintiff White. *See Ackert*, 169 F.3d at 139-40. Instead, a review of the contested

communications *in camera* confirms that the role of these consultants/investigators has been to

obtain and provide information about Defendant District and its board members that Plaintiff

White did not already have. In many instances, Plaintiffs' counsel sought the input of these third

parties regarding drafted discovery demands and responses and drafted filings to be presented

before this Court. It is clear from these communications that the third parties were assisting with

the provision of legal advice and services, however, it appears from Ms. Barbieri's affirmation

that their advice is based on their access to information about Defendant District, and not based

on their interpretation of information communicated from Plaintiff White or other plaintiffs in

the *Montesa* action. In some instances, the third parties provided information from FOIL

requests, which is a clear example of collecting information not obtainable from the client, a

function to which the privilege does not attach. *See United States Postal Service*, 852 F. Supp. at

161-62. These communications are outside of the bounds of an attorney-client communication.

Plaintiffs are correct that the *Kovel* precedent can apply to investigators working on

behalf of counsel. *See, e.g.*, *Carter v. Cornell Univ.*, 173 F.R.D. 92, 95 (S.D.N.Y. 1997)

(privilege applied where dean of human resources was "told specifically by counsel to conduct

an investigation whose sole purpose [was] to assist counsel in rendering legal representation and [when] she [undertook] such an investigation, she [became] counsel's agent for the purpose of that investigation."). However, in *Carter*, the court applied the attorney-client privilege to communications between a third-party who was acting as an investigator at the behest of counsel, seeking information from employees of the defendant corporation, who the court deemed to be clients. *Id.* at 94. In contrast, Plaintiffs have not met their burden of demonstrating that these third parties were investigating matters by seeking information from clients, or providing consultative advice based on information provided by clients.

Finally, Plaintiffs have failed to establish that these consultants worked under the supervision of counsel. Although the Second Circuit has made clear that contemporaneous records are not required, *Adlman I*, 68 F.3d at 1500 n.1, in this case, Plaintiffs' counsel does not even assert that they had any sort of formal agreement with these third parties in which they would directly supervise their investigative or consultative functions. The attorney-client privilege, therefore, cannot protect the communications with Dr. Cohen, Ms. Hatton, Mr. Luciano or Mr. Kurkela, and any attorney-client communications that have been shared with these individuals are no longer covered by the privilege by virtue of their disclosure to these third parties.

The same reasoning applies to the list of consultants in Plaintiffs' April 15, 2016 submission. Although Plaintiffs assert privilege protection over the specifics of the roles that each of these additional third parties held, the limited information provided indicates that these individuals were also engaged in providing AFJ with outside information regarding Defendant District and its Board Members, and regularly advised AFJ based on that information. Ms. Barbieri asserted that they were retained to assist AFJ "by providing critical advice and

information regarding the history and background of the East Ramapo community and the difficulties people of color, particularly children, have faced over the years in this community." (Docket No. 604-1). There is no indication that these individuals were obtaining the information on the history of these disputes from Plaintiffs in this action. Therefore, Plaintiffs have not met their burden of establishing that these third parties were engaged in facilitating attorney-client communications.[3]  Similarly, Plaintiffs have not met their burden of establishing that the privilege covers communications with Ashley Okonkwo. Plaintiffs have merely asserted that Ms. Okonkwo was engaged as a volunteer with the NAACP, and have not indicated that she assisted with any attorney-client communications. Moreover, Plaintiffs have not met their burden of proving that these individuals were agents of counsel engaged to facilitate attorney-client communications. The attorney-client privilege does not protect the communications with any of these individuals, and disclosure of any attorney-client communications to these individuals waived the privilege.

   Carole Anderson's engagement presents a different analysis. Plaintiffs asserted that Ms. Anderson was retained to obtain information from various Plaintiffs in order to respond to interrogatories. (Docket No. 568 at ¶ 22). Additionally, Plaintiffs have provided, for *in camera* review, an e-mail confirming that engagement, along with a consultant/investigator agreement and release and confidentiality agreement. It is clear from these documents that Ms. Anderson was retained as an agent of counsel, who served as a go-between for AFJ and the myriad of Plaintiffs in this litigation, and whose communications were intended to remain confidential. As such, the attorney-client privilege protects the communications between Ms. Anderson and

---

[3] Additionally, the Court is unpersuaded by Plaintiffs' assertion that the role of these additional third parties is privileged. Questions about the "general nature of legal services performed . . . do not call for any confidential communication." *Colton v. United States*, 306 F.2d 633, 636 (2d Cir. 1962).

Plaintiff White over which Plaintiffs have claimed the privilege, (Document Nos. 11, 14, 17). The privilege also applies to communications with AFJ interns Colette Menaldino, Jason Shatz, Kevin Toussaint and Carlos Ortiz.[4] *See In re Grand Jury Subpoenas*, 265 F. Supp. 2d at 325 ("[The privilege] has been applied universally to cover office personnel, such as secretaries and law clerks, who assist lawyers in performing their tasks.").

Plaintiffs also assert attorney-client privilege protection over an e-mail sent from Plaintiff White to Simon Brandler, an Assistant Attorney General with the Office of the Attorney General of the State of New York. (Pl. 2d Priv. Log[5], Doc. No. 82).  Plaintiffs have not asserted that Mr. Brandler is a consultant of counsel, but instead state that the New York State Office of the Attorney General "shared a common interest in investigating various aspects" of Defendant District. (Docket No. 616 at ¶ 7).  Without more, Plaintiffs have not met their burden of establishing that this e-mail from Plaintiff White to Mr. Brandler was an attorney-client communication.

The Court is cognizant of the fact that Plaintiffs' list of consultants and investigators has evolved over time.  The Court has given Plaintiffs ample opportunity to provide Defendant District and the Court with a complete list of consultants and investigators who have assisted AFJ on the *Montesa* action.  On October 15, 2015, the Court ordered Plaintiffs to provide a complete list of consultants to the Defendants, and on November 2, 2015, Plaintiffs asserted that they had provided Defendant District with a list of consultant/investigators on July 10, 2015, when they sent a letter that only included Dr. Cohen, Ms. Hatton, Mr. Luciano, Mr. Forrest, Ms.

---

[4] Former AFJ Executive Director Christopher Owens and former AFJ attorney Stephanie Torre were included on some of these communications as well.  Defendant District does not contest the applicability of the privilege to communications with Mr. Owens or Ms. Torres and, therefore, the Court declines to address this issue.

[5] Refers to Plaintiffs' Second Privilege Log, found at Docket No. 613-1.

Anderson, Mr. Kerkula and Mr. Castelluccio. (Docket No. 549).  In Plaintiff's initial declaration

in opposition to this motion, Ms. Barbieri once again asserted privilege protection over only

those seven individuals. (Docket No. 568).  At the April 7, 2016 conference, when Defendant

District raised the issue of additional third parties included on Plaintiffs' Second Privilege Log,

the Court directed Plaintiffs to provide information on the remaining third parties that had not

been included on Plaintiffs' earlier submissions.  Plaintiffs added eight consultant/investigators

on April 15, 2016, (Docket No. 604-1), and on May 4, 2016 the list grew again to include Ashley

Okonkwo, a volunteer with the NAACP, (Docket No. 616).  Plaintiffs have the burden of

establishing the essential elements of an attorney-client privilege claim. *Adlman I*, 68 F.3d at

1500.  Plaintiffs' piecemeal privilege assertions have been inefficient and have delayed the

Court's ruling on this matter.  In an effort to avoid future motion practice on this issue, Plaintiffs

are directed to apply the Court's rulings on the attorney-client privilege moving forward.

**C.  The Work Product Doctrine**

     The work product doctrine shields from disclosure materials prepared "in anticipation of

litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A).

As with the attorney-client privilege, the party asserting the doctrine bears the burden of

demonstrating the essential elements. *See Gucci America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74

(S.D.N.Y. 2010)(citations omitted).  In addition to this affirmative showing, the party asserting

the doctrine "also has the burden of establishing non-waiver of the privilege." *In re Pfizer Inc.*

*Sec. Litig.,* No. 90 Civ. 1260 (SS), 1993 WL 561125, at *2 (S.D.N.Y. Dec. 23, 1993) (citing

*Nikkal Indus., Ltd. v. Salton, Inc.,* 689 F. Supp. 187, 191 (S.D.N.Y.1988)).

     In the Second Circuit, a document has been prepared "in anticipation of litigation" if "in

light of the nature of the document and the factual situation in the particular case, the document

can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) ("*Adlman II*") (emphasis in original) (citations omitted). The document at issue must have been "prepared with an eye to some *specific* litigation." *Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 175 F.R.D. 431, 434 (W.D.N.Y. 1997) (emphasis added) (citation omitted).  The work product doctrine "requires a more immediate showing than the remote possibility of litigation[,]" meaning that "litigation must at least be a real possibility at the time of preparation[.]" *Id.*  On the other hand, it is "well established" that the privilege does not apply to "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Adlman II*, 134 F.3d at 1202.

Unlike the attorney-client privilege, the work product doctrine's protection is not automatically waived by disclosure to a third party. *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 114 (S.D.N.Y. 2002).  "Rather, the courts generally find a waiver of the work product privilege only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information." *Williams v. Bridgeport Music, Inc.*, 300 F.R.D. 120, 123 (S.D.N.Y. 2014) (citation and quotation marks omitted); *Medinol, Ltd.*, 214 F.R.D. at 115 ("[I]t is clear that disclosure of work product to a party sharing common litigation interests is not inconsistent with the policies of encouraging zealous advocacy and protecting privacy that underlie the work product doctrine.").

**D.  Analysis of Contested Communications**

**i.  Communications Sent by Ms. Barbieri (Document Nos. 3, 4, 5, 10, 18, 19 and 20)**

Ms. Barbieri is an attorney with AFJ, and as Plaintiffs' counsel, there is no question that she is entitled to create work product. *See* Fed. R. Civ. P. 26(b)(3)(A).  The Court has reviewed

the communications sent by Ms. Barbieri over which Plaintiffs asserted work product protection in their First Privilege Log, and finds that these e-mails were written in anticipation of litigation. In these communications, Ms. Barbieri discussed drafts of discovery documents, motions or appeals to be filed before this Court, proposed communications with existing Plaintiffs or potential witnesses, and proposed investigations into programs within Defendant District. These types of activities on the part of counsel for Plaintiffs in this action were clearly done in anticipation of the pendant litigation.

Defendant District argues that even if the work product doctrine protects these documents, that protection is waived by virtue of the disclosure of these communications to non-parties. This is not the case. The recipients of the e-mail communications in Plaintiffs' First Privilege Log, aside from any Plaintiffs or AFJ staff, were Ms. Hatton, Mr. Luciano and Mr. Kerkula. It is clear from both Plaintiffs and Defendant District's submissions that these individuals are partners in advocacy with AFJ and the Plaintiffs in this matter. The disclosure of work product to advocacy partners such as these third parties does not "substantially increase[] the opportunity for potential adversaries to obtain the information." *Williams*, 300 F.R.D. at 123. Work product protection is, therefore, not waived by this disclosure. The Court finds that Documents Nos. 3, 4, 5, 10, 18, 19 and 20 are protected by the work product doctrine and were properly withheld.

The Court similarly holds that, moving forward, any work product of Ms. Barbieri, or any other attorney for AFJ, created in anticipation of litigation, is not waived by virtue of its disclosure to the individuals listed in Plaintiffs' April 15, 2016 and May 4, 2016 submissions, with the exception of Mr. Brandler, whom the Court will discuss below. Plaintiffs assert that the other individuals are allies in advocacy, and the Court, therefore, finds that disclosure of Ms.

Barbieri's work product to these individuals does not waive its protection because such

disclosure does not make it substantially more likely that Plaintiffs' adversary will acquire the

work product. Plaintiffs are to apply this reasoning in any future productions of e-mails sent by

Ms. Barbieri, Mr. Schwartz, Ms. Torres or any other attorney from AFJ.

## ii.  Communications Sent by Plaintiff White (Document Nos. 25, 26, 30, 32 and 40)

As a party to this action, Plaintiff White is also entitled to create work product deserving

of protection under Rule 26(b)(3)(A). However, in addition to his role as a plaintiff in this

matter, Plaintiff White has also been engaged in advocacy efforts against Defendant District in

collaboration with many of the third parties at issue here. It is therefore necessary to determine

whether his communications were made in anticipation of litigation, or whether they were made

in the ordinary course of his advocacy efforts aside from this litigation, and would have been

created irrespective of the pending litigation. With that in mind, the Court finds that Document

Nos. 26, 30, 32 and 40[6] were created in anticipation of litigation and may be withheld. In

Document No. 30, Plaintiff White provided his thoughts on potential litigation involving the

Voting Rights Act, which is within the bounds of the work product doctrine, despite the fact that

this work product is actually in anticipation of different litigation than the case at bar. *See*

*Ramsey v. NYP Holdings, Inc.*, No. 00 Civ. 3478(VM)(MHD), 2002 WL 1402055, at *7 n.6

(S.D.N.Y. June 27, 2002) ("a party may withhold in one lawsuit the work product that it has

created or caused to be created because of another lawsuit in which it has been involved or

anticipates being involved"); *cf. Cohen v. City of New York*, 255 F.R.D. 110, 124 (S.D.N.Y.

---

[6] Document No. 40 is an e-mail communication from Plaintiff White to Mr. Luciano, Ms. Barbieri, Ms. Hatton, Plaintiff Carmand, Robert Kerkula, and Robert Forrest. (Pl. 1st Priv. Log). An *in camera* review of the e-mail revealed that within this communication chain are earlier e-mails from Mr. Luciano and Ms. Barbieri. In all instances in which earlier e-mails appear in the chain of one document, I have treated the entire document as the work product of the sender of the top e-mail, which contains the earlier communications within it. If the lower e-mails in the chain are responsive to Defendant District's ESI requests on their own, Plaintiffs will adhere to the Court's rulings on these privilege issues in complying with those document demands.

2008) ("the weight of authority now clearly favors protecting work product that was generated as part of an earlier litigation at least where, as here, that litigation is related to the current suit."). In Document Nos. 32 and 40, Plaintiff White provided his input on interrogatory responses and other proposed discovery tactics.  Document No. 26 is an e-mail sent by Plaintiff White the same month that the initial complaint was filed in this action, in which he asserted that a "friend" asked him for "a two page fact sheet[,]" which was meant to "summarize" and provide "depth and history."  The Court finds that the proximity in time of the sending of this communication and the filing of the lawsuit indicates that this document was created in anticipation of litigation as well.  These communications, therefore, are all protected by the work product doctrine, and, as established in Section II.D.i. *supra*, the disclosure of these communications to Dr. Cohen, Ms. Hatton, Mr. Luciano, Plaintiff Carmand, Mr. Kerkula and Mr. Forrest, did not waive the privilege.[7]  Additionally, any future communications from Plaintiff White, or any other plaintiff, to the third parties detailed in Plaintiffs' April 15, 2016 and May 4, 2016 submissions, except Mr. Brandler, discussed *infra*, similarly would not waive the privilege.

In contrast, the Court finds that any privilege that would otherwise cover any portion of Document No. 25 has been waived by virtue of its disclosure to a third party.  Document No. 25 is an e-mail communication from Plaintiff White to Mr. Castelluccio, who Plaintiffs assert is the editor and reporter for *Preserve Ramapo*, a website and blog. (Docket No. 568 at ¶ 27).  In this communication, Plaintiff White forwards an e-mail communication from Arthur Schwartz instructing Plaintiff White to have *Preserve Ramapo* publish an updated version of the complaint.  Although Mr. Schwartz's original e-mail would have been considered an attorney-

---

[7] Former AFJ Executive Director Christopher Owens and former AFJ attorney Stephanie Torre were included on Document 26 as well.  This does not waive the privilege, as this disclosure does not make it substantially more likely that Plaintiffs' adversary will obtain this document.

client communication, the protection to which it would otherwise be entitled was waived when this communication was disclosed to Mr. Castelluccio, a journalist. *See Colon v. City of New York*, No. 12-CV-9205(JMF), 2014 WL 3605543, at *1 (S.D.N.Y. July 8, 2014) ("Had the letter at issue actually been sent to a journalist . . . it plainly would not qualify as privileged."). Plaintiffs cannot argue that their adversaries in this litigation were not substantially more likely to obtain this information by virtue of its disclosure to a journalist, who very well could have published this entire e-mail exchange.  To the extent that Document No. 25 was covered by the work product doctrine, the protection has been waived by virtue of this disclosure.  The Court finds that Documents Nos. 26, 30, 32 and 40 are protected by the work product doctrine and were properly withheld.  Document No. 25 must be released.

Plaintiffs have also failed to meet their burden of demonstrating that any privilege protection that would otherwise be available for Document No. 82 on Plaintiffs' Second Privilege Log was not waived when the document was sent to Simon Brandler at the New York Attorney General's Office.  Plaintiffs assert that the Attorney General's Office "shared a common interest in investigating various aspects of the East Ramapo Central School District . . . ." (Docket No. 616 at ¶ 7).  However, disclosing information to governmental authorities in the hope that they will attack an adversary cannot be said to be done "in the pursuit of ... trial preparation." *Bank of Am., N.A. v. Terra Nova Ins. Co.,* 212 F.R.D. 166, 172 (S.D.N.Y. 2002) (citing *United States v. Am. Tel. and Tel. Co.,* 642 F.2d 1285, 1299 (D.C.Cir.1980)).  Such disclosure "results in a waiver of the work product protection." *Id.* at 173.  Consequently, Document No. 82 must be released.

### iii. Communications Sent by Third Parties

Defendant District contends that third parties cannot create work product. (Docket No. 561 at 9).  The text of Rule 26(b)(3)(A) affords protection to material prepared "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)"—not merely material prepared by or for an attorney—and several courts, including courts in the Second Circuit, have interpreted this rule according to its plain meaning. *See, e.g.*, *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 394 (S.D.N.Y. 2015) ("Notwithstanding the common description of the doctrine as the 'attorney' work product doctrine . . . it is not in fact necessary that the material be prepared by or at the direction of an attorney."); *Gucci America, Inc.*, 271 F.R.D. at 74 (citing *Adlman II*, 134 F.3d at 1202) ("Unlike the attorney-client privilege, the work product doctrine does not require that the documents be prepared at the behest of counsel, only that they be prepared 'because of' the prospect of litigation.").  The Supreme Court has noted that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *United States v. Nobles,* 422 U.S. 225, 238 (1975).  As a result, the doctrine protects material prepared by consultants or agents on the attorney's behalf. *Id.*; Fed. R. Civ. P. 26(b)(3).

The Court's analysis is different, however, where the creator of the work product is truly a non-party to this action, and not a plaintiff or the attorney's agent or consultant.  "[C]ourts have repeatedly held that Rule 26(b)(3) does not shield work product produced for non-parties." *Abdell v. City of New York*, No. 05 Civ. 8453 KMK JCF, 2006 WL 2664313, at *2 (S.D.N.Y. Sept. 14, 2006) (collecting cases).  Indeed, courts have held that "a non-party witness may not invoke work-product protection under this rule to preclude production of materials prepared by or for that witness, even if created in contemplation of the witness's own pending or anticipated

litigation." *Ramsey*, 2002 WL 1402055, at *6; *see also Ricoh Co. v. Aeroflex Inc.*, 219 F.R.D. 66, 69 (S.D.N.Y. 2003) (disclosure of material may be required even where non-party is a party in closely related lawsuit and may suffer disadvantage in latter suit as a result of disclosure). In contrast, where a third party creates documents for a party "because of the very litigation in which [the party] invoke[s] work-product protection . . . they fit squarely within the protective ambit of Rule 26(b)(3)." *Plew v. Ltd. Brands, Inc.*, No. 08 Civ. 3741(LTS)(MHD), 2009 WL 1119414, at *3 (S.D.N.Y. Apr. 23, 2009).

As Plaintiffs' list of consultants/investigators seems to grow with each submission, the Court must consider what qualifications an individual must hold in order to be a consultant or agent permitted to create work product under Rule 26(b)(3). Rule 26 allows for the protection to cover documents produced by an "attorney, consultant, . . . or agent," but courts have provided little guidance as to the requirements for holding the title of an agent or consultant. Courts have held that "[a]gents include those who are enlisted by legal counsel to perform investigative or analytical tasks to aid counsel in preparing for litigation." *Costabile v. Westchester, New York*, 254 F.R.D. 160, 164 (S.D.N.Y. 2008) (citing *Kayata v. Foote, Cone & Belding Worldwide, L.L.C.*, No. 99 CIV. 9022 VM KNF, 2000 WL 502859, at *2 (S.D.N.Y. Apr. 26, 2000)). Additionally, an individual who worked directly with and under the supervision of counsel and was responsible for such tasks as coordinating the gathering of evidence and identifying and contacting witnesses, was found to "fall[] within the scope of Rule 26(b)(3)." *Sterling Drug Inc. v. Harris*, 488 F. Supp. 1019, 1027 (S.D.N.Y. 1980). "As the Supreme Court has explained, 'the [work product] doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system.[']" *William A. Gross Const. Assoc., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354, 359 (S.D.N.Y. 2009) (citing *United States v. Nobles*, 422 U.S. at 238–39). The

Second Circuit cautions that courts must apply the work product doctrine "in a common sense way in light of reason and experience as determined on a case-by-case basis." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992).

Even where Rule 26(b)(3) does not protect materials from disclosure, federal courts have recognized broader work product protection under the precedent of *Hickman v. Taylor*, 329 U.S. 495 (1947). *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008); *Abdell*, 2006 WL 2006 WL 2664313, at *3. Relying on *Hickman*, courts have granted work product protection to non-parties "where it is necessary to achieve the underlying purposes of the doctrine." *Gonzalez v. City of New York*, No. 08 CV 2699(JBW), 2009 WL 2253118, at *3 (E.D.N.Y. July 28, 2009) (collecting cases). The three specific purposes which justify application of the doctrine are: where disclosure would "(1) alter attorney behavior, (2) reward sloth, or (3) interfere with ongoing litigation." *Haus v. City of New York*, No. 03 Civ. 4915RWSMHD, 2006 WL 3375395, at *3 (S.D.N.Y. Nov. 17, 2006).

Plaintiffs contend that the work product doctrine protects communications authored by Oscar Cohen, Peggy Hatton, Antonio Luciano, Robert Forrest, Robert Kerkula and Michael Castelluccio, in addition to the other consultants detailed in Ms. Barbieri's April 15, 2016 and May 4, 2016 submissions over whose communications Plaintiffs generally assert the attorney-client privilege, the work product doctrine, and the common interest privilege. Therefore, the Court will next consider these contested communications to determine whether the author of the document is a consultant or agent of counsel and the document was created in anticipation of litigation, or whether it is deserving of work product protection under the standard in *Hickman*.

**a. Communications Sent by Carole Anderson (Document Nos. 11, 12, 13, 14, 15, 16 and 17)**

Plaintiffs claim work product protection over Document Nos. 11, 12, 13, 14, 15, 16 and 17. (Pl. 1st Priv. Log). These e-mails were sent from Carole Anderson to Plaintiff White. However, an *in camera* review reveals that Ms. Anderson was actually forwarding e-mails and attachments that Ms. Barbieri sent to her. These e-mails discuss Ms. Anderson's retention as a consultant/investigator for AFJ in order to assist with the pendant litigation, and, as such, the Court finds that they were created in anticipation of litigation. They are, therefore, protected by the work product doctrine. As established in Section II.B. *supra*, Ms. Anderson was retained as an agent of counsel, and she is therefore entitled to create work product under Rule 26(b)(3). The Court finds that Document Nos. 11, 12, 13, 14, 15, 16 and 17 are protected by the work product doctrine and were properly withheld. The same reasoning would apply to communications sent by AFJ interns Colette Menaldino, Jason Shatz, Kevin Toussaint and Carlos Ortiz, all of whom were clearly agents of counsel when they sent communications as interns at AFJ. *See Sterling Drug Inc.*, 488 F. Supp. at 1027.

**b. Communication Sent by Peggy Hatton (Document No. 8)**

Ms. Hatton sent one e-mail communication at issue, Document No. 8. (Pl. 1st Priv. Log). In this e-mail, Ms. Hatton forwarded information received from a FOIL request, which Ms. Barbieri contends was meant for potential use in the *Montesa* action. (Docket No. 567 at 6). It is clear from Ms. Barbieri's submissions and the Court's *in camera* review of this communication that Ms. Hatton was acting as a consultant of counsel, and this e-mail was written in anticipation of the instant litigation. Ms. Hatton has been included on Plaintiffs' asserted list of consultants before the Court and Defendant District since July 2015, (Docket No. 549), Ms. Barbieri reported to the Court that she specifically recruited Ms. Hatton to assist in the *Montesa* action,

(Docket No. 568), and the Court's *in camera* review indicates that Ms. Hatton sent out FOIL requests, which she then shared with counsel and Plaintiff White in furtherance of this litigation. For the same reasons as discussed in Section II.D.i. *supra*, disclosure of this work product to Mr. Luciano, a recipient on this e-mail, did not waive the work product protection.  Therefore, Document No. 8 was properly withheld.[8]

### c.  Communications Sent by Antonio Luciano (Document Nos. 6 and 7)

Mr. Luciano authored Document Nos. 6 and 7. (Pl. 1st Priv. Log).  The Court has reviewed each of these documents and finds that they were properly withheld under the work product doctrine.

Document Nos. 6 and 7 are e-mails that Mr. Luciano sent to Ms. Barbieri and Plaintiff White regarding filings from another case against Defendant District, filed by the tenants of the Colton School.  Although the documents attached to this e-mail were filed in connection with different litigation, Ms. Barbieri has asserted that Mr. Luciano was engaged as a consultant to counsel in furtherance of the *Montesa* action. (Docket No. 568 at ¶ 19).  As with Ms. Hatton, Plaintiffs have sufficiently established Mr. Luciano's role as a consultant of counsel.  He was included on Plaintiffs' list of consultants in July 2015, (Docket No. 549), and he has obtained "a substantial number of documents" through FOIL request which he has shared with AFJ, (Docket No 568 at ¶ 16-17).   Furthermore, Defendant District already has access to the documents that are attached to this e-mail, as they were filed in connection with litigation in which Defendant District was a party.  Nevertheless, it appears from an *in camera* review that this e-mail exchange was not made in anticipation of the Colton School litigation, but rather to provide AFJ attorneys

---

[8] Underlying facts within these FOIL requests, however, are discoverable. *See Abbo-Bradley v. City of Niagara Falls*, 293 F.R.D. 401, 408 (W.D.N.Y. 2013) ("the work product doctrine does not immunize litigants or their consultants from disclosing the underlying facts obtained during the course of their investigations.")

and Plaintiff White information about that litigation to aid them in the *Montesa* action.  The Court, therefore, finds that these e-mails are work product created by a consultant of counsel, in anticipation of the *Montesa* action, and, therefore, the work product doctrine protects them from disclosure.  Document Nos. 6 and 7 were properly withheld.

**d.  Communication Sent by Robert Forrest**

Mr. Forrest authored Document No. 1, an e-mail sent from Mr. Forrest to Plaintiff White regarding a potential appeal regarding the sale of Colton School. (Pl. 1st Priv. Log).  Unlike the e-mails authored by Mr. Luciano, discussed above, here, Mr. Forrest was not providing information about this appeal for use by Plaintiff White in the *Montesa* action.  Instead, Mr. Forrest sought Plaintiff White's input on his own appeal, which is not part of this action.  Ms. Barbieri asserted that Mr. Forrest is a volunteer real estate consultant, who "provides informal opinions regarding the particular property transactions that are the subject of this litigation." (Docket No. 568 at ¶ 20).  However, the Court's *in camera* review of this communication indicates that Mr. Forrest was not acting as a consultant to counsel in sending this communication to Plaintiff White, but was instead seeking Plaintiff White's advice on Mr. Forrest's own case.  As a result, this is work product created by a non-party to this action, in anticipation of Mr. Forrest's own anticipated litigation, which is not protected by Rule 26(b)(3). *See Ramsey*, 2002 WL 1402055, at *6.  Consequently, Document No. 1 must be released.

Regarding any future productions of Mr. Forrest's e-mails, however, the Court finds that if he has sent e-mails regarding "particular property transactions" relating to the *Montesa* action, (Docket No. 568 at ¶ 20), Mr. Forrest was acting as a consultant of counsel, and those communications would be protected by Rule 26(b)(3).

**e. Communication Sent by Michael Castelluccio**

As discussed in Section II.B. *supra*, there has been no assertion that Mr. Castelluccio has been engaged as a consultant or investigator for Plaintiffs' counsel, or that he is in any way engaged as an agent of counsel.  He is the author of one e-mail in Plaintiffs' privilege log, Document No. 2, in which he e-mailed Plaintiff White about potential litigation outside of the *Montesa* action. (Pl. 1st Priv. Log).  This document is therefore the work product of a non-party, created in anticipation of a separate litigation, and is not protected by the work product doctrine as articulated in Rule 26(b)(3). *See Ramsey*, 2002 WL 1402055, at *6.  The principles underlying the *Hickman* precedent similarly do not justify the withholding of this document.  Although courts have applied the *Hickman* principles to an investigator working on behalf of counsel, *see Alexander v. F.B.I.*, 192 F.R.D. 12, 18 (D.D.C. 2000), Plaintiffs cannot say that allowing the discovery of Mr. Castelluccio's thoughts in anticipation of litigation would in any way infringe upon the "zone of privacy in which a lawyer can prepare and develop legal theories and strategies." *Adlman II*, 134 F.3d at 1196.  Plaintiffs have not alleged that Mr. Castelluccio is an agent or consultant of counsel, and the work product doctrine does not allow Plaintiffs to withhold his communications made in anticipation of separate litigation.  Accordingly, Document No. 2 must be released.

**f. Communications Sent by Other Third Parties**

Although Plaintiffs have not provided any e-mails sent by Oscar Cohen or Robert Kerkula to the Court for *in camera* review, the Court finds that Plaintiffs have met their burden of establishing that these individuals have been engaged as consultants of counsel for the purpose of this litigation.  Therefore, as the parties proceed with discovery, any communications sent by either of these individuals which were written in anticipation of litigation, can be considered

work product under Rule 26(b)(3).  Ms. Barbieri asserted that Dr. Cohen uses his expertise as Educational Chair of the NAACP, Spring Valley Branch to advise AFJ on "potential claims and complaints against the District and School Board," among other matters. (Docket No. 568 at ¶ 10).  Mr. Kerkula has assisted AFJ in serving school board members, and has sought out and provided information to AFJ regarding the litigation. (*Id.* at ¶ 25).  This is sufficient to demonstrate that these individuals are consultants under Rule 26(b)(3) and, therefore, any communications they made in anticipation of litigation are covered by the work product doctrine.

In contrast, Plaintiffs have not met their burden of establishing that the third parties listed in Ms. Barbieri's April 15, 2016 submission have been engaged as agents or consultants of counsel for Rule 26 purposes.  Ms. Barbieri asserts that these "member[s] of the East Ramapo community" have been "vocal in bringing the failures of the school Board and District Administrators to the attention of the public." (Docket No. 604-1 at ¶ 5).  As a result, they have been able to provide AFJ with "critical advice and information." (*Id.* at ¶ 6).  Plaintiffs have not established that these individuals were "*enlisted* by legal counsel to perform investigative or analytical tasks to aid counsel in preparing for litigation." *Costabile v. Westchester, New York*, 254 F.R.D. at 164 (emphasis added).  Additionally, there has been no indication that these individuals "work directly with and under the supervision of counsel" as in *Sterling Drug Inc. v. Harris*, 488 F. Supp. at 1027.  Instead, it appears from the limited information provided that these individuals have been engaged in their own advocacy work, without oversight from Plaintiffs' counsel and, therefore, are not agents or consultants of counsel for purposes of Rule 26(b)(3).  The same reasoning applies to Ms. Okonkwo, since all Plaintiffs have asserted is that Ms. Okonkwo was a volunteer with the NAACP. (Docket No. 616 at ¶ 6).

As Plaintiffs continue to release e-mail communications of Plaintiff White and other Plaintiffs on a rolling basis, they are directed to apply the Court's rulings on the third parties considered herein in determining whether those e-mail communications are privileged.[9]

## E.  The Common Interest Doctrine

Plaintiffs assert that the common interest doctrine protects Document Nos. 8, 26 and 30, and, more generally, communications with the additional consultants discussed in Plaintiffs' April 15, 2016 letter, (Docket No. 604), and May 4, 2016 letter to the Court, (Docket No. 616). The common interest doctrine "is not an independent source of privilege or confidentiality," and where "a communication is not protected by the attorney-client privilege or the attorney work-product doctrine, the common interest doctrine does not apply." *Sokol v. Wyeth, Inc.*, No. 07 Civ. 8442(SHS)(KNF), 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008) (citations omitted). Instead, the doctrine, "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989).  In order to receive protection under the common interest doctrine, the moving party must make a two-part showing. *Fireman's Fund Ins. Co. v. Great American Ins. Co of New York*, 284 F.R.D 132, 139 (S.D.N.Y. 2012).  First, "the parties exchanging otherwise privileged information must establish a common legal, rather than commercial, interest," which courts have found embodied in "a cooperative and common enterprise towards an identical legal strategy." *Id.* (quotation marks and citations omitted).

---

[9] The Court notes that the work product doctrine is a qualified privilege, and otherwise privileged documents "prepared in anticipation of litigation or for trial" are discoverable only if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Costabile*, 254 F.R.D. at 163 (citing Fed. R. Civ. P. 26(b)(3)(A)(ii)).  Defendant District has made no argument or showing of its substantial need for the materials contained in these communications.  Therefore the Court has not considered that issue.

Second, "the parties must establish that any exchange of privileged information was made in the course of formulating a common legal strategy[,] and that the parties understood that the communication would be in furtherance of the shared legal interest." *Id.* at 140 (citing *Sokol*, 2008 WL 3166662, at *5, 7).

Plaintiffs have failed to make a showing of a shared legal interest between Plaintiff White and the third parties at issue here. To the contrary, Ms. Barbieri asserts that "none of the [listed consultants/investigators] has an 'interest' in the litigation – pecuniary or otherwise. None has anything to lose or gain by the success or failure of the litigation." (Docket No. 568 at ¶ 34). Accordingly, the common interest doctrine does not apply to these communications.

**F.  The Investigative Reporter Privilege**

Plaintiffs assert that the investigative reporter privilege protects two documents, Document Nos. 2 and 25. (Pl. 1st Priv. Log). The investigative reporter privilege is meant to keep press out of the courts. *Schoolcraft v. City of New York*, No. 10 Civ. 6005(RWS), 2014 WL 1621480, at * 2 (S.D.N.Y. Apr. 22, 2014). The privilege does not apply where the materials sought are "reasonably obtainable from other available sources." *Gonzales v. National Broadcasting Co.*, 194 F.3d 29, 36 (2d Cir. 1999). The documents at issue here were not being withheld in response to a subpoena served directly on Mr. Castelluccio. Defendant District is seeking these documents from Plaintiff White, another available source for this information. Consequently, the investigative reporter privilege does not apply.

**G. Analysis of Plaintiff Lahens' Testimony**

Defendant District seeks to compel Plaintiff Lahens' testimony regarding meetings that she attended in 2015 in which she, Plaintiff White, and 30-50 other attendees discussed the *Montesa* action. (Docket No. 560). Plaintiffs contend that the work product doctrine, attorney-

client privilege, and common interest doctrine protect any discussion of litigation strategy that may have occurred at these meetings. (Docket No. 567). Defendant District contends that Plaintiffs' invocation of these privileges was improper because (1) the communications were not confidential, (2) discussions between aligned parties outside the presence of counsel are not privileged, (3) Plaintiff Lahens' disclosure of some of the communications waived any privilege, and (4) Plaintiffs' counsel's instruction not to answer without referencing specific privileged communications was improper. (Docket No. 503).

### i. The Attorney-Client Privilege

As discussed above, the attorney-client privilege protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *Mejia*, 655 F.3d at 132. Here, Plaintiffs assert that the attorney-client privilege protects the communications regarding legal strategy at these meetings. (Docket No. 509). Plaintiffs do not contend that any attorneys were present at these meetings. Additionally, Plaintiffs cannot establish that all of the attendees at these meetings were Plaintiffs in this case, or even clients of AFJ. There is no list of attendees, and no assertion that anyone made any effort to deny entry to non-Plaintiffs, or even, potential adversaries. Based on Plaintiff Lahens' deposition testimony, the Court can be confident that Plaintiff Lahens and Plaintiff White were present at these meetings, but the rest of the attendees are unknown. Based on Plaintiff Lahens' testimony about the lack of measures taken to ensure that only Plaintiffs were present, anyone from the community could have attended this meeting, including members of the press, or even adversaries. Plaintiffs have not met their burden of establishing that these strategy discussions were "intended to be, and in fact were, kept confidential." *Mejia*, 655 F.3d at 132.

**ii. The Work Product Doctrine**

The work product doctrine as codified in Rule 26(b)(3) protects against the disclosure of "documents and tangible things" and, therefore, clearly does not apply to Defendant District's questions about the oral discussion at these meetings. Fed. R. Civ. P. 26(b)(3).  However, courts have held that the "disclosure of an attorney's mental processes-even if those thoughts have not been reduced to writing-generally cannot be compelled" where it is necessary to achieve the underlying purposes of the doctrine as articulated in *Hickman v. Taylor*. *Abdell*, 2006 WL 2664313, at *3 (collecting cases); *Gonzalez*, 2009 WL 2253118, at *3 (collecting cases).  As noted above, those underlying purposes aim to "preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *Adlman II*, 134 F.3d at 1196 (quoting *Hickman*, 329 U.S. at 511).  Noting that the Supreme Court has applied the work product doctrine to the tangible work product of a non-attorney, and that *Hickman* "clearly commands that the attorney work-product doctrine applies with equal, if not greater, force to intangible work product[,]" courts have also applied the *Hickman* principles to communications of non-attorneys. *Alexander v. F.B.I.*, 192 F.R.D. at 18.

However, even if the *Hickman* standards apply to communications between non-attorneys, such as a group of plaintiffs at a meeting, Plaintiffs have failed to carry their burden of establishing non-waiver of the doctrine, because they disclosed information to unknown attendees at these meetings.[10]

---

[10] The Court, therefore, declines to rule on whether *Hickman* would provide work product protection to these discussions.

### iii. The Common Interest Doctrine

As discussed in Section II.E., *supra*, the common interest doctrine is not its own source of privilege, and only supplies protection to documents disclosed that would otherwise be privileged. *Sokol*, 2008 WL 3166662, at *5. As the Court has already ruled that the attorney-client privilege does not protect these meetings because of the lack of confidentiality, the common interest doctrine does not provide any protection. Additionally, even if the attorney-client privilege would otherwise apply, in order to support an assertion of the common interest doctrine, Plaintiffs must show that the parties in communication shared "a common legal . . . interest." *Fireman's Fund Ins. Co.*, 284 F.R.D. at 139. To establish such a common interest, "the parties must have come to an agreement, 'though not necessarily in writing, embodying a cooperative and common enterprise towards an identical strategy.'" *Id.* (citing *Lugosch v. Congel*, 219 F.R.D. 220, 237 (N.D.N.Y. 2003). Courts look to whether "multiple persons are represented by the same attorney" or other evidence of coordination. *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 446, 448 (S.D.N.Y. 1995).

Here, Plaintiffs cannot assert that all of the individuals present at these meetings shared a common legal interest, because they cannot assert who was present at these meetings. If all of the attendees at the meeting were Plaintiffs, all represented by AFJ, the Court could conclude that they all shared an identical legal strategy in this matter. However, Plaintiff Lahens' testimony regarding the earlier meeting she attended was that anyone with an interest in this litigation was free to attend these meetings. (Lahens Depo. at 31). Regarding the March 2015 meeting, she attested that all attendees were Plaintiffs, but her only foundation for that belief was that all attendees were "there for one . . . cause." (Lahens Depo. at 28). The meetings were announced and held in public places. (Lahens Depo. at 31-32). Without more to show that

efforts were made to exclude members of the public who did not have a legal interest in this litigation, Plaintiffs cannot assert the common interest doctrine to protect these communications. *Fireman's Fund Ins. Co.*, 284 F.R.D. at 139.  Therefore, Plaintiffs' assertion of the common interest doctrine fails.

Accordingly, Plaintiffs' counsel's instruction to Plaintiff Lahens not to answer questions regarding litigation strategy from these meetings was improper.  Defendant District shall have an additional opportunity to depose Plaintiff Lahens on this issue without restriction.

## III.  CONCLUSION

For the foregoing reasons, Defendant District's motion to compel is granted in part and denied in part.  The Court finds that the attorney-client privilege does not protect communications with the third parties at issue here, with the exception of Carole Anderson, AFJ interns Colette Menaldino, Jason Shatz, Kevin Toussaint and Carlos Ortiz.  Regarding the work product doctrine, the Court finds that communications sent by Ms. Barbieri, Plaintiff White, Ms. Anderson, Ms. Menaldino, Mr. Shatz, Mr. Toussaint, Mr. Ortiz and any other attorneys from AFJ, which were made in anticipation of litigation, are covered by the work product doctrine. That protection is not waived by virtue of the disclosure of those communications to Dr. Cohen, Ms. Hatton, Mr. Luciano, Mr. Kerkula, Mr. Forrest or any of the other third parties in Plaintiffs' April 15, 2016 and May 4, 2016 submissions, with the exception of Mr. Brandler.  Privilege protection is, however, waived by virtue of disclosure to Mr. Castelluccio or Mr. Brandler.  The Court finds that communications sent by Ms. Hatton, Mr. Luciano, Mr. Forrest, Dr. Cohen or Mr. Kerkula, in anticipation of the *Montesa* action, are covered by the work product doctrine. Communications sent by Mr. Castelluccio and the third parties listed in Plaintiffs' April 15, 2016 and May 4, 2016 submissions, except as noted above, are not protected by the work product

doctrine.  In line with these rulings, Document Nos. 11, 14 and 17 may be withheld under the attorney-client privilege and the work product doctrine; Document Nos. 3, 4, 5, 6, 7, 8, 10, 12, 13, 15, 16, 18, 19, 20, 26, 30, 32 and 40 may be withheld under the work product doctrine; Document Nos. 1, 2, 25 and 82 must be released.

Finally, the Court finds that the attorney-client privilege, work product doctrine, and common interest doctrine do not protect any discussions of strategy at the meetings attended by Plaintiff Lahens in 2015.  Defendant District shall have an additional opportunity to depose Plaintiff Lahens.  The Court hereby instructs the parties to proceed with discovery in accordance with this ruling.

The Clerk is respectfully requested to terminate the pending motion (Docket No. 560).

Dated:   June 20, 2016
         White Plains, New York

                              **SO ORDERED:**

                              _____
                              JUDITH C. McCARTHY
                              United States Magistrate Judge